# SEALED

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.: 1:23-cv-22322-KMW

BETTY'S BEST, INC.,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

      Defendants.



FILED BY _____ D.C.

JUL 2 5 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER RESTRAINING TRANSFER OF ASSETS AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Betty's Best, Inc. ("Betty's Best" or "Plaintiff") by and through its undersigned counsel, hereby moves this Honorable Court for Temporary Restraining Order and an order restraining transfer of assets, and upon expiration of the Temporary Restraining Order, a preliminary injunction against Defendants, the individuals, partnerships, and unincorporated associations identified on Schedule "A" to the Complaint in this action ("Defendants") pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, 17 U.S.C. §§ 502, 503, 35 U.S.C. §§ 281, 283, and The All Writs Act, 28 U.S.C. § 1651(a), and in support thereof states as follows:

### I.     INTRODUCTION

Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing counterfeits and confusingly similar imitations of one or more of Plaintiff's registered trademarks, copyrights and design patent within this district and throughout the United States by operating e-commerce stores established via third party marketplace platforms under their seller identification names identified on Schedule "A" to the Complaint (the "Seller IDs").

Specifically, Plaintiff has obtained evidence clearly demonstrating that: (a) Defendants

1

are engaged in the advertisement, offering for sale, and sale of counterfeit and infringing versions of Plaintiff's goods; and (b) Defendants accomplish their sales of counterfeit and infringing goods via the Internet through the use of, at least, e-commerce stores operated via Internet marketplace platforms under the Seller IDs.

Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its right to determine the manner in which its trademarks, copyrights and design patent are presented to the public. Defendants have and continue to wrongfully trade and capitalize on Plaintiff's reputation and goodwill and the commercial value of Plaintiff's trademarks, copyrights and design patent. By their activities, Defendants are defrauding Plaintiff, certain non-party businesses, and the consuming public for their own benefit.

Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a Temporary Restraining Order prohibiting Defendants' further wrongful use of Plaintiff's trademarks, copyrights and design patent. Plaintiff also seeks to restrain the illegal profits generated by Defendants.

Plaintiff has obtained evidence that Defendants operating their Seller IDs via Aliba-ba.com, AliExpress.com, Amazon.com, Cloudflare.com, DHGate.com, eBay.com, Etsy.com, Fruugo.us, Shopify.com, Walmart.com, Wish.com, and others. All these seller platforms process payments or have related companies that perform payment processing for them.

The Lanham Act allows plaintiff to recover the illegal profits gained through defendants' distribution and sales of counterfeit and infringing goods. See 15 U.S.C. § 1117(a). The Copyright Act allows Plaintiff to recover, as an equitable remedy, the actual damages suffered as result of the infringement and any additional profits of the Defendants that are attributable to the infringement and are not taken into account in computing the actual damages (17 U.S.C. 504(b)) or statutory damages (17 U.S.C § 504(c)). The Patent Act allows Plaintiff to be compensated for the infringement, no less that a reasonable royalty for the use made of the invention by the Defendants, together with the interest and cost fixed by the Court. (See 35 U.S.C. § 284). Also, Plaintiff is entitled to the extent of the total profit obtained by the Defendants for applying its registered design patent or any colorable imitation thereof, to Defendant's products for purpose of sale or expose for sale. See 35 U.S.C. § 289.

In light of the inherently deceptive nature of the counterfeiting business, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. Accordingly, to preserve the disgorgement remedy, Plaintiff seeks an *ex parte* order restraining Defendants' assets, including specifically, funds transmitted through payment processors for the platforms on which Defendants engage in their illegal activities.

## II.     STATEMENT OF FACTS

### A. Background On Betty's Best, Inc.

1.       Betty's Best is a California Corporation with its principal place of business in Santa Ynez, California. The President and Chief Executive Officer of Betty's Best is Sarah M. Owen. (Owen Decl. ¶¶ 4, 5). Betty's Best incorporated on January 1, 2016 and has been in continuous operation since then. (Owen Decl. ¶ 6).

2.       Betty's Best is the maker of the StripHair Gentle Groomer, a therapeutic brush for horses and dogs. (Owen Decl. ¶ 7). Betty's Best owns the trademarks, copyrights and design patent described below that are the subject of this action in United States. (Owen Decl. ¶ 9). designs and sells its StripHair Gentle Groomer under the federally registered trademarks STRIPHAIR and THE GENTLE GROOMER. (Owen Decl. ¶ 10).

3.       Betty's Best's products are sold through hundreds of authorized retailers in the United States and many countries like United Kingdom and Australia, listed on the StripHair.com Store Locator Map at https://striphair.com/pages/retail-store-locator, its own website https://striphair.com/collections/all-products, Amazon and other authorized retailers. (Owen Decl. ¶ 8). Betty's Best offers for sale and sells its products within the state of Texas, including this district, and throughout the United States. (Owen Decl. ¶ 11). Online sales of Betty's Best Marks products via the web represent a significant portion of Plaintiff's business. (Owen Decl. ¶ 26).

4.       Like other intellectual property rights owners, Betty's Best suffers ongoing violations of its rights by counterfeiters and infringers, such as Defendants herein. (Owen Decl. ¶ 12). This harms Betty's Best, it dupes the consuming public, and the Defendants earn substantial profits. (Owen Decl. ¶ 13).

5.       To combat the harm caused by Defendants' infringing conduct, Betty's Best spends money on legal fees and investigative fees to enforce its intellectual property rights.

(Owen Decl. ¶ 14). The explosion of internet infringement forced Betty's Best to spend time and money to protect itself and its customers from the confusion and brand erosion. (Owen Decl. ¶ 15).

### B. Betty's Best's Trademark Rights

6.      Plaintiff created and sells unique patented grooming tools under the federally registered trademarks STRIPHAIR and THE GENTLE GROOMER (collectively the "Betty's Best Marks"), the first multi-purpose grooming tools of their kind, known as the "6-in-1 Shedding Grooming Massage brush" for horses and pets that can be used in 6 ways to shed, groom, shine, shampoo, scrape and massage. The StripHair Gentle Groomer is ideal for short-haired animals because it will not harm the skin, but it will also shed out a thick hairy coat in the spring-time molting season while providing a therapeutic massage and adding shine to the coat. It's safe to use everywhere, even the face and legs. The material used to make the StripHair Gentle Groomer is perfectly balanced to achieve outstanding durability, flexibility, cleanliness, sun protection, and just the perfect amount of grip. (Owen Decl. ¶ 16).

7.      Betty's Best is the owner of all rights in and to the Betty's Best Marks in Standard Characters, namely, 5072866 STRIPHAIR (first used on October 01, 2014, and first used in commerce on December 16, 2014) and 5328641 THE GENTLE GROOMER (first used and first used in commerce on 2015) for "grooming tools for pets, namely, combs and brushes; Currycombs" in International Class 21. The Betty's Best Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office. The STRIPHAIR and THE GENTLE GROOMER Marks are incontestable. (Owen Decl. ¶¶ 17-19).

8.      The Betty's Best Marks identify and distinguish Plaintiff's high-quality and unique patented grooming tools. (Owen Decl. ¶ 21).

9.      The Betty's Best Marks are exclusive to Betty's Best and are displayed extensively on Plaintiff's products and in its marketing and promotional materials. (Owen Decl. ¶ 27). Betty's Best products have been extensively promoted and advertised at great expense to Betty's Best. (Owen Decl. ¶ 28). Betty's Best Marks are distinctive and signify to the purchaser that the products come from Betty's Best and are manufactured to its quality standards. The authentic products are all made in United States. (Owen Decl. ¶ 29).

10.     The goodwill associated with the Betty's Best Marks is of incalculable and inestimable value. (Owen Decl. ¶ 31). Betty's Best has expended substantial time, money, and

other resources developing, advertising, and otherwise promoting the Betty's Best Marks in connection with Betty's Best's products. Betty's Best's average marketing and promotional investments are over $225,000 per year. (Owen Decl. ¶ 32). Product sales using the Betty's Best Marks generated $1.6M (USD) in 2021, and, as a result, the consuming public readily identifies the Betty's Best Marks as representing high-quality and unique goods sponsored and approved by Plaintiff. (Owen Decl. ¶¶ 35, 36).

11.    Plaintiff monitors and polices the Betty's Best Marks carefully. (Owen Decl. ¶ 38). Genuine goods with the Betty's Best Marks are advertised and promoted by Plaintiff, authorized distributors, and third parties on the Internet. (Owen Decl. ¶ 39). Visibility on the Internet, including in search engines like Google, Yahoo!, and Bing, is important to Plaintiff's marketing efforts. (Owen Decl. ¶ 40). Plaintiff invests in internet marketing and consumer education, including search engine optimization ["SEO"] strategies, that educate consumers about the value of Plaintiff's products and the Betty's Best Marks (Owen Decl. ¶¶ 42, 43).

### C. Betty's Best's Copyright Rights

12.    Plaintiff advertises, markets, promotes and sells its products under the Betty's Best Marks using photographs, videos, and through a website that are protected by copyright and registered with the Copyright Office (collectively the "Works").

13.    Plaintiff's photographs are duly registered with the Register of Copyrights as visual materials, as shown in the table below. (Owen Decl. ¶¶ 44, 45).

| **Copyright Title and Description** | **Reg. No.** | **Reg. Date** |
|---|---|---|
| StripHair Product Pictures 2020 (group of 10 photographs) | VA 2-299-367 | 05/12/2022 |
| StripHair Product Pictures 2019 (group of 7 photographs) | VA 2-300-902 | 05/19/2022 |
| StripHair Product Pictures 2018 (group of 2 photographs) | VA 2-304-928 | 06/03/2022 |
| StripHair Product Pictures 2021 (group of 8 photographs) | VA 2-304-931 | 06/03/2022 |

14.    Plaintiff's videos are duly registered with the Register of Copyrights as entire motion pictures, as shown in the table below. (Owen Decl. ¶ 46).

| **Copyright Title and Description** | **Reg. No.** | **Reg. Date** |
|---|---|---|
| SH-Video-1 11.01.2019 (entire motion picture) | PAu 4-142-655 | 06/14/2022 |
| SH-Video-2 4-01-2021 (entire motion picture) | PAu 4-142-666 | 06/14/2022 |
| SH-Video-3 7.01.2021 (entire motion picture) | PAu 4-143-928 | 06/30/2022 |

| SH-Video-4 4.01.2018 (entire motion picture) | PAu 4-143-929 | 06/30/2022 |
| SH-Video-5 3.01.2019 (entire motion picture) | PAu 4-145-045 | 07/14/2022 |
| SH-Video-7 6.01.2020 (entire motion picture) | PAu 4-145-360 | 07/19/2022 |
| SH-Video-8 5.01.2021 (entire motion picture) | PAu 4-145-361 | 07/19/2022 |
| SH-Video-6 2.01.2019 (entire motion picture) | PAu 4-145-379 | 07/19/2022 |

15.     Plaintiff's website content comprising photographs and text, titled "striphair.com website" is duly registered with the Register of Copyrights under the Reg. No. VA 2-271-013, effective from October 6, 2021. (Owen Decl. ¶ 47).

16.     The copyrighted photographs and the website content show Betty's Best's high-quality and unique patented grooming tools design features, its packaging, and its effective use from different perspectives in horses and pets. (Owen Decl. ¶ 48). Genuine grooming tools bearing or sold under the Betty's Best Marks are widely legitimately advertised and promoted by Betty's Best and its authorized distributors using Betty's Best's copyrighted photographs and through its website content. (Owen Decl. ¶ 49).

17.     Betty's Best has never granted authorization to anyone to advertise, market or promote unauthorized goods using Betty's Best's copyrighted photographs and its website content. (Owen Decl. ¶ 50).

**D.  Betty's Best's Patent Rights**

18.     Plaintiff's grooming tools' design features are protected under a design patent and registered with the United Stated Patent and Trademark Office under the U.S. Patent No. D841,900 S titled "HORSE OR PET GROOMING TOOL" (the "HOPGT Design Patent"). (Owen Decl. ¶ 51). The HOPGT Design Patent was registered on February 26, 2019, has not expired and is valid. (Owen Decl. ¶ 53).

19.     The HOPGT Design Patent relates to the ornamental design for a horse or pet grooming tool as shown and described through four figures corresponding and ordering in front, top, bottom and side views, in which the rear view of the design is identical to the front view and both side views are identical each other. (Owen Decl. ¶ 52).

20.     Plaintiff marked its products with a Patent Notice (Owen Decl. ¶ 54). Plaintiff has never granted authorization to anyone to import, make, use or sell unauthorized goods using the HOPGT Design Patent. (Owen Decl. ¶ 55).

6

### E.  Defendants' Counterfeiting and Infringing Activities

21.     The overwhelming success of Plaintiff's products resulted in counterfeiting by individuals and entities unlawfully using the trademarks, copyrights, design patent and goodwill built by Betty's Best to sell cheap imitation counterfeits of Betty's Best's products. (Owen Decl. ¶ 56). The Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent were never assigned or licensed to any of the Defendants. (Owen Decl. ¶ 55). Despite Defendants' lack of authority, they are promoting, advertising, distributing, selling and/or offering for sale, through their respective Seller IDs, goods bearing counterfeit and infringing copies of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, without authorization ("Defendants' Goods"). (Owen Decl. ¶ 73;  Rothman Decl. ¶¶ 11, 12).

22.     Plaintiff's anticounterfeiting program investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. (Owen Decl. ¶ 57). Plaintiff investigated the promotion and sale of counterfeit and infringing products by Defendants to obtain payment account information for funds paid to Defendants for the sale of counterfeit products. (Owen Decl. ¶ 58). These investigations established that Defendants use Alibaba.com, AliExpress.com, Amazon.com, eBay.com, Joom.com, Newegg.com, Walmart.com, Wish.com, and others to sell Counterfeit Products from foreign countries such as China to consumers in the United States. (Owen Decl. ¶ 59).

23.     Betty's Best or someone under its supervision accessed Defendants' Internet based e-commerce stores operating under their seller identification names through Alibaba.com, AliExpress.com, Amazon.com, eBay.com, Joom.com, Newegg.com, Walmart.com, Wish.com, and others. (Owen Decl. ¶ 60). Betty's Best or someone under its supervision viewed counterfeit products using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, added products to the online shopping cart, proceeded to a point of checkout, and exchanged data with each e-commerce store. (Owen Decl. ¶ 62, Composite Exhibit 1). Betty's Best placed test orders from certain Defendants via their e-commerce stores operating under the Seller IDs for the purchase of various products all bearing counterfeits and infringements of Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent (Owen Decl. ¶ 76).

24.     Betty's Best's orders were processed entirely online and following the submission of the orders, Betty's Best received information to finalize payment for each of the products ordered via a payment processor for Alibaba.com, AliExpress.com, Amazon.com, eBay.com,

Joom.com, Newegg.com, Walmart.com, Wish.com, and others. (Owen Decl. ¶ 77). Betty's Best or someone under its supervision captured detailed web pages for each Defendant reflecting each counterfeit or infringing product bearing counterfeits and infringements of Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent. (Owen Decl. ¶ 63, Comp. Ex. 1). These web pages show Defendants slavishly copy the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent and offer Defendants' Goods for sale under identical marks indistinguishable to consumers, both at the point of sale and post-sale. (Owen Decl. ¶ 69, Comp. Ex. 1). Defendants created a false association between their counterfeit and infringing goods, their e-commerce stores, and Plaintiff, and this false association causes Plaintiff irreparable harm and damage. Defendant's counterfeit grooming tools reproduce the main design features of the HOPGT Design Patent, as is shown in two Claim Charts attached as Exhibit 6 to the Complaint. (Owen Decl. ¶ 71).

25.     Betty's Best or someone under their supervision personally analyzed each of the Infringing Websites and determined that Counterfeit Products were being offered for sale to residents of the United States. (Owen Decl. ¶ 68, Comp. Ex. 1). Plaintiff or someone under their supervision reviewed and visually inspected the detailed web page captures and photographs reflecting the Plaintiff branded products and determined the products were not genuine versions of Plaintiff's goods. *Id.*

26.     Comparison of the Betty's Best Marks to the marks used by Defendants reveals the obvious counterfeit and infringing nature of Defendants' Goods.[1] (Compare Betty's Best Marks in Registration Certificates, Complaint Composite Exhibit 1, with Defendants' counterfeit and infringing products listings in Composite Exhibit 1 to the Owen Decl.). A comparison of the design features claimed and protected under Plaintiff's Patent to the Defendants' Goods reveals that the Defendants' Goods infringe Plaintiff's Patent. (Owen Declaration ¶¶ 69-70). Comparison of the Copyrighted Photographs to the Defendants' internet advertising and marketing in their online stores, shows that the Defendants are infringing Plaintiff's registered copyrights. (Owen Decl. ¶¶ 68-70).

---

[1] Plaintiff reached this conclusion through visual inspection of the products as they appeared on the Infringing Websites, the price at which the Counterfeit Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendants offered shipping to the U.S., and because Defendants and the Infringing Websites do not conduct business with Plaintiff and do not have the right or authority to use the Betty's Best Marks, the Copyrighted Photographs and Plaintiff's Patent for any reason. (Owen Decl. ¶ 68-70).

### F. Counterfeiting on Social Media

27.     Plaintiff has found counterfeiting in advertising on social media that links to sellers on online marketplaces. Since 2021, Plaintiff has searched out, observed, and recorded this new practice engaged in by counterfeiters. Counterfeiters are using sophisticated advertising practices and tools to generate multiple ad versions using Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to imitate the StripHair brand and deceive the consumer to purchase counterfeit products from ad-linked website pages. (Owen Decl. ¶¶ 81-82).

28.     Counterfeit sellers use software to alter Betty's Best photographs in creating paid sponsored advertisements within a Facebook account having ad links directly to associated website pages with active shopping buttons revealing more uses of Betty's Best Marks, the copyrighted Works and the HOPGT Design Patent. For the past twenty-two months, Plaintiff have searched many of the Facebook Ads, made publicly available in the online Ads Library, for specific terms that are common to Betty's Best and used also by counterfeiters. (Owen Decl. ¶ 82). Plaintiff documented this activity and it is set forth in Schedule B to the Complaint. To date, Plaintiff has submitted over 3,512 IP Infringement Reports to Facebook, without resulting in any action to stop Facebook Ad buyers from using Facebook Ads to promote the sale of counterfeit Betty's Best products. (Owen Decl. ¶¶ 83-84).

29.     All of the Facebook pages and Facebook Ads are owned, operated or administered by Defendants identified on Schedule "A" to the Complaint who are located in China and are using and abusing Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to sell counterfeit products. Plaintiff will be unable to stop the counterfeiting of its Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent unless the Court includes Facebook (and its parent company Meta) in its Temporary Restraining Order and requires Facebook to abide by U.S. law, prevent further abuse of the Betty's Best's intellectual property rights, and abide by its own Brand Rights Protection policy. (Owen Decl. ¶¶ 85-86).

### G. The Irreparable Harm to Plaintiff in the Form of Price Erosion, Damage to Reputation, and Loss of Goodwill Not Compensable by Damages Alone

30.     Defendants are selling their infringing goods to consumers within this district and throughout the United States. (Owen Decl. ¶¶ 56, 68, 73, 77-79; Rothman Decl. ¶ 8). Defendants make substantial sums of money preying on members of the public, many of whom have no knowledge Defendants are defrauding them. (Owen Decl. ¶ 13). Defendants are responsible for

thousands of counterfeit products sold using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent. (Owen Decl. ¶ 74). Each sale results in a direct loss to Betty's Best. (Owen Decl. ¶ 75).

31.     Defendants falsely represent that their counterfeit and infringing goods are genuine, authentic, endorsed, and authorized by Plaintiff. (Owen Decl. ¶ 72). Defendants' internet activities infringe on Plaintiff's intellectual property rights. (Owen Decl. ¶¶ 59, 62-63, 105) The Seller IDs and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiff. (Owen Decl. ¶ 58).

32.     As the illegal marketplace for Betty's Best's products grows on the Internet, the legitimate marketplace for authentic Betty's Best's products shrinks. (Owen Decl. ¶ 87). Monetary damages cannot adequately compensate Betty's Best for ongoing infringement because monetary damages fail to address the loss of control and damage to Betty's Best's reputation and goodwill. (Owen Decl. ¶ 88). Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to our reputation and goodwill by acts of infringement. (Owen Decl. ¶ 89).

33.     Betty's Best's goodwill and reputation are irreparably damaged when the Betty's Best Marks are used on goods not authorized, produced or manufactured by Plaintiff. (Owen Decl. ¶ 90). Moreover, brand confidence is damaged, which can result in loss of future sales and market share. (Owen Decl. ¶ 91). The harm to Betty's Best's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable. (Owen Decl. ¶ 92). Betty's Best is further irreparably harmed because counterfeiters take away Betty's Best's ability to control the nature and quality of Counterfeit Products. (Owen Decl. ¶ 93).

34.     Loss of quality control over goods bearing or sold under the Betty's Best Marks and, in turn, loss of control over our reputation, is neither calculable nor precisely compensable. (Owen Decl. ¶ 94). The sale of counterfeit and infringing products bearing or sold under the Betty's Best Marks causes consumer confusion that weakens the Betty's Best Marks' brand recognition and reputation. (Owen Decl. ¶ 95). Mistake and confusion will cause consumers to believe Plaintiff offers low quality products; confused consumers who buy inferior quality infringing products thinking they are genuine undermines Plaintiff's reputation and goodwill. (Owen Decl. ¶¶ 96- 97).

35.     Even if a consumer knows she is buying counterfeit goods, prospective consumers who see those goods used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Betty's Best's products. Such post-sale confusion results in further damage Betty's Best's reputation and correlates to a loss of unquantifiable future sales. (Owen Decl. ¶ 98).

36.     Betty's Best is further irreparably damaged due to a loss of exclusivity. Betty's Best's extensive marketing and innovative patented designs are aimed at growing and sustaining sales. When counterfeiters use the Betty's Best Marks on goods without authorization, the exclusivity of the Betty's Best's products, as well as Betty's Best's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales. (Owen Decl. ¶ 99).

## III.     ARGUMENT

### A.  A Temporary Restraining Order is Essential to Prevent Immediate Injury

"An *ex parte* TRO generally is only appropriate where (1) notice would be impossible because the partry is not known or cannot be located, or (2) notice would render furhter prosecution fruitless." *SATA GmbH & Co. KG, 20*15 U.S. Dist. LEXIS 147637, at *11 (2015) (citing Reno *Air Racing Ass'n v. McCord, 45*2 F.3d 1126, 1131 (9th Cir. 2006)). *See also Gucci Am., Inc. v. Los Altos Boots, Inc.*, 2014 U.S. Dist. LECIS 190411, at *8 (C.D. Cal. Aug. 27, 2014).

A temporary restraining order may be granted without written or oral notice where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). Entry of a TRO is warranted here. Plaintiff has shown that Defendants fraudulently promote, advertise, sell, and offer for sale goods bearing counterfeits and infringements of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, via their e-commerce stores using the Seller IDs, and are creating a false association in the minds of consumers between Defendants and Plaintiff. Plaintiff has shown Defendants are wrongfully using counterfeits and infringements of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to increase consumer traffic to their illegal operations.

The entry of a Temporary Restraining Order would immediately stop Defendants and preserve the *status quo* until such time as a hearing can be held. See *Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007)

(finding *ex parte* relief more compelling where defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants."). Absent a TRO, Defendants can and, based upon Plaintiff's counsel's past experience, will significantly alter the *status quo* before the Court can determine the parties' respective rights. The internet e-commerce stores are under Defendants' complete control, and Defendants can change ownership or e-commerce store data and content, redirect consumer traffic, change payment accounts, and transfer assets and ownership of the Seller IDs at a moment's notice. (Rothman Decl. ¶¶ 14-15). Defendants can easily and quickly transfer and secret the funds sought to be restrained and thereby thwart the Court's ability to grant meaningful relief. *Id.*

Defendants engage in illegal counterfeiting and infringing activities. Defendants' assets will be unavailable for recovery or an accounting of profits without the entry of an *ex parte* TRO. The business of counterfeiters is built on deliberate misappropriation of rights and property belonging to others. Proceeding on an *ex parte* basis is a well-established practice. *Apple Corps v. Individuals*, Case No. 20-60982-CIV- DIMITROULEAS, 2020 U.S. Dist. LEXIS 141919 (S.D. Fla. May 21, 2020) (order granting *ex parte* application for temporary restraining order and restraining defendants' assets and defendants' related assets).

**B.**     **Standard for Temporary Restraining Order and Preliminary Injunction.**

To obtain a TRO or a preliminary injunction[2], a party must establish (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. See *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); see also *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets). Plaintiff's evidence establishes all of the relevant factors.

**1.**   **Probability of Success on the Merits of plaintiff's Claims.**

**a)**   **Likelihood of Success on Counterfeiting Claim.**

Liability for trademark infringement is established where, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable

---

[2] The standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. See *Emerging Vision, Inc. v. Glachman,* Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing *Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) *aff'd* 234 F.3d 1163 (11th Cir. 2000)).

imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. Plaintiff must demonstrate (1) ownership of the trademarks at issue; (2) Defendants' use of the trademarks is without plaintiff's authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Goods. See 15 U.S.C. § 1114(1). Plaintiff's evidence satisfies these requirements of 15 U.S.C. § 1114.

The Betty's Best Marks are owned by Plaintiff and registered on the Principal Register of the United States Trademark Office. (Owen Decl. ¶¶ 17, 18). Defendants have never had the right or authority to use the Betty's Best Marks. (Owen Decl. ¶¶ 65, 102). The first two elements have been met.

Likelihood of confusion, the third factor, is established under a seven-factor test. See *Ross Bicycles, Inc. v. Cycles USA, Inc.,* 765 F.2d 1502, 1506 (11th Cir. 1985). These factors are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. See *Safeway Store, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1164 (11th Cir. 1982). The seven factors are weighed and balanced; no single factor is dispositive. *Id.*

## 1)     Strength of the Marks

A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. *Lone Star Steakhouse and Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 362 (11th Cir. 1997). Trademarks are divided into four types: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. See *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

The Betty's Best Marks are strong marks. (Owen Decl. ¶ 19, 20, 23, 26-28, 30-36). The Betty's Best Marks have also acquired secondary meaning resulting from Plaintiff's extensive efforts and expense developing, advertising, and promoting the Betty's Best Marks. *Id.* As a result, the Betty's Best Marks enjoy widespread recognition in the minds of consumers. *Id.*

## 2)     Similarity of the Marks

Likelihood of confusion is greater when an infringer uses the exact trademark. *Turner Greenberg Assocs. v. C & C Imps.,* 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). Defendants are

13

using similar or identical marks to one or more of the MCINC Marks. (Compare Trademark Registrations, Complaint Comp. Ex. 1, to Defendants' Seller IDs and screen captures in Ash Decl. Composite Ex. 1).

**3)    Similarity of the Goods**

"The greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983).

Defendants are using one or more of the Betty's Best Marks (Compare Trademarks Registrations, Complaint Comp. Ex. 1 to Defendants' Seller IDs and screen captures in Owen Decl. Comp. Ex.1).

**4)    Similarity of the Sales Methods**

Convergent marketing channels increase the likelihood of confusion. See *Turner Greenberg Assocs.*, 320 F. Supp. 2d at 1332. Both Plaintiff and Defendants sell their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Southern District of Florida. (Owen Decl. ¶¶ 8, 11, 33, 59, 68, 73, 77-79). The sales channels overlap. The consumers are the same.

**5)    Similarity of Advertising Media**

This factor looks to each party's method of advertising. See *John H. Harland Co.*, 711 F.2d at 976. "[T]he standard is whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise that a possibility of confusion could result." *Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1339–40 (11th Cir. 1999) citing *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1166 (11th Cir.1982). Here both parties advertise online. (Owen Decl. ¶¶ 8, 39, 79, 81-83, ).

**6)    Defendants' Intent**

When an infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Assocs.*, 320 F. Supp. 2d at 1333 citing *Carnival Corp. v. Seaescape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999). Defendants engage in clear-cut copying here giving rise to an inference that defendants intended to benefit from plaintiff's reputation to plaintiff's detriment. See *Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida*, 546 F. Supp. 987, 996 (S.D. Fla. 1982).

**7)    Evidence of Actual Confusion**

14

"While actual confusion is not necessary to establish infringement, *Frehling Enters*., 192 F.3d at 1340, here a reasonable inference of actual confusion in the marketplace can be found based upon the circumstantial evidence that Defendants are advertising and selling goods identical in every way to Plaintiff's goods. (Owen Decl. ¶¶ 8, 11, 33, 59, 68, 69, 73, 76-77, Comp. Ex. 1).

The seven factors weigh only in Plaintiff's favor. Plaintiff has shown a probability of success on the merits of its trademark counterfeiting and infringement claim.

**b) Likelihood of Success on False Designation of Origin Claim.**

Liability for false designation of origin, like trademark infringement, is also established here because the determining factor is whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See* 15 U.S.C. § 1125(a); *see also Two Pesos, Inc.*, 505 U.S. at 780. Plaintiff established the merits of its trademark counterfeiting and infringement claims, thus likelihood of success is also shown for Plaintiff's claim for false designation of origin.

**c) Likelihood of Success on Common Law Unfair Competition Claim.**

The same test applies to unfair competition as with federal trademark infringement. *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004). Plaintiff has established the merits of its trademark infringement claims, therefore likelihood of success is also shown for Plaintiff's unfair competition claim.

**d) Likelihood of Success on Common Law Trademark Infringement Claim.**

The same test applies to common law trademark infringement as to federal trademark infringement. See *PetMed Express, Inc.*, 336 F. Supp. 2d at 1217-18. Plaintiff has satisfied the three elements of its trademark counterfeiting and infringement claims, therefore common law trademark infringement is also established.

**e) Likelihood of Success on Copyright Infringement Claim.**

A copyright infringement action requires a Plaintiff to prove (1) ownership of a valid copyright, and (2) actionable copying by the Defendant. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff has established ownership of the copyright registered product photographs, videos, and website at issue in this action. (Owen Decl. ¶¶ 45-47). Plaintiff has also established Defendants' actionable copying by using those product photographs and the website content in Defendants' listings. (Owen Decl. ¶¶ 62-63). Therefore, a likelihood of success on Plaintiff's copyright infringement claim is established.

**f) Likelihood of Success on Patent Infringement.**

A patent is presumed valid. 35 U.S.C. § 282. Patent infringement is determined by comparing the patent claims to the accused product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Design patent infringement occurs if, in the eye of an ordinary purchaser, giving such attention as a purchaser usually gives, two designs are so similar that the purchaser, familiar with the prior art, would be deceived by the similarity between the claimed design and the accused designs, inducing him to purchase one supposing it to be the other. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 684 (Fed. Cir. 2008) (en banc) (announcing the so-called "three-way test" comparing the patent, accused device, and closest prior art).

Likelihood of success on Plaintiff's patent infringement claim is shown here. Betty's Best is the owner of all rights in and to the HOPGT Design Patent which claims the ornamental design for a horse or pet grooming tool (Owen Decl. ¶¶ 51-52). A comparison of the design claimed in the HOPGT Design Patent to the Defendants' Goods shows that the Defendants' Goods infringe the HOPGT Design Patent. (Owen Declaration ¶ 70, Comp. Ex. 1; Complaint Exhibit 5). Therefore, a likelihood of success on Plaintiff's patent infringement claim is shown.

**2. Plaintiff is Suffering Irreparable Injury.**

"[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx. 180, 191 (11th Cir. 2005) citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998). A finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its reputation as a result of a defendant's activities. *Id.* A likelihood of confusion exists herein because Defendants have engaged in counterfeiting and infringing activities using spurious designations similar or identical to one or more of the Betty's Best Marks.

**3. The Balance of Hardship Tips Sharply in Plaintiff's Favor.**

Plaintiff has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Betty's Best Marks. (Owen Decl. ¶¶ 32-37). Defendants should not be permitted to continue their trade in counterfeit goods because Plaintiff will suffer substantial losses and damage to its reputation as a result. (Owen Decl. ¶¶ 100, 102). Meanwhile, Defendants will suffer no legitimate hardship in the event a Temporary Restraining

Order is issued, because Defendants have no right to engage in their present counterfeiting and infringing activities.

**4. The Relief Sought Serves the Public Interest.**

The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. *Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.,* 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

Defendants are engaged in illegal activities which infringe upon Plaintiff's trademark, and directly defraud the consuming public by palming off Defendants' Goods as Plaintiff's genuine goods. The public interest favors the issuance of the requested relief to avoid further harm to the public as well as to the Plaintiff.

**C.    The Equitable Relief Sought is Appropriate.**

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a). The Copyright Act, 17 U.S.C. § 502(a), authorizes any Court having jurisdiction of a civil action arising under 17 U.S.C., subject to the provisions of section 1498 of 28 U.S.C, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright. The Patent Act authorizes the courts "jurisdiction of cases under this title [35 U.S.C. § 1 *et seq.*] to grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable" 35 U.S.C. § 283.

**1.    Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Trademarks, Copyrights and Patent is Appropriate.**

Plaintiff requests an Order requiring Defendants immediately cease all use of the Betty's Best Marks, or substantially similar marks, the copyrighted Works and the HOPGT Design Patent, including on or in connection with all e-commerce stores owned and operated, or controlled by them. This relief is necessary to stop the ongoing harm to Plaintiff's trademarks, copyrights, design patent, and goodwill and to prevent Defendants from continuing to benefit from the increased consumer traffic to their illegal operations created by their unlawful use of the Betty's Best intellectual property rights.

Many courts, including this Court, have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks. See *adidas AG v. the Individuals, Partnerships, and Unincorporations Identified on Schedule "A,"* Case No. 21-60242 (S.D. Fla. Feb. 5, 2021) (Order Granting Ex Parte Application for Entry of Temporary Restraining Order); *Chanel, Inc. v. designerchanelgirl.com*, Case No. 20-cv- 62447-RS (Dec. 7, 2020) (same); *Taylor Made Golf Company, Inc. et al v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 20-cv-60468-RS (S.D. Fla. April 9, 2020) (same); *Whirlpool Corporation v. Discountfridgefilter.com*, Case No. 19-cv-63115- RS (S.D. Fla. Jan. 7, 2020) (same); *Parsons Xtreme Golf, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-60310-BLOOM, 2019 U.S. Dist. LEXIS 79074 (S.D. Fla. Feb. 7, 2019) (same); *adidas AG v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-60457-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 78028 (S.D. Fla. Feb. 25, 2019) (same); *Apple Corps v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-60404-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 78863 (S.D. Fla. Feb. 19, 2019) (same).

2.   **Entry of an Order Prohibiting Transfer of the Seller IDs During the Pendency of this Action is Appropriate.**

To preserve the *status quo*, Plaintiff seeks an Order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Seller IDs being used and controlled by Defendants to other parties.

Once they become aware of litigation against them, Defendants operating online can easily, and often will, change the ownership or modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, and thereby thwart the Court's ability to grant meaningful relief. (Rothman Decl. ¶¶ 14, 15).

Here, an interim order prohibiting Defendants from transferring their e-commerce stores operating under the Seller IDs poses no burden on them, preserves the *status quo*, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Plaintiff full relief. See *adidas AG v. the Individuals, Partnerships, and Unincorporations Identified on Schedule "A,"* Case No. 21-60242 (S.D. Fla. Feb. 5, 2021) (Order restraining the transfer of e-commerce stores operating via marketplace platform); *Taylor Made Golf Company, Inc. et al v.*

*Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A",* Case No. 20-cv-60468-RS (S.D. Fla. April 9, 2020) (same); *Whirlpool Corporation v. Discountfridgefilter.com,* Case No. 19-cv-63115-RS (S.D. Fla. Jan. 7, 2020) (same); *Parsons Xtreme Golf, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-60310-BLOOM, 2019 U.S. Dist. LEXIS 79074 (S.D. Fla. Feb. 7, 2019) (same); *YETI Coolers, LLC v. Allramblerdeal.com*, No. 18-cv-62811-DIMITROULEAS, 2018 U.S. Dist. LEXIS 225651 (S.D. Fla. Nov. 21, 2018) (same); *Cartier Int'l A.G. v. Replicapaneraiwatches.cn*, No. 17-cv-62401-MOORE, 2018 U.S. Dist. LEXIS 225476 (S.D. Fla. Jan. 2, 2018) (same).

### 3. An Ex Parte Order Restraining Transfer of Assets is Appropriate.

In addition to an Order temporarily restraining Defendants' practices, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets. Plaintiff has demonstrated above that it will likely succeed on the merits of its claims. As such, Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting scheme. 15 U.S.C. § 1117(a) (2018), 17 U.S.C. §§ 504, 505, and 35 U.S.C. §§ 284, 289.

The counterfeiting business is inherently deceptive. (Rothman Decl. ¶¶ 13-19). In view of Defendants' intentional violations, Plaintiff respectfully requests this Court grant additional *ex parte* relief identifying payment accounts and restraining the transfer of all monies held or received by the financial entities at issue herein for the benefit of any one or more of the Defendants. See *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc.*, 80 F.3d 749 (2d Cir. 1996); *SEC v. ETS Payphones*, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a Defendant from transferring assets in cases where an equitable interest is claimed. *Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308 (1999). In light of the illicit nature of the counterfeiting business and the ability of counterfeiters to practically eliminate their evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of such asset restraints in cases involving

counterfeiting defendants.[3] *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992).

In cases in this district substantially similar to this matter, this Court and others have entered the precise relief sought herein. See e.g., *adidas AG v. the Individuals, Partnerships, and Unincorporations Identified on Schedule "A,"* Case No. 21-60242 (S.D. Fla. Feb. 5, 2021) (order granting TRO, requiring financial institutions to identify defendants' payment accounts and to restrain the funds in those accounts to preserve assets to satisfy plaintiffs' requested relief).[4] Using the power to issue provisional remedies ancillary to their authority to provide final equitable relief, numerous courts have granted orders restraining defendants from transferring their assets under trademark infringement claims. See e.g., *Levi Strauss & Co.*, 51 F.3d at 987.[5]

Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the Defendants. Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued ex parte. *See F.T. Int'l Ltd v. Mason*, No. CIV.A. 00-5004, 2000 WL 1514881, at *3 (E.D. Pa. Oct. 11, 2000) (granting *ex parte* TRO restraining Defendants' bank accounts upon finding that advance notice would likely have caused the Defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, 2000 WL

---

[3] In *Levi Strauss & Co.*, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under 15 U.S.C. § 1117.

[4] See also *Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 20-cv-60519-RS (S.D. Fla. April 9, 2020) (same); *Taylor Made Golf Company, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 20-cv-60468-RS (S.D. Fla. April 9, 2020) (same); *Whirlpool Corporation v. Discountfridgefilter.com*, Case No. 19-cv-63115-RS (S.D. Fla. Jan. 7, 2020) (same)); *Apple Corps v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-60404-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 78863 (S.D. Fla. Feb. 19, 2019) (same); *adidas AG v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-60457-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 78028 (S.D. Fla. Feb. 25, 2019) (same).

[5] Similarly, in *Reebok v. Marnatech*, the District Court granted Reebok a limited restraint of the defendants' assets for the purpose of preserving those assets, thus ensuring the availability of a meaningful accounting after trial. *Reebok Int'l Ltd.*, 737 F. Supp. at 1526. In affirming the decision, the Ninth Circuit determined that the plaintiff met its burden of demonstrating: (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendants might hide their allegedly ill-gotten profits if their assets were not frozen. *Reebok Int'l Ltd.*, 970 F.2d at 563. Moreover, the Court reasoned: "because the Lanham Act authorizes the District Court to grant Reebok an accounting of [defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief." *Reebok Int'l Ltd.*, 970 F.2d at 559; see also *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988), *cert. denied*, 490 U.S. 1035 (1989) ("[a] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies").

715601 (N.D. Ill. 2000) (converting ex parte TRO into preliminary injunction enjoining cable television pirates and restraining pirates' assets).

In this case, Defendants' blatant violations of federal trademark, copyright and patent laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Moreover, as Defendants' businesses are conducted anonymously over the Internet, Plaintiff has additional cause for *ex parte* relief, as Defendants may easily secret or transfer their assets without the Court's or Plaintiff's knowledge.

**4.    Entry of an Order Requiring Facebook (and its parent company Meta) to prevent further abuse of Plaintiff's Trademarks, Copyrights and Design Patent is Appropriate.**

In this case, the Court should enter the Order including Facebook (and its parent company Meta), temporarily restraining Defendants' practices; requiring Facebook to abide by U.S. law and its own Brand Rights Protection policy, prevent further abuse of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent. Plaintiff's efforts pursuing the IP infringements within the Facebook Ads Library pursuant Facebook's Brand Rights Protection policy hasn't been effective to stop permanently Counterfeiters' misappropriation and exploitation of Plaintiff's intellectual property rights. Defendants' blatant violations of federal trademark, copyrights and patent laws, in addition to the passive behavior of Facebook regarding the IP ingringements reported, warrant an ex parte Order requiring Facebook (and its parent company Meta) provides the complete contact information including email addresses, links and/or any other data serving as identifiers, associated with each Facebook Ad ID number assigned to each Ad created, using counterfeitings and infringements of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent; as well requiring Facebook (and its parent company Meta) removes Facebook Ads using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to promote the sale of counterfeit Betty's Best products.

**D.    A Bond Should Secure the Injunction.**

Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting and infringement, Plaintiff respectfully requests this Court require it to post a bond of no more than ten thousand dollars ($10,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a

temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## IV.    CONCLUSION

In view of the foregoing, Plaintiff respectfully requests this Court grant its *Ex Parte* Application and enter a Temporary Restraining Order as to Defendants in the form submitted herewith and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the Temporary Restraining Order. Additionally, in the event the Application is granted, Plaintiff respectfully requests the Court permit the parties, including witnesses, to appear and testify as necessary telephonically or by remote video at the hearing on Plaintiff's Motion for a Preliminary Injunction, in accordance with the administrative orders of this Court.

Furthermore, due to the time provisions of a Temporary Restraining Order, in the event the Application is granted, Plaintiff respectfully requests the Court provide a copy of the Temporary Restraining Order to Plaintiff's counsel via e-mail at docket@sriplaw.com so that Plaintiff may immediately effectuate any relief ordered therein and provide Defendants' proper notice of the Order and any subsequent hearing date.

DATED:  July 24, 2023                    Respectfully submitted,


                                         */s/ Joel B. Rothman*_____
                                         JOEL B. ROTHMAN
                                         Florida Bar Number:  98220
                                         joel.rothman@sriplaw.com
                                         ANGELA M. NIEVES
                                         Florida Bar Number:  1032760
                                         angela.nieves@sriplaw.com

                                         **SRIPLAW, P.A.**

                                         21301 Powerline Road
                                         Suite 100
                                         Boca Raton, FL  33433
                                         561.404.4350 – Telephone
                                         561.404.4353 – Facsimile

                                         *Counsel for Plaintiff Betty's Best, Inc.*