# SEALED

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.: 1:23-cv-22322-KMW

BETTY'S BEST, INC.,

        Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

        Defendants.

FILED BY_____ D.C.

JUL 2 5 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

---

## DECLARATION OF SARAH M. OWEN IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER RESTRAINING TRANSFER OF ASSETS

I, Sarah M. Owen, declare and say:

      1.     I am over 18 years of age, and I have personal knowledge of the facts set forth herein.

      2.     I make this Declaration in support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "Application for TRO").

      3.     If called upon to do so, I could and would competently testify to the following facts set forth below.

## BACKGROUND ON BETTY'S BEST, INC.

4.      I am President and Chief Executive Officer of BETTY'S BEST, INC. ("Betty's Best" or "Plaintiff").

5.      Betty's Best is a California Corporation with its principal place of business in Santa Ynez, California.

6.      Betty's Best incorporated on January 1, 2016, and has been in continuous operation since then.

7.      Betty's Best is the maker of the StripHair Gentle Groomer, a therapeutic brush for horses and dogs.

8.      Betty's Best's products are sold through hundreds of authorized retailers and distributors in the United States and many countries like Canada, United Kingdom, Australia, South Africa, Japan, and numerous countries across Europe, listed on the StripHair.com Store Locator Map at https://striphair.com/pages/retail-store-locator, its own website https://striphair.com/collections/all-products, Amazon.com and other authorized retailers, these last in marketplaces other than Amazon.com and eBay.com.

9.      Betty's Best owns the trademarks, copyrights and design patent described below that are the subject of this action in United States; as well registrations claiming protection for the product StripHair Gentle Groomer's design features in European Union and Australia, following the scope of its commercial activities extended outside the United States.

10.     Betty's Best created and sells its products under the federally registered trademarks STRIPHAIR and THE GENTLE GROOMER.

11.     Betty's Best offers for sale and sells its products within the state of Florida, including this district, and throughout the United States.

12.     Like many other intellectual property rights owners, Betty's Best suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

13.     Betty's Best is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

14.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Betty's Best expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

15.     The recent explosion of infringement over the Internet has created an environment that requires companies like Betty's Best to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brands.

**BETTY'S BEST'S TRADEMARK RIGHTS**

16.     Betty's Best created and sells unique patented grooming tools under the federally registered trademarks STRIPHAIR and THE GENTLE GROOMER (collectively the "Betty's Best Marks"), the first multi-purpose grooming tools of their kind, known as the "6-in-1 Shedding Grooming Massage brush" for horses and pets that can be used in 6 ways to shed, groom, shine, shampoo, scrape and massage. The StripHair Gentle Groomer is ideal for short-haired animals because it will not harm the skin, but it will also shed out a thick hairy coat in the spring-time molting season while providing a therapeutic massage and adding shine to the coat. It's safe to use everywhere, even the face and legs. The material used to make the StripHair

Gentle Groomer is perfectly balanced to achieve outstanding durability, flexibility, cleanliness, sun protection, and just the perfect amount of grip.

17.    Betty's Best is the owner of all rights in and to the Betty's Best Marks STRIPHAIR and THE GENTLE GROOMER (Standard Characters) for "grooming tools for pets, namely, combs and brushes; Currycombs" in International Class 21 shown in the table below.

| Mark | Reg. No. | IC | First Use | First Use in Commerce | Reg. Date | Exhibit |
|------|----------|----|-----------|-----------------------|-----------|---------|
| STRIPHAIR | 5072866 | 21 | 10/01/2014 | 12/16/2014 | 11/01/2016 | 1A |
| THE GENTLE GROOMER | 5328641 | 21 | 2015 | 2015 | 11/07/2017 | 1B |

18.    The Betty's Best Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office and shown in Composite Exhibit 1 to the Complaint in this action.

19.    The STRIPHAIR and THE GENTLE GROOMER Marks are incontestable.

20.    THE GENTLE GROOMER Mark uses the term "groomer", meaning a person who grooms (an animal, like a horse or dog), to personify the StripHair Gentle Groomer as a tool that acts gently on animals. This tool is not a bristle brush, not a shedding blade, and not a stiff water scraper, yet it can perform all of the same tasks.

21.    The Betty's Best Marks are used in connection with the manufacture and distribution of Betty's Best's high-quality and unique patented grooming tools.

22.    The Betty's Best Marks have been used in interstate commerce to identify and distinguish Betty's Best's high-quality and unique patented grooming tools for an extended period of time.

23.     The Betty's Best Marks are a symbols of Betty's Best's quality goods, reputation and goodwill and has never been abandoned.

24.     Betty's Best sells and fulfills orders shipping direct to consumers, retailers and distributors. Betty's Best establishs and maintains wholesale accounts to have better control over its brand.

25.     Betty's Best sells its products via authorized retailers and distributors on the world wide web, where it promotes and sells genuine products with the Betty's Best Marks to consumers.

26.     Online sales of products with Betty's Best Marks via the web represent a significant portion of Betty's Best's business.

27.     The Betty's Best Marks are exclusive to Betty's Best and are displayed extensively on Plaintiff's products and in our marketing and promotional materials.

28.     Betty's Best's products have been extensively promoted and advertised at great expense to Betty's Best.

29.     Betty's Best Marks are distinctive when applied to Betty's Best's products, signifying to the purchaser that the products come from Betty's Best and are manufactured to our quality standards. The authentic products are all made in United States.

30.     Whether Betty's Best manufactures the products itself or licenses others to do so, it has ensured that products bearing its trademarks are manufactured to the highest quality standards.

31.     The goodwill associated with the Betty's Best Marks is of incalculable and inestimable value.

32.     Betty's Best has expended substantial time, money and other resources developing, advertising and otherwise promoting the Betty's Best Marks in connection with Betty's Best's products. Betty's Best's average marketing and promotional investments are over $225,000 per year.

33.     Betty's Best has extensively used, advertised, and promoted the Betty's Best Marks in the United States in association with the sale of high-quality goods.

34.     Betty's Best has spent substantial resources promoting the Betty's Best Marks and products bearing or sold under these Marks.

35.     Sales of products bearing or sold under the Betty's Best Marks generated $1.6M (USD) in 2021.

36.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the Betty's Best Marks as being high-quality and unique goods sponsored and approved by Plaintiff.

37.     Betty's Best has received extensive editorial coverage and unsolicited press in various magazines, newspapers and publications throughout the world, as well awards, feature pieces and reviews of the products, among them:

- SPOGA HORSE Innovation Award at Cologne Germany 2018 International Trade Show
  - HORSES - Category Winner - Horses Product of the Year 2016 Europe
  - HORSES - Nominated - Horses Product of the Year 2018 – Europe
  - The CHRONICLE of the HORSE - USA - March 2018 - Rated top score 5/5 for hair-removal effectiveness and comfort for the horse.
- Equine Wellness Magazine article June 11, 2021, "Betty's Best is Changing the Way People Groom Their Horses", https://equinewellnessmagazine.com/bettys-best-groom-horses/
- "Review of the StripHair grooming tool" by Dr. Angelique Barbara, DVM with 2,903 views since Oct 2018, https://www.youtube.com/watch?v=xf_FyhNvhw0

6

- SmartPak retailer of StripHair - product review with 13,000 views since Dec 2018, https://www.youtube.com/watch?v=defzfvTrpD8
- "Striphair Gentle Groomer Review - Does It Really Work?" with 5,800 views since Feb 2019, https://www.youtube.com/watch?v=liTpxwl88_M
- "An Honest Review of the StripHair Gentle Groomer" article by the Economical Equestrian posted Mar 12, 2019, https://www.economicalequestrian.com/2019/03/12/an-honest-review-of-the-strip-hair-gentle-groomer/
- "The StripHair Gentle Groomer: Horse Grooming Tool" article in Sparkles and Sunshine blog post Sept 7, 2021, https://sparklesandsunshineblog.com/striphair-gentle-groomer-horse-grooming-tool/
- StripHair Facebook page with 89K Followers and Likes,
  - Product reviews March 2015 – current,
  - https://Facebook.com/StripHair
- Texas Horseman Magazine – March 15, 2020 - cover photo and featured article: "StripHair, The Gentle Groomer and the Woman Who's Changing How Horses are Groomed"; "Improving Circulation in Stall-Bound Horses".
- StripHair.com website product reviews since March 2015, https://striphair.com/pages/testimonials

38.     Plaintiff has carefully monitored and policed the use of the Betty's Best Marks.

39.     Genuine goods bearing or sold under the Betty's Best Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and retailers via the Internet.

40.     Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

41.     Betty's Best's high-quality and unique patented grooming tools are marketed with posts and ads on Facebook from StripHair and Instagram accounts using our custom videos: https://facebook.com/striphair and https://instagram.com/striphair. Those products are also marketed with Google Ads.

42.     Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

43.     Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the Betty's Best Marks.

## BETTY'S BEST'S COPYRIGHT RIGHTS

44.     Betty's Best advertises, markets, promotes and sells its products under the Betty's Best Marks using photographs, videos, and through a website that are protected by copyright and registered with the Copyright Office (collectively the "Works").

45.     Betty's Best's photographs are duly registered with the Register of Copyrights as visual materials as shown in the table below. True and correct copies of Copyrights Certificates of Registration and the photographs they apply to are attached hereto as Composite Exhibit 2 to the Complaint.

| Copyright Title and Description | Reg. No. | Reg. Date | Exhibit |
|---|---|---|---|
| StripHair Product Pictures 2020 (group of 10 photographs) | VA 2-299-367 | 05/12/2022 | 2A |
| StripHair Product Pictures 2019 (group of 7 photographs) | VA 2-300-902 | 05/19/2022 | 2B |
| StripHair Product Pictures 2018 (group of 2 photographs) | VA 2-304-928 | 06/03/2022 | 2C |
| StripHair Product Pictures 2021 (group of 8 photographs) | VA 2-304-931 | 06/03/2022 | 2D |

46.     Plaintiff's videos are duly registered with the Register of Copyrights as entire motion pictures as shown in the table below. True and correct copies of the Certificates of Registration are attached as Composite Exhibit 3 to the Complaint.

| Copyright Title and Description | Reg. No. | Reg. Date | Exhibit |
|---|---|---|---|
| SH-Video-1 11.01.2019 (entire motion picture) | PAu 4-142-655 | 06/14/2022 | 3A |
| SH-Video-2 4-01-2021 (entire motion picture) | PAu 4-142-666 | 06/14/2022 | 3B |
| SH-Video-3 7.01.2021 (entire motion picture) | PAu 4-143-928 | 06/30/2022 | 3C |
| SH-Video-4 4.01.2018 (entire motion picture) | PAu 4-143-929 | 06/30/2022 | 3D |
| SH-Video-5 3.01.2019 (entire motion picture) | PAu 4-145-045 | 07/14/2022 | 3E |
| SH-Video-7 6.01.2020 (entire motion picture) | PAu 4-145-360 | 07/19/2022 | 3F |
| SH-Video-8 5.01.2021 (entire motion picture) | PAu 4-145-361 | 07/19/2022 | 3G |
| SH-Video-6 2.01.2019 (entire motion picture) | PAu 4-145-379 | 07/19/2022 | 3H |

47.     Betty's Best's website content comprising photographs and text, titled "striphair.com website" is duly registered with the Register of Copyrights under the Reg. No. VA 2-271-013, effective from October 6, 2021. True and correct copy of Copyright Certificates of Registration are attached as Exhibit 4 to the Complaint.

48.     The copyrighted photographs, videos, and the website content show Betty's Best's high-quality and unique patented grooming tools design features, its packaging, and its effective use from different perspectives in horses and pets.

49.     Genuine grooming tools bearing or sold under the Betty's Best Marks are widely legitimately advertised and promoted by Betty's Best and its authorized distributors using Betty's Best's copyrighted photographs, videos, and through its website content.

50.     Betty's Best has never granted authorization to anyone to advertise, market or promote unauthorized goods using Betty's Best's copyrighted photographs, videos, and its website content.

**BETTY'S BEST'S PATENT RIGHTS**

51.     Betty's Best's grooming tools' design features are protected under a design patent and registered with the United Stated Patent and Trademark Office under the U.S. Patent No.

9

D841,900 S titled "HORSE OR PET GROOMING TOOL". A true and correct copy of U.S. Design Patent Registration is attached hereto as Exhibit 5 to the Complaint (the "HOPGT Design Patent").

52.     The HOPGT Design Patent relates to the ornamental design for a horse or pet grooming tool as shown and described through four figures corresponding and ordering in front, top, bottom and side views, in which the rear view of the design is identical to the front view and both side views are identical each other.

53.     The HOPGT Design Patent was registered on February 26, 2019, has not expired and is valid.

54.     Betty's Best marked its products with a Patent Notice.

55.     Betty's Best has never granted authorization to anyone to import, make, use or sell unauthorized goods using the HOPGT Design Patent.

56.     The overwhelming success of the unique patented grooming tools bearing or sold under the Betty's Best Marks has resulted in significant counterfeiting by individuals and entities who unlawfully use the trademarks and goodwill built by Betty's Best to sell cheap imitation counterfeits of Betty's Best's products.

**DEFENDANTS' COUNTERFEITING AND INFRINGING ACTIVITIES**

57.     Betty's Best has an anticounterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.

58.     Betty's Best investigated the promotion and sale of counterfeit and infringing products by Defendants to obtain payment account information for funds paid to Defendants for the sale of counterfeit products.

59.     These investigations have established that Defendants are using the various webstores on platforms such as Alibaba.com, AliExpress.com, Amazon.com, eBay.com, Joom.com, Newegg.com, Shopify.com Walmart.com, Wish.com, and others to sell Counterfeit Products from foreign countries such as China to consumers in the United States.

60.     Prior to signing this declaration, I or someone under my supervision accessed Defendants' Internet based e-commerce stores operating under their respective seller identification names through Alibaba.com, AliExpress.com, Amazon.com, eBay.com, Joom.com, Newegg.com, Shopify.com Walmart.com, Wish.com, and others as identified on Schedule "A" to the Complaint (the "Seller IDs").

61.     The Seller IDs and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Betty's Best.

62.     Upon accessing each of the e-commerce stores, I or someone under my supervision was able to view counterfeit products using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, add products to the online shopping cart, proceed to a point of checkout, and otherwise actively exchange data with each e-commerce store.

63.     I or someone under my supervision captured detailed web pages for each Defendant reflecting each counterfeit or infringing product bearing counterfeits and infringements of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent. True and correct copies of the web pages captured and downloaded showing the counterfeit products are attached hereto as Composite Exhibit 1.

64.     The Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent have been used by Betty's Best long prior in time to Defendants' use of copies of those intellectual property rights.

11

65.     The Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent have never been assigned or licensed to any of the Defendants.

66.     Defendants' individual seller stores using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent are indexed on search engines and compete directly with Plaintiff for space in search results.

67.     The appearance of Defendants' individual seller stores in search engine results undermines Betty's Best's efforts to educate consumers about the value of products sold with or under Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent.

68.     I, or someone under my supervision, personally analyzed each of the captured web pages and determined that Counterfeit Products were being offered for sale to residents of the United States. I, or someone under my supervision, further reviewed and visually inspected the detailed web page captures and photographs reflecting the Plaintiff-branded products and determined the products were not genuine versions of Plaintiff's goods. True and correct copies of the web pages captured and downloaded showing the counterfeit products can be seen in Composite Exhibit 1 attached hereto.

69.     These web pages show Defendants slavishly copied one or more of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent and offer Defendants' Goods for sale under identical marks indistinguishable to consumers, both at the point of sale and post-sale.

70.     I reached this conclusion through visual inspection of the products as they appeared on the Infringing Websites, the price at which the Counterfeit Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendants offered shipping to the U.S., and because Defendants and the Infringing Websites do

not conduct business with Betty's Best and do not have the right or authority to use the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent for any reason.

71.     Defendants created a false association between their counterfeit and infringing goods, their e-commerce stores, and Plaintiff, and this false association causes Plaintiff irreparable harm and damage. Defendant's counterfeit grooming tools reproduce the main design features of the HOPGT Design Patent, as is shown in a Claim Chart attached hereto as Exhibit 6 to the Complaint.

72.     Defendants falsely represent that their counterfeit and infringing goods are genuine, authentic, endorsed and authorized by Plaintiff.

73.     Despite Defendants' lack of authority, they are promoting, advertising, distributing, selling and/or offering for sale, through their respective Seller IDs, goods using counterfeit and infringing copies of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent without authorization ("Defendants' Goods") within the state of Florida, including this district and throughout the United States.

74.     It is estimated that the Defendants are responsible for thousands of counterfeit products sold using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent.

75.     Each sale made by the Defendants through a webstore results in a direct loss to Betty's Best. Over the years 30-50% of Betty's Best annual sales income has come from our authorized retailers, and distributors who service retailers, selling the StripHair Gentle Groomer both online and in stores. The counterfeiting activity has impacted the sales of not only Betty's Best direct-to-consumer sales (on StripHair.com and Amazon.com), but also our wholesale sales. Long-time multi-store buyers of the StripHair Gentle Groomer advised us that their sales were

down 90% over the past two years and blamed it on counterfeiting, citing the competing listings by counterfeiters on the same marketplaces. Lost confidence from wholesale buyers has resulted and will continue to result in a decline in sales volume and income for retailers and Betty's Best.

76.     I or someone under my supervision also placed certain test orders for products from certain Defendants via their e-commerce stores operating under the Seller IDs for the purchase of products bearing or using counterfeits and infringements of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent.

77.     The orders were processed entirely online. Following the submission of the orders, I received information to finalize payment for each of the products ordered via a payment processor on Alibaba.com, AliExpress.com, Amazon.com, eBay.com, Joom.com, Newegg.com, Shopify.com, Walmart.com, Wish.com, and others. After making each payment, products were received in the United States. I or someone under my supervision examined the products and determined that the products were counterfeit products that were not authorized by Betty's Best.

78.     The test purchases were shipped directly from China to the United States, as shown on the packaging information.

79.     These test purchases received in the United States establish that Defendants have engaged in counterfeiting practices by advertising, shipping, selling, or offering to sell infringing products on their online marketplaces, such as Alibaba.com, AliExpress.com, Amazon.com and eBay.com directly to the U.S.

80.     Other test products received shows that some of the Defendants used a company called CNE Express to ship its products. CNE Express is a Chinese logistics company which specializes in express delivery, and "provide[s] high-quality cross-border logistics products and services for global mainstream e-commerce platforms such as Amazon, eBay, Wish, as well as

independent stations such as Shopify, Shopexpress, and large domestic self-built station sellers such as SHEIN." See https://www.cne.com/about/intro/. In other words, CNE Express ships packages directly from Chinese sellers and exports it abroad including to the United States.

**COUNTERFEITING ON SOCIAL MEDIA**

81.     In addition to counterfeiting occurring on online marketplaces like Amazon.com, counterfeiting has also been found in advertising on social media that links to sellers on online marketplaces. Counterfeiters are using sophisticated advertising practices and tools to generate multiple ad versions using Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to imitate the StripHair brand and deceive the consumer to purchase counterfeit products from ad-linked website pages.

82.     Since 2021, I or someone under my supervision has searched out, observed, and recorded this new practice engaged in by counterfeiters. The counterfeiters use software to create advertising that they place on Facebook with links to third-party websites that direct potential purchasers to buy counterfeit products. Counterfeit sellers use software to alter Betty's Best photographs in creating paid sponsored advertisements within a Facebook account having ad links directly to associated website pages with active shopping buttons revealing more uses of Betty's Best Marks, the copyrighted Works and the HOPGT Design Patent. When a Facebook Ad is created, it is given a unique Facebook Ad ID number. Betty's Best has identified and tracked these Facebook Ads in the online Facebook Ads Library[1].

83.     For the past twenty-two months, Betty's Best employees or persons acting under their direction have searched many of the Facebook Ads, made publicly available in the online Ads Library, for specific terms that are common to Betty's Best and used also by counterfeiters.

---

[1] See https://www.facebook.com/ads/library.

When a Facebook Ad is discovered that uses Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, Betty's Best submitted IP infringement reports for each advertisement to Facebook. To date, Betty's Best has submitted over 3,512 IP Infringement Reports to Facebook. Attached hereto as **Schedule "B"** is a list documenting all the IP infringement reports submitted to Facebook.

84.    Despite Betty's Best's submission of over 3,512 IP infringement reports to Facebook, to date Facebook has not taken any action to stop Facebook Ad buyers from using Facebook Ads to promote the sale of counterfeit Betty's Best products. Many of the Facebook pages that the Facebook Ads linked to are still up and have not been removed despite our reports. Many Facebook pages go down for a short time only to become active a few days later. Many pages have been reported four to six times but have not been removed. All these pages contain counterfeits of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, or they link to other websites that contain counterfeits of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent. All of these Facebook Ads, Facebook Pages, and the Shopify websites they link to function in order to sell counterfeit Betty's Best products to unwitting consumers.

85.    Based upon our investigation to date it appears highly likely if not certain that the Facebook pages and Facebook Ads are owned, operated or administered by Defendants identified on Schedule "A" to the Complaint who are located in China and are using and abusing Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to sell counterfeit products.

86.    Betty's Best will be unable to stop the counterfeiting and infringements of its Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent unless the Court

includes Facebook (and its parent company Meta) in its temporary restraining order and requires Facebook to abide by U.S. law, prevent further abuse of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, and abide by its own Brand Rights Protection policy.

### DEFENDANTS' COUNTERFEITING AND INFRINGING ACTIVITIES CAUSE IRREPARABLE HARM TO PLAINTIFF IN THE FORM OF PRICE EROSION, DAMAGE TO REPUTATION, AND LOSS OF GOOD WILL THAT ARE NOT COMPENSABLE BY DAMAGES ALONE

87.     As the illegal marketplace for Betty's Best's products grows on the Internet, the legitimate marketplace for authentic Betty's Best's products shrinks.

88.     Monetary damages cannot adequately compensate Betty's Best for ongoing infringement because monetary damages fail to address the loss of control and damage to Betty's Best's reputation and goodwill.

89.     Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to our reputation and goodwill by acts of infringement.

90.     Betty's Best's goodwill and reputation are irreparably damaged when the Betty's Best Marks are used on goods not authorized, produced or manufactured by Plaintiff.

91.     Moreover, brand confidence is damaged, which can result in loss of future sales and market share.

92.     The extent of harm to Betty's Best's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

93.     Betty's Best is further irreparably harmed by the unauthorized use of the Betty's Best Marks because counterfeiters take away our ability to control the nature and quality of Counterfeit Products.

94.     Loss of quality control over goods bearing or sold under the Betty's Best Marks and, in turn, loss of control over our reputation, is neither calculable nor precisely compensable.

95.     The sale of counterfeit and infringing products bearing or sold under the Betty's Best Marks is likely causing and will continue to cause consumer confusion that weakens the Betty's Best Marks' brand recognition and reputation.

96.     Consumers who mistakenly believe that the Counterfeit Products he or she has purchased originated from Betty's Best will come to believe that Plaintiff offers low quality products.

97.     Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Betty's Best products, resulting in a loss or undermining of Plaintiff's reputation and goodwill.

98.     Indeed, there is damage to our reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit because prospective consumers who see inferior Counterfeit Products used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Betty's Best's products. Such post-sale confusion results in further damage Betty's Best's reputation and correlates to a loss of unquantifiable future sales.

99.     Betty's Best is further irreparably damaged due to a loss of exclusivity. Betty's Best's extensive marketing and innovative designs are aimed at growing and sustaining sales. The Betty's Best Marks are distinctive and signify to consumers that the products exclusively originate from Betty's Best. When counterfeiters use the Betty's Best Marks on goods without authorization, the exclusivity of the Betty's Best's products, as well as Betty's Best's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

100.   Betty's Best will suffer immediate and irreparable injury, loss or damage if counterfeiters are allowed to continue to infringe upon the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent.

101.   Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

102.   Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent.

103.   Plaintiff has suffered price erosion and deterioration as a result of Defendants' infringement. Since Betty's Best started establishing wholesale accounts and sales in 2015, it has enforced a minimum advertised pricing (MAP) policy with US retailers, and adhered to the MAP policy on StripHair.com and Amazon.com. Meanwhile, the counterfeiters listed on Schedule "A" to the Complaint in this case consistently undercut Betty's Best's MAP price considerably. This forces Betty's Best to consider lowering the MAP price in an effort to compete with the counterfeiters' prices. Not lowering the price will cause us to lose further business; lowering the price will significantly reduce our margin and the margin earned by our distributors and retailers.

104.   The StripHair Gentle Groomer is our flagship product, and our product line of supplemental products has and will continue to drop along with StripHair sales.

105.   Defendants sell their products that counterfeit and infringe Plaintiff's intellectual property rights for much less than Plaintiff.

106.   Plaintiff has continued to have difficulty selling its authentic products online because of the price pressure asserted by the Defendants' sale of counterfeit and infringing products.

107.    Plaintiff has suffered extreme pressure for further price erosion.

108.    With the limited sales data made available by e-commerce websites, Plaintiff was still able to determine that more than 64,584 counterfeit products were sold in the past year using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent. It is estimated that between 2021 and 2022 lost sales in USD substantially exceeded $19,000,000.


[REMAINDER OF PAGE INTENTIONALLY BLANK]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed at ___Santa Ynez___, ___CA_____ on __07/24/2023_____
            CITY        STATE      DATE

Sarah M. Owen
President and Chief Executive Officer
Betty's Best, Inc.