UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:23-cv-22322-KMW

BETTY'S BEST, INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

    Defendants.

**REPORT AND RECOMMENDATION ON PLAINTIFF'S EX PARTE APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER**

This matter is before the Court on Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (Doc. 4), filed under 15 U.S.C. § 1116, 17 U.S.C §§ 502 and 503, 35 U.S.C. §§281 and 283, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a), by Plaintiff, Betty's Best, Inc. ("Betty's Best" or "Plaintiff").

The Court has carefully considered the Motion, the record, and the governing law. For the reasons stated below, it is **RECOMMENDED** that Plaintiff's *Ex Parte* Application for Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets be **GRANTED IN PART AND DENIED IN PART.**

    **I.    BACKGROUND**

The following factual background is taken from Plaintiff's Complaint, the Application, and supporting evidentiary submissions and exhibits. [ECF. Nos. 1 and 11]. Plaintiff is the owner of

1

all rights in and to the 5072866 STRIPHAIR Mark registered on November 01, 2016, and 5328641 THE GENTLE GROOMER Mark registered on November 07, 2017 for "grooming tools for pets, namely, combs and brushes; Currycombs" in International Class 21 (collectively the "Betty's Best Marks"). The Betty's Best Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office and shown in Composite Exhibit 1 to the Complaint in this action. The STRIPHAIR Mark and THE GENTLE GROOMER Marks are incontestable. (Owen Decl. ¶¶ 17-19).

Plaintiff created and sells unique patented grooming tools under the Betty's Best Marks, the first multi-purpose grooming tools of their kind, known as the "6-in-1 Shedding Grooming Massage brush" for horses and pets that can be used in 6 ways to shed, groom, shine, shampoo, scrape and massage. The StripHair Gentle Groomer is ideal for short-haired animals because it will not harm the skin, but it will also shed out a thick hairy coat in the spring-time molting season while providing a therapeutic massage and adding shine to the coat. It's safe to use everywhere, even the face and legs. The material used to make the StripHair Gentle Groomer is perfectly balanced to achieve outstanding durability, flexibility, cleanliness, sun protection, and just the perfect amount of grip. (Owen Decl. ¶ 16). The Betty's Best Marks are used in connection with the manufacture and distribution of Plaintiff's high-quality and unique patented grooming tools. (Owen Decl. ¶ 21).

Plaintiff advertises, markets, promotes and sells its products under the Betty's Best Marks using photographs and through a website that are protected by copyright and registered with the Copyright Office (collectively, the "Works"). Plaintiff's photographs are duly registered with the Register of Copyrights as visual materials:

| **Copyright Title and Description** | **Reg. No.** | **Reg. Date** |
|---|---|---|
| StripHair Product Pictures 2020 (group of 10 photographs) | VA 2-299-367 | 05/12/2022 |
| StripHair Product Pictures 2019 (group of 7 photographs) | VA 2-300-902 | 05/19/2022 |
| StripHair Product Pictures 2018 (group of 2 photographs) | VA 2-304-928 | 06/03/2022 |
| StripHair Product Pictures 2021 (group of 8 photographs) | VA 2-304-931 | 06/03/2022 |

(Owen Decl. ¶¶ 44, 45).

Plaintiff's videos are duly registered with the Register of Copyrights as entire motion pictures, as shown in the table below.

| **Copyright Title and Description** | **Reg. No.** | **Reg. Date** |
|---|---|---|
| SH-Video-1 11.01.2019 (entire motion picture) | PAu 4-142-655 | 06/14/2022 |
| SH-Video-2 4-01-2021 (entire motion picture) | PAu 4-142-666 | 06/14/2022 |
| SH-Video-3 7.01.2021 (entire motion picture) | PAu 4-143-928 | 06/30/2022 |
| SH-Video-4 4.01.2018 (entire motion picture) | PAu 4-143-929 | 06/30/2022 |
| SH-Video-5 3.01.2019 (entire motion picture) | PAu 4-145-045 | 07/14/2022 |
| SH-Video-7 6.01.2020 (entire motion picture) | PAu 4-145-360 | 07/19/2022 |
| SH-Video-8 5.01.2021 (entire motion picture) | PAu 4-145-361 | 07/19/2022 |
| SH-Video-6 2.01.2019 (entire motion picture) | PAu 4-145-379 | 07/19/2022 |

(Owen Decl. ¶ 46).

Plaintiff's website content comprising photographs and text, titled "striphair.com website" is duly registered with the Register of Copyrights under the Reg. No. VA 2-271-013, effective from October 6, 2021. (Owen Decl. ¶ 47).

The copyrighted photographs, videos, and the website content show Betty's Best's high-quality and unique patented grooming tools design features, its packaging, and its effective use

from different perspectives in horses and pets. (Owen Decl. ¶ 48). Genuine grooming tools bearing or sold under the Betty's Best Marks are widely legitimately advertised and promoted by Betty's Best and its authorized distributors using Betty's Best's copyrighted photographs and through its website content. (Owen Decl. ¶ 49). Betty's Best has never granted authorization to anyone to advertise, market or promote unauthorized goods using Betty's Best's copyrighted photographs and its website content. (Owen Decl. ¶ 50).

Plaintiff's grooming tools' design features are protected under a design patent and registered with the United Stated Patent and Trademark Office under the U.S. Patent No. D841,900 S titled "HORSE OR PET GROOMING TOOL" (the "HOPGT Design Patent"). (Owen Decl. ¶ 51). The HOPGT Design Patent was registered on February 26, 2019, has not expired and is valid. (Owen Decl. ¶ 53). The HOPGT Design Patent relates to the ornamental design for a horse or pet grooming tool. (Owen Decl. ¶ 52).

Plaintiff alleges that Defendants, through e-commerce stores operating via Internet marketplace platforms under their seller identification names identified on Schedule "A" to the Complaint (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions and/or colorable imitations of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent. (Owen Decl. ¶¶ 59-63; Rothman Decl. ¶¶ 8; 10-12).

Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent (Owen Decl. ¶¶ 65, 102).

Plaintiff investigated the promotion and sale of counterfeit and infringing versions of Plaintiff's products by Defendants and to obtain the available payment account data for receipt of

funds paid to Defendants for the sale of counterfeit versions of Plaintiff's merchandise through the Seller IDs. (Owen Decl. ¶¶ 58-59; Rothman Decl. ¶ 10).

Plaintiff accessed the e-commerce stores operating under Defendants' Seller IDs. Plaintiff created detailed web page captures and images of the products using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent. (Owen Decl. ¶¶ 60, 63). Test purchases were placed for certain products—all bearing counterfeits of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent at issue in this action—and requested that each product be shipped to addresses in the United States. (Owen Decl. ¶¶ 76-80).

Plaintiff's representative reviewed and visually inspected the products and determined the products were non-genuine, unauthorized versions of Plaintiff's products. (Owen Decl. ¶ 70).

Plaintiff also observed counterfeiting on Facebook. (Owen Decl. ¶¶ 81-87). Defendants use software to create Facebook advertisements that contain counterfeits of the Betty's Best Marks, the Copyrighted Works, and the HOPGT Design Patent. *Id.* The Defendants' Facebook advertisements direct consumers to purchase counterfeit versions of Plaintiff's products from Defendants displayed by Defendants on Facebook or on websites created using online shopping cart software. Plaintiff's efforts to stop this illegal activity using take-down requests to Facebook has failed to date. *Id.*

On June 22, 2023, Plaintiff filed its Complaint against Defendants for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, common law trademark infringement, copyright infringement and patent infringement. [ECF. No. 1].

On July 24, 2023, Plaintiff filed its *Ex Parte* Application for Entry of a Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets. [ECF. No.

17].

## II.     LEGAL STANDARD

To obtain a Temporary Restraining Order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo,* 403 F.3d 1223, 1225–26 (11th Cir. 2005).

Additionally, Fed. R. Civ. P. Rule 65 provides that:

> The court may issue a temporary restraining order without written or oral notice to the adverse party of its attorney on if:
>
> (A)     specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B)     the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

*Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

## III.    DISCUSSION

Based on Declarations submitted in support of Plaintiff's Motion, the Court finds that Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing or using counterfeits, reproductions, or colorable imitations of one or more the Betty's Best Marks, the

Copyrighted Photographs, Videos, and Website, and the HOPGT Design Patent, that the products Defendants are selling and promoting for sale are copies of Plaintiff's products that bear or use copies of Plaintiff's intellectual property, and that the infringement of the trademarks, copyrights, and patents will likely cause Plaintiff to suffer immediate and irreparable injury.

The following specific facts, as set forth in Plaintiff's Complaint, the Motion, and accompanying Declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted: a) Defendants own or control e-commerce stores via Internet marketplace platforms operating under their Seller IDs which advertise, promote, offer for sale, and sell products bearing or using counterfeit and infringing trademarks, copyrights and patents in violation of Plaintiff's rights; b) there is good cause to believe that more counterfeit and infringing products bearing or using Plaintiff's trademarks, copyrights and patents will appear in the marketplace, that consumers are likely to be misled, confused, or disappointed by the quality of these products, and that Plaintiff may suffer loss of sales for its genuine products; and c) there is good cause to believe that if Plaintiff proceeds to put Defendants on notice of this Application, Defendants can easily and quickly transfer or modify e-commerce store registration data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, thereby thwarting Plaintiff's ability to obtain meaningful relief.

The potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a Temporary Restraining Order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products, if such relief is not issued. The public interest favors issuance of the Temporary Restraining Order

to protect Plaintiff's trademarks, copyrights and patents interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods. Further, under 15 U.S.C. §1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing or using counterfeits and infringements of Plaintiff's trademarks. See *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

Pursuant to 17 U.S.C § 504 (a)(1) and (b), Plaintiff may be entitled to recover, as an equitable remedy, the actual damages suffered as result of the infringement of the Copyrighted Photographs and any additional profits of the Defendants that are attributable to the infringement and are not taken into account in computing the actual damages or statutory damages pursuant 17 U.S.C § 504(a)(2) and (c). Under the Patent Act, Plaintiff may be entitled to a compensation for the infringement, no less that a reasonable royalty for the use made of the invention by the Defendants, together with the interest and cost fixed by the Court. See 35 U.S.C. § 284. Also, Plaintiff may be entitled to the extent of the total profit obtained by the Defendants for applying its registered design patents or any colorable imitation thereof, to Defendant's products for purpose of sale or expose for sale. See 35 U.S.C. § 289.

In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark, copyrights and patent laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motion be **GRANTED IN PART AND DENIED IN PART**, and a Temporary Restraining Order be ordered against all entities included in Plaintiff's attached Schedule "A" as follows:

1. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained as follows:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing or using one or more of the BETTY'S BEST Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using one or more of the BETTY'S BEST Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using one or more of the BETTY'S BEST Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant;

    c. From copying, displaying, distributing or creating derivative works of Plaintiff's Copyrighted Works; and

    d. From making, using, selling, importing and/or offering to sell products that practice the HOPGT Design Patent.

2. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of one or more of the BETTY'S BEST Marks, or any confusingly similar trademarks, the Copyrighted Works, and the HOPGT Design Patent, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs. This order is limited to the Defendants' listings using one or more of the BETTY'S BEST Marks, or any confusingly similar trademarks, the Copyrighted Works, and the HOPGT Design Patent, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs, and does not apply to the Defendants' entire e-commerce stores.

3. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of one or more of the BETTY'S BEST Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs.

4. Each Defendant shall not transfer ownership of the Seller IDs during the pendency of this action, or until further order of the Court.

5.      Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before the entry of this Order.

6.      Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd., Alipay.com Co., Ltd., and Alipay Singapore E-Commerce Private Limited (collectively, "Alipay"), Amazon Payments, Inc. ("Amazon"), Cloudflare.com ("Cloudflare"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), PayPal, Inc. ("PayPal"), eBay, Inc. ("eBay"), Newegg.com ("Newegg"), Shopify.com ("Shopify"), Stripe, Inc. and/or Stripe Payments Company ("Stripe"), Walmart.com ("Walmart"), and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the Seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" to the Complaint, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

7. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Cloudflare, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Newegg, Stripe, Walmart and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to; (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained; (iii) the historical sales for the Defendants' listings that are alleged to infringe Plaintiff's trademarks, copyrights and patents; and (iv) the true identities along with complete contact information including email addresses of all Defendants.

8. No funds restrained by this Order shall be transferred or surrendered by any Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Cloudflare, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, Newegg, PayPal, eBay, Stripe, Walmart, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

9. No Defendant whose funds are restrained by this Order may transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Cloudflare, Dunhuang Group which operates the DHgate.com and

DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Newegg, Stripe, Walmart, and their related companies and affiliates restrained by this Order to any other financial institution, payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

10. Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

11. This Order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting the BETTY'S BEST Marks and/or unfairly competing with Plaintiff and/or copying the Plaintiff's Copyrighted Works and/or infringing the HOPGT Design Patent.

12. This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated by the parties.

13. Plaintiff's requests as they relate to Facebook (and its parent company Meta) are beyond the scope of this Report and Recommendation. [ECF. No. 17 at 21]. Plaintiff has provided no case law to support its argument that Facebook is required to identify and provide certain information of Defendants or Facebook Advertisers listed in Schedule "B." The Temporary Restraining Order would already prohibit Defendants' "manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing or using one or more of the BETTY'S BEST Marks." [*See* §1(a)]. Plaintiff may raise this argument at the Preliminary Injunction hearing, if this Report and Recommendation is adopted by Judge Williams.

**BOND TO BE POSTED**

14. Pursuant to 15 U.S.C. § 1116(d)(5)(D), 17 U.S.C § 503 (a)(3) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court, and in the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

## **PRELIMINARY INJUNCTION**

If the District Judge adopts the recommendations made in this Report, a hearing will be set before this Court within fourteen days of the Order, at which time Defendants and/or any other affected person may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. Further, the Court should require the following:

(1) Once Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall serve copies of the Complaint, Application for Temporary Restraining Order, and any Order adopting this Report, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs or by providing a copy of this Order by email to the marketplace platforms for each of the Seller IDs so that the registrar, or marketplace platform, in turn, notifies each of Defendants of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.

(2) Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website located at

14

www.sriplaw.com/notice, and shall provide the address to the website to Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof.

(3) Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at www.sriplaw.com/notice, or by other means reasonably calculated to give notice which is permitted by the Court.

(4) Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace websites and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to AliExpress, Alipay, Amazon.com, Inc., Dunhuang Group which operates the DHgate.com and DHpay.com platforms, PayPal, ContextLogic, and their related companies and affiliates shall, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective Seller IDs.

(5) Defendants shall have five (5) business days to comply with this Temporary Restraining Order following notice.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), Plaintiff has **THREE** (3) days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge.[1] *See generally Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of*

---

[1] Because this Report and Recommendation stems from an *ex parte* application, the Undersigned is shortening the normal objection period for Plaintiff, and Defendants will not have the opportunity to object to the Undersigned's recommendations because of the *ex parte* nature of a temporary restraining order.

*Ga.*, 896 F.2d 507 (11th Cir. 1990). Failure to timely file objections will bar a de novo determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

    **SIGNED** this 24th day of August, 2023.

                                                  LISETTE M. REID
                                                  UNITED STATES MAGISTRATE JUDGE

**cc: United States District Judge Kathleen M. Williams;**

**Counsel of Record**