UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |
|---|---|
| BETTY'S BEST, INC., ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE INDIVIDUALS, PARTNERSHIPS, ) <br> AND UNINCORPORATED ) <br> ASSOCIATIONS IDENTIFIED ON ) <br> SCHEDULE "A," ) <br> Defendants ) | Case No. 1:23-cv-22322-KMW |

# **CERTAIN DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Defendants Nos. Nos. 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924, 735, 767, 778, 773, 821, 832, 907, 913, 919, 775, 916, 704, 800, 714, 847, 754, 763, 785, 702, 914, 927, 786, 817, 825, 871, 798, 877, 840, 915, 772, 880, 917, 923, 713, 839, 715, 728, 765, 803, 909, 879, 780, 818, 819, 878, 883, 822, 910, 858, 888, 922, 891, 904 ("Defendants"), as identified in Schedule "A" to the Complaint (DE 0011-007), by and through undersigned counsel, respectfully oppose Plaintiff Betty Best, Inc.'s ("Plaintiff") motion for preliminary injunction ("Motion").

**Table of Contents**

I.   INTRODUCTION ........................................................................................................ 2

   a.   Background of the Parties. ................................................................................... 2

   b.   Plaintiff Previously Brought These Claims In Another District And Voluntarily Dismissed Them After Unfavorable Rulings. ........................................................................ 3

   c.   Plaintiff Filed This Case By Concealing It From Defendants, And By Concealing Its Prior Litigation From The Court. ..................................................................................... 4

II.   LEGAL STANDARD ................................................................................................ 5

III.   ARGUMENT .............................................................................................................. 6

   a.   Plaintiff Fails To Prove A Likelihood Of Success On The Merits. ..................... 6

      i.   This Case Fails Due To A Lack Of Personal Jurisdiction. .............................. 6

      ii.  Defendants Were Never Validly Served. ......................................................... 9

      iii. Plaintiff's Intellectual Property Claims Are Meritless. ................................. 12

   b.   Plaintiff Cannot Prove It Would Suffer Irreparable Injury Absent A Preliminary Injunction. ........................................................................................................... 13

   c.   The Harm To Certain Defendants From An Injunction Outweighs Any Threatened Injury To Plaintiff. ........................................................................................................ 16

   d.   An Injunction Would Harm The Public Interest. ............................................... 16

   e.   If Any Injunction Issues, The Court Should Increase Plaintiff's Required Bond And Eliminate Or Reduce Any Asset Restraint. ........................................................ 17

IV.   CONCLUSION ......................................................................................................... 18

The Court should deny the reckless motion for preliminary injunction ("Motion") filed by Plaintiff Betty's Best, Inc. ("Plaintiff").  Another federal court told Plaintiff, regarding these same claims, "the Court admonishes Plaintiff for its freewheeling use of *ex parte* procedures."  That court had already indulged Plaintiff's "wasting of the Court's … resources" regarding these claims, and ordered Plaintiff "to exercise greater diligence in ensuring that subsequent filings are complete, accurate, and suitable for review."

Yet Plaintiff ignores that instruction.

Plaintiff's papers are incomplete.  They omit that Plaintiff brought these same claims in the Western District of Texas in 2022; that the Texas court transferred the case to Plaintiff's home district, the Central District of California; and that Plaintiff voluntarily dismissed those claims after unfavorable rulings—including a denial of the same exact motion for alternative service that Plaintiff filed here *ex parte*, without notice.

Plaintiff's papers are also inaccurate.  Plaintiff claims that "between 2021 and 2022 lost sales … exceeded $19,000,000."  DE 18, Owen Decl. ¶ 108.  This is a mistake or fabrication.  Even Plaintiff in the undisclosed California case contradicted this, stating that "between 2021 and 2022 (until July) lost sales … exceeded $1,000,000."  C.D. Cal. DE 8-1, Owen Decl., ¶ 105.

And Plaintiff's papers are not suitable for review.  While Plaintiff must meet four requirements to obtain the "extraordinary and drastic remedy" of a preliminary injunction, Plaintiff cannot meet any of them.  For at least six reasons, the Court should deny the Motion.

***First through third***, Plaintiff is not likely to succeed on the merits for at least three reasons.  First, the Court lacks personal jurisdiction over Defendants, since this case has no connections to Florida whatsoever.  Second, the case should be dismissed for improper service, since Plaintiff's email service under the circumstances violated the Hague Convention and due process.  Third, Plaintiff's claims will fail on their substance:  Plaintiff's advertising materials show that its design patent invalidly covers a functional design.  Copyright misuse and other defenses bar the copyright claims.  And only a few Defendants purportedly used any trademark, with phrases like "gentle groomer"—descriptive fair use for products that groom animals gently.

1

*Fourth*, Plaintiff is at no risk of imminent irreparable injury. Plaintiff's entire argument is that such a finding "is virtually always made" if likelihood of confusion supports a trademark infringement claim. There is no likelihood of confusion here, and even if there was, only five out of the 64 defendant websites at issue are accused trademark infringement. And Defendants have stopped selling the products at issue and have no intention of resuming sales. Moreover, Plaintiff has known of the offending uses since early 2022 and even filed suit on these claims in 2022. This over-one-year delay shows that Plaintiff is not at risk of "imminent irreparable harm," as required for a preliminary injunction.

*Fifth*, Plaintiff cannot meet the "balance of harms" requirement for an injunction. Defendants have stopped all sales of the accused products, so an injunction will not prevent any future harm. Moreover, Plaintiff is attempting to preserve a wildly overbroad asset restraint. Plaintiff admits that the TRO here froze *over $21 million*, while Plaintiff is well aware that these Defendants' total sales for accused products were orders of magnitude less. Defendants submit evidence confirming that such sales totaled *$42,144 globally*. This overbroad restraint is severely harming Defendants' business operation, despite being entirely unnecessary.

*Sixth*, Plaintiff cannot meet the "public interest" requirement. A preliminary injunction would not promote valid intellectual property, but would remove Defendants' legitimate businesses from commerce and harm international comity. Indeed, the improper asset restraint could destroy Defendants' business and prevent this case from being decided on the merits.

Ultimately, this case is a "freewheeling" attorney-driven ambush of numerous foreign companies. Through *ex parte* subterfuge, Plaintiff restrained tens of millions of Defendants' dollars and now want to lock in that restraint to put Defendants at an extreme disadvantage. The Court should see through this and, for multiple reasons, deny the Motion.

I.   **INTRODUCTION**

    a.   **Background of the Parties.**

Plaintiff is a Santa Ynez, California based company that alleges ownership of a horse and animal grooming product it calls "Striphair" and "Gentle Groomer." Defendants are successful

e-commerce companies based in Hong Kong and China with no connections to Florida. Plaintiff alleges that Defendants infringed Plaintiff's design patent rights to its product, its trademarks, and its copyrighted photos for use in advertising. Defendants dispute Plaintiff's claims.

To understand this case, it helps to cut through Plaintiff's rhetoric. Plaintiff alleges that Defendants, and numerous other websites, are "fraud" and "scam" entities who hide their identities and will abscond with funds at a moment's notice. Not so for these Defendants. The Defendants filing this opposition are 64 defendant websites which have filed notices of interested parties specifying the entities that own each of these websites. And for added clarity, Defendants are submitting a chart (the "Entities Chart") which shows the 26 separate entities that own the different websites at issue. Exhibit 1. The Entities Chart also shows, for each website, the sales amounts and proceeds of allegedly infringing products—both globally and for the minimal (often zero) amount sold to Florida addresses. *Id.* Global sales were minimal, with 957 total sales for $42,144 in revenue. *Id.* These Defendants are also submitting declarations from service providers knowledgeable about the Defendants' businesses that, among other things, list the Defendants' businesses addresses and confirm that they have ceased selling the accused products and have no intention to resume. *See* Exhibits 2 through 6.

### b. Plaintiff Previously Brought These Claims In Another District And Voluntarily Dismissed Them After Unfavorable Rulings.

This is not Plaintiff's first brush with litigation. In October 2022, Plaintiff filed a lawsuit in the Western District of Texas, asserting the same claims as here against 610 defendants, with the all but one of the defendants' names under seal. *Betty's Best, Inc. v. Yuyao Aggpo Elec. Tech. Co.*, 1:22-cv-01078-RP (W.D. Tex.) (the "Texas Case"). Plaintiff also filed an *ex parte* motion for a temporary restraining order, preliminary injunction, and asset restraint, and an *ex parte* motion for an order authorizing alternative service of process. *Id.*, DE 4 and 5. In December 2022, that court transferred the case to the Central District of California, since Plaintiff is a California corporation with its principal place of business there, and (like Florida) "the Defendants [did not] appear to have connections with" Texas. *Id.*, DE 10 (Order), at 3-4.

3

After receiving the case, still in December 2022, the Central District of California court denied Plaintiff's still-pending motions since its complaint lacked jurisdictional and venue allegations regarding California, and gave Plaintiff an opportunity to amend. *Betty's Best, Inc. v. Yuyao Aggpo Elec. Tech. Co.*, 2:22-cv-09096 (C.D. Cal.) (the "California Case"), DE 24. Plaintiff filed an amended complaint in January 2023, and in February 2023 it again filed *ex parte* motions for (1) a TRO/PI/asset restraint, and (2) alternative service. *Id*. DE 35, 39. On February 9, 2023, the Court denied the TRO, PI, and asset restraint, since Plaintiff's amended complaint did not give the defendants fair notice of the claims against them. *Id*. It stated:

> To avoid further wasting of the Court's and Plaintiff's resources, the Court grants Plaintiff leave to amend to plead in the defendants Plaintiff believes are subject to this lawsuit. Plaintiff shall file a second amended complaint within 14 days of this Order, so long as any amendment complies with Rule 11(b). The failure to amend within the period provided will waive the right to do so. … Given the procedural deficiencies in Plaintiff's filings thus far, the Court encourages Plaintiff to exercise greater diligence in ensuring that subsequent filings are complete, accurate, and suitable for review.

California Case, DE 41, at 2-3. The next day, Plaintiff filed yet another *ex parte* application, this time for reconsideration of the Court's order. *Id*. DE 41.

The court denied that application as well, both on the merits and because "[t]he application provides virtually no showing of cause." *Id*. DE 44 at 2. The court stated, "the Court admonishes Plaintiff for its freewheeling use of ex parte procedures. … Repeated abuse of ex parte procedures may result in sanctions." *Id*. at 3.

The court also denied Plaintiff's motion for alternative service for multiple reasons, including concerns that granting it would violate the Hague Convention and due process. *Id*. DE 43. On February 22, 2023, the Plaintiff voluntarily dismissed the case. *Id*. DE 45.

Four months later, on June 22, 2023, Plaintiff filed this case.

**c.    Plaintiff Filed This Case By Concealing It From Defendants, And By Concealing Its Prior Litigation From The Court.**

Plaintiff filed this lawsuit under seal and intentionally failed to provide notice of its

4

motion for temporary restraining order to Defendants.  Plaintiff also filed a motion for alternative service, also *ex parte* and without notice to any of the defendants.  This motion is virtually ***word-for-word identical*** to the motion that the California had already denied.  *Compare* DE 12 to California Case, DE 4.  Yet nowhere in its motion to this Court did Plaintiff even mention the California case, much less that it had already lost its motion.  With these misleading papers, and without the benefit of hearing from any defendants, the Court granted Plaintiff's motion for temporary restraining and its motion for alternative service.

Defendants first learned about this case in mid-September 2023, but they still were unable to access the docket for some time.  Defendants have scrambled to get up to speed on this matter with numerous international defendants and complex, overstated intellectual property claims.  Defendants have now appeared and are actively participating.

The TRO Order has two main categories of relief.  First, the TRO Order prohibits defendants, including Certain Defendants, from engaging in certain business activities regarding the intellectual property at issue in this litigation.  Second, the TRO Order restrains and freezes certain financial accounts of defendants, including Defendants, whose accounts are held by PayPal.  By Defendants' calculations, the TRO has restrained **$21,346,227.09** of Defendants' funds.  *See* Ex. 1, Entities Chart.  Virtually all of this is unrelated to this litigation.  Defendants have identified only 957 total sales for total proceeds of $42,144.06, and are submitting detailed screenshots to confirm these figures with documentary proof.  *Id*.; Ex. 7, Screenshots of Sales.  Thus, Defendants are being subjected to a crippling asset restraint of over 500 times the amount of revenue from all accused sales, and even over 10 times *plaintiff's entire annual revenue*, which Plaintiff states is $1.6 million.  DE 84, Amended Complaint ("AC") ¶ 38.

Plaintiff now requests that the TRO be converted into a preliminary injunction for the remainder of this litigation.  As explained below, this request fails.

## II.     LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1077 (11th Cir. 2021).  A plaintiff seeking a

5

preliminary injunction "must prove" that (1) "it has a substantial likelihood of success on the merits," (2) "it will suffer irreparable injury unless the injunction issues", (3) "the injury that threatens it outweighs whatever damage the proposed injunction may cause the opposing party," and (4) "the injunction would not be adverse to the public interest." *Norwegian Cruise Line Holdings Ltd v. State Surgeon Gen.*, 50 F.4th 1126, 1135 (11th Cir. 2022) (internal quotation marks omitted).

While the district court has discretion whether to grant or deny a preliminary injunction, "it must exercise that discretion in light of … the 'four prerequisites for the extraordinary relief of preliminary injunction." *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001). Indeed, this "extraordinary and drastic remedy" should "not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to *each* of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)) (emphasis added).

### III. ARGUMENT

#### a. Plaintiff Fails To Prove A Likelihood Of Success On The Merits.

##### i. This Case Fails Due To A Lack Of Personal Jurisdiction.

Personal jurisdiction is lacking, since this case has no connection to Florida. It is "axiomatic" that a court cannot grant a preliminary injunction against a defendant unless personal jurisdiction exists. *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363, 1364 (S.D. Fla. 1999). Thus, "a plaintiff must demonstrate a reasonable probability of success on the issue of personal jurisdiction to justify a preliminary injunction." *Liberty Media Holdings, LLC v. Letyagin*, No. 11-62107-CV, 2011 WL 13217328, at *3 and *4 (S.D. Fla. Dec. 14, 2011) (denying preliminary injunction for lack of personal jurisdiction over alleged "elusive foreign infringers," where the plaintiff alleged "web traffic originating from the United States" but not "actual acts directed at the forum state").

"The Court engages in a two-part analysis to determine if it may exercise jurisdiction over a non-resident defendant." *BTG Pat. Holdings, LLC v. Bag2Go, GmbH*, 193 F. Supp. 3d

1310, 1315 (S.D. Fla. 2016) (Williams, J.).  First, "the defendant's activities [must] satisfy Florida's long-arm statute."  *Id.*  Second, to establish jurisdiction, the Court must also find that "the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment."  *Id.*

Here, Plaintiff cannot establish personal jurisdiction.  Plaintiff premises jurisdiction on Defendants operating globally-available e-commerce websites, and asserts that Defendants "purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Florida and this district, through at least the internet-based e-commerce stores accessible in Florida…."  AC ¶ 7.  Plaintiff also alleges that it "offers for sale and sells its products within the state of Florida, including this district, and throughout the United States."  *Id.* ¶ 18.  And further, it alleges that Defendants are "competing with Plaintiff's economic interest in the state of Florida and causing Plaintiff harm and damage within this jurisdiction."  *Id.* ¶ 73.

Courts regularly hold such allegations insufficient to establish personal jurisdiction.  *See, e.g.*, *Vision Int'l Prod. Inc. v. Liteco S.R.L.*, 06-61462-CIV, 2007 WL 9700539, at *4 (S.D. Fla. Aug. 8, 2007) (allegation that defendants "have offered for sale and continued to offer for sale in this District" infringing products were "formulaic conclusory averments insufficient to satisfy Plaintiff's burden").  "[S]elling products on a website is insufficient to establish personal jurisdiction wherever a person might buy the product (in other words, wherever the Internet is available)."  *Performance Indus. Mfg., Inc. v. Vortex Performance Pty Ltd.*, No. 818CV00510T02AAS, 2019 WL 78840, at *4–5 (M.D. Fla. Jan. 2, 2019) (quotation marks omitted).  To establish jurisdiction, "the defendant's website must sell a 'significant' quantity of goods to people in the forum."  *Id.* (quoting *Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-CV-1584-T-23AEP, 2017 WL 4182405, at *2 (M.D. Fla. Sept. 21, 2017), and citing cases which found no personal jurisdiction even with some Florida sales).

Here, Plaintiff does not allege significant Florida sales, which alone warrants dismissal under both Florida's long-arm statute and the Due Process Clause.  And even if Plaintiff *did*

7

allege sales, Defendants submit documentary evidence of each and every sale it made, and also break those sales down by global sales per website, and sales that went to Florida by website. Ex. 1, Entities Chart. Most websites have zero sales to Florida. A handful have one or two, which is far from "significant", and indeed may represent Plaintiff's own "test purchases" rather than actual purchasers.[1] DE 18, Owen Decl. ¶ 76 (noting that Plaintiff made "test orders for products from certain Defendants via their e-commerce stores"). From a preliminary review, the same non-residential address at 1834 Gunn Highway, Odessa, Florida, placed many of these orders at many different websites, indicating that these were test purchases (a legitimate bulk purchaser would, of course, be more likely to purchase from the same site). Sales to test purchasers do not suffice to establish personal jurisdiction. *See Pado, Inc. v. Wieder & Friedman Enter. Inc.*, No. CV2004278CJCPVCX, 2020 WL 13368480, at *3 (C.D. Cal. July 9, 2020) ("First, the sales and letters to Plaintiff's two 'test purchasers' are not sufficient to support personal jurisdiction over Defendants in California because 'the plaintiff cannot be the only link between the defendant and the forum.'") (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

Regarding Plaintiff's contention it is suffering "harm and damage within this jurisdiction," Judge Williams has rejected similar allegations as a basis for personal jurisdiction. *BTG Pat. Holdings, LLC v. Bag2Go, GmbH*, 193 F. Supp. 3d 1310, 1318 (S.D. Fla. 2016) (Williams, J.). In *BTG*, the plaintiff alleged "injury [from infringement] is felt in this State because Plaintiff and its closely held companies operate in South Florida." *Id*. Judge Williams noted that the plaintiff "is a Nevada corporation" with "its principal place of business in Las Vegas." *Id*. Thus, the plaintiff "ha[d] not been injured in Florida; its injury, if anywhere, manifests in Nevada." *Id*.

So too here. Plaintiff is a California corporation with headquarters within the Central District of California (where it previously attempted to litigate these claims). Its injury, if anywhere, manifests in California.

---

[1] The only website with over 3 orders from Florida was moonlightooze.com (defendant 831), which shows 13 orders—far from "significant" for a product that Plaintiff sells for $29.95.

8

Perhaps recognizing this case's lack of connections with Florida, Plaintiff alleges "[a]lternatively" that jurisdiction exists under Federal Rule of Civil Procedure 4(k)(2). This is wrong too. Rule 4(k)(2) states that "serving a summons … establishes personal jurisdiction" if (A) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and (B) "exercising jurisdiction is consistent with the United States Constitution and laws." As explained in the following section, Plaintiff never properly served Defendants, which alone ends this inquiry. But even if service was proper, Plaintiff has not established that each of the multiple Defendants "is not subject to jurisdiction in any state's courts of general jurisdiction." Rule 4(k)(2)(A). Again, Judge Williams' *BTG* opinion is instructive: There, the Court rejected a similar request for jurisdiction in Florida under Rule 4(k)(2) because, like here, the plaintiff had not established that the defendants were not subject to jurisdiction in its home district. 193 F. Supp. 3d at 1318.

Because there is no personal jurisdiction, the Motion should be denied.

      ii.      <u>Defendants Were Never Validly Served.</u>

Separately, while Plaintiff purported to serve Defendants by alternative service, Plaintiff never validly served Defendants.

Plaintiff's motion for alternative service here concealed the fact that another district court had already denied the *exact same motion* for, among other reasons, concerns about (1) "whether service by email is prohibited by international agreement" and (2) "failing to establish that service by email would comport with due process." California Case, DE 43 at 3. For this reason alone, the Court should find that Plaintiff never validly served Defendants and should deny a preliminary injunction on that ground.

The California court was right to be concerned. Email deliveries to defendants in China "are improper methods of service" under the Hague Convention. *Night Owl SP, LLC v. Dongguan Auhua Elecs. Co.*, No. 219CV109FTM38UAM, 2019 WL 5084162, at *1–2 (M.D. Fla. Mar. 15, 2019). "[B]ecause the defendants are located in China, a party to the Convention, the Hague Convention applies." *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1389

9

(S.D.N.Y. July 21, 2022); Fed. R. Civ. P. 4 adv. com. note ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service."). And "service via email on litigants located in China is not permitted by the Hague Convention." *Smart Study*, 620 F. Supp. 3d at 1393.

*Smart Study* is directly on point. There, a plaintiff brought copyright and other claims under seal against multiple defendants in China. Like here, "following a playbook regularly utilized by Plaintiff's counsel," plaintiffs quickly applied for a TRO, an order to show cause re: preliminary injunction, an asset freeze, and an order authorizing email service under FRCP 4(f)(3). *Id*. at 1386. The court initially granted plaintiffs' request.

Later, two defendants appeared and argued that email service was invalid. At oral argument, "the Court asked Plaintiff's counsel to respond to the **many cases** that have … determined that service by email on Defendants located in China is not permitted," and counsel could not. *Id*. at 1387 (emphasis added). Ultimately, the *Smart Study* court found that "[t]he defendants in this case were not properly served pursuant to Federal Rule of Procedure 4(f)(3)." *Id*. at 1391. In a well-reasoned opinion, the court held that alternative service like Plaintiff requested here, on defendants in China, is improper under Supreme Court precedent. *Id*. at 1393-97 (discussing *Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017), among other authorities).

Indeed, multiple courts have held that China's objection to service by "postal channels" includes an implicit objection to service by email for purposes of the Hague Convention. *See e.g., Agha v. Jacobs*, No. C 07-1800 RS, 2008 U.S. Dist. LEXIS 109326, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008) ("Agha's attempt to distinguish email and facsimile from the 'postal channels' referred to in the text of Article 10 is unavailing."); *Smart* Study, 620 F. Supp. 3d at 1394. Further, in January 2022, the Supreme People's Court in China stated:

> In the event that the country where the person to be served is located is a member state of the Hague Service Convention and objects to the service by mail under the Convention, it shall be presumed that the country does not allow electronic service, and the people's court shall not adopt electronic service.

*See Schluter Sys., L.P. v. Sanven Corp.*, No. 822CV155TJMCFH, 2023 WL 130888, at *4 (N.D.N.Y. Jan. 6, 2023) (following *Smart Study*). Thus, courts have increasingly agreed that—contrary to what Plaintiff has informed the Court here—the Hague Convention prohibits service by email on defendants in China.

Further, Plaintiff cannot show reasonable diligence. The Hague Convention permits alternative service if the Plaintiff shows that it "exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Smart Study*, 620 F. Supp. 3d at 1390 (quotation marks omitted). To show reasonable diligence, Plaintiff must do more than criticize foreign websites. *See id.* ("a mere perusal of a defendant's [online] storefront" is insufficient); *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Assocs.*, 391 F. Supp. 3d 816, 822-24 (N.D. Ill. 2019) ("[T]he plaintiff must make reasonably diligent efforts to learn the defendant's mailing address…. By way of contrast, a Chinese address has been found to be unknown where the plaintiff hired an investigator in China to determine whether physical addresses associated with domain names were valid and found them to be not so.") (citing *Chanel, Inc. v. Xu*, 2010 WL 396357, at *1, *3 (W.D. Tenn. Jan. 27, 2010)).

Here, Plaintiff does not submit ***any*** evidence of diligence in trying to ascertain Defendants' addresses. The declaration of counsel submitted with that motion merely states that "In my experience, counterfeiters … do not disclose their real locations or true identities." DE 12-1, ¶ 14.[2] This falls far short of reasonable diligence. *Smart Study*, 620 F. Supp. 3d at 1391 (no reasonable diligence where plaintiff alleged that, "upon review of Defendants' Merchant Storefronts ... [Plaintiff's counsel] discovered that ... eleven (11) of the Defaulting Defendants ... displayed a partial, incomplete and/or false address"); *Kyjen Co., LLC v. Individuals…*, No. 23 CIV. 612 (JHR), 2023 WL 1345781, at *2 (S.D.N.Y. Jan. 31, 2023) (rejecting email service on Chinese defendants; plaintiff's declaration "that Defendants 'often use multiple fictitious names

---

[2] Plaintiff also alleges that other defendants "who sell infringing products through online marketplaces …do not provide a physical address." DE 12-1, ¶ 14. The Defendants at issue here are alleged to sell directly through their own websites, not marketplaces, and this allegation falls short of reasonable diligence in any event.

11

and addresses,' including addresses that are 'incomplete, contain randomly typed letters, or fail to include cities or states' … falls short of reasonable diligence"). This failure to properly serve Defendants is a second reason to deny the Motion.

iii. <u>Plaintiff's Intellectual Property Claims Are Meritless.</u>

Plaintiff overstates its intellectual property rights. For instance, Plaintiff's design patent is invalid. While Plaintiff claims rights to "the ornamental design for a horse or pet grooming tool, as shown and described [in the patent]," Plaintiff's advertising touts the functional aspects of the design. *See* Ex. 8 ("The unique all-in-one design offers unlimited convenience to groom, curry, shine, shed, shampoo, slick, and massage.").[3] Thus, the design patent is likely invalid, and Defendants did not infringe it. *See Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996) ("[I]f the design claimed in a design patent is dictated solely by the function of the article of manufacture, the patent is invalid because the design is not ornamental.").

Further, while Plaintiff makes shotgun allegations of trademark and copyright infringement against all Defendants, Plaintiff fails to show that these Defendants actually used the trademarks or copyrights at issue in an actionable way, and Defendants have viable defenses. For example, copyright misuse bars Plaintiff's claims, since Plaintiff is attempting to leverage copyrighted materials to gain a monopoly on an unprotectable product. *See Habersham Plantation Corp. v. Molyneux*, No. 10-61526-CIV, 2011 WL 13216995, at *1 (S.D. Fla. Dec. 5, 2011) ("evidence that Plaintiff misused its alleged compilation copyrights by claiming protection to material that it does not own and cannot protect" would be an "absolute defense" to copyright claims). As another example, even for the small subset of Defendants which allegedly used "the Gentle Groomer" or "Striphair", such use would be descriptive fair use for products that gently groom animals or that strip hair. Indeed, Plaintiff fails to present any evidence of actual confusion. Moreover, possible defenses exist such as laches and unclean hands due to Plaintiff's

---

[3] https://striphair.com/products/striphair-gentle-groomer-original (last accessed 9/25/2023). "In general, websites and their contents may be judicially noticed." *Threshold Enters. v. Pressed Juicery, Inc*., 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020).

12

delay and misuse of court process and purported intellectual property rights.

At this early stage, particularly where Defendants have only received notice of this complex, numerous-defendant, international case a few weeks ago, it is a plaintiff's obligation to prove that it will likely succeed. Plaintiff here has not done so.

### b. Plaintiff Cannot Prove It Would Suffer Irreparable Injury Absent A Preliminary Injunction.

Plaintiff also fails to show a likelihood of irreparable harm.

First, Plaintiff not only delayed in seeking relief, but engaged in forum shopping and gamesmanship for well over a year. "A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm. A preliminary injunction requires showing 'imminent' irreparable harm." *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016) (denying preliminary injunction in a trademark case; five-month delay "fatally undermined any showing of irreparable injury").

Here, Plaintiff's own screenshots show that Plaintiff was aware of the purportedly infringing uses since at least early 2022. Similar to many others, Plaintiff's screenshot of the below website shows a date of April 18, 2022 in the top right corner:



13

Further, in October 2022, Plaintiff filed the Texas Case in the Western District of Texas, asserting the same claims as here against hundreds of defendants. Plaintiff filed the documents identifying the defendants there under seal, but all substantive allegations are virtually identical.[4] The Western District court *sua sponte* transferred that case to Plaintiff's home district, the Central District of California, since—like with the Southern District of Florida—"Neither the Plaintiff nor the Defendants have a sufficient connection to Texas." Texas Case, 1:22-cv-01078-RP (W.D. Tex.) DE 10 at 3. Plaintiff voluntarily dismissed that case in February 2023 after being admonished by the California court, and then filed this action four months later.

Plaintiff's delay and gamesmanship is problematic for numerous reasons. Certainly, it shows that Plaintiff is not at risk of "imminent irreparable harm" required to justify a preliminary injunction. 6 *McCarthy on Trademarks and Unfair Competition*, § 31:32 (5th ed.) ("Even a few weeks' delay in filing suit may … speak louder than plaintiff's legal arguments claiming an urgent need for a prompt injunction…."); *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1356 (S.D. Fla. 2002) (denying preliminary injunction because a plaintiff's delay of "almost a full year after it admits to knowing about Defendant's activities … undercuts any sense of urgency").

Even putting aside Plaintiff's delay, the Motion fails to establish irreparable harm. Plaintiff's entire argument is confined to a short, conclusory paragraph restricted to trademark infringement. Motion at 16. Namely, Plaintiff argues that "[a] finding of irreparable injury following a showing of likelihood of confusion is virtually always made…." *Id*. But only 5 out of the 64 websites at issue with these Defendants used any alleged trademark at all. DE 18 Ex. 1. For the remaining websites, Plaintiffs' Motion does not make any showing of irreparable harm at all. Moreover, all Defendants filing this opposition have confirmed that they have stopped selling the products at issue and have no intention to resume sales. *See* Exs. 2-6.

---

[4] This shows no irreparable harm regardless of whether Plaintiff included the Defendants in the litigation. Even if not, Plaintiff has no excuse for seeking relief earlier, since Plaintiff knew about many of the alleged uses since early 2022, well before filing the prior matter.

Thus, for multiple reasons, Plaintiff fails to show imminent irreparable harm.

And even if *some* potential for irreparable harm existed (it does not), the existing asset restraint is both unnecessary to prevent that harm and extraordinarily overbroad. Plaintiff concedes that its total annual sales of the products at issue were around $1.6 million. AC ¶ 31. And Defendants' worldwide sales of relevant products at issue was $42,144. Ex. 1. Yet Plaintiff's TRO has restrained **over $21 million** from these Defendants alone, despite virtually all of it being unrelated to this case. *Id*. This freeze is entirely improper and should be immediately lifted. *See, e.g.*, *CFTC v. E-Metal Merchants, Inc.*, No. 05-21571-CIV, 2006 WL 8432005, at *7 (S.D. Fla. Jan. 9, 2006) (for asset restraints, "any funds not reasonably related to the ultimate relief requested by Plaintiff should be released"); *Deckers Outdoor Corp. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013) ("[W]here (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more.").

And there is no question the restrained amount is unrelated. While Plaintiff declares that "between 2021 and 2022 lost sales in USD substantially exceeded $19,000,000," even basic scrutiny shows that is either a mistake or a fabrication. DE 18, ¶ 108. Namely, Plaintiff supposedly supports this figure by stating that "more than 64,584 counterfeit products were sold in the past year." *Id*. At Plaintiff's $29.95 price point, this would total $1,934,280— not $19,000,000.

Indeed, Plaintiff's refusal to share information confirms that Plaintiff is playing fast and loose with the facts. As just one example, Plaintiff admits that "the vast majority of these [allegedly infringing sales] were sold by a small number of the defendants." DE 120 at 2 ¶ 5. And Defendants provide credible evidence that that vast majority lies with other defendants, since Defendants sold only 957 total allegedly infringing products. Defendants asked Plaintiff to provide specific information about which defendants sold the vast majority of products, but Plaintiff has not done so. Ex. 9, Kramer Decl. ¶ 2.

Even if none of this evidence existed, Plaintiff's request to extend the wildly overbroad asset freeze for the duration of this litigation should fail, as it bears no relationship to irreparable harm. A claim that undifferentiated "'defendants' as a group are likely to move their assets to offshore accounts … is inadequate to support the broad asset freeze" of all those defendants' accounts. *Tang v. Individuals, etc.*, No. 21-14431-CIV, 2022 WL 1664116, at *3 (S.D. Fla. Feb. 28, 2022) ("[I]n light of the extreme breadth and severity of the proposed asset freeze—combined with the speculative and generalized nature of the showing of alleged irreparable injury—Plaintiff has not met its burden to warrant that aspect of the relief sought."). Yet "speculative and generalized" evidence is precisely what Plaintiff submits here.

Accordingly, the Court should deny the Motion for lack of imminent irreparable injury. If any injunction does issue, it should not include any asset freeze, much less continue the existing freeze of over $21 million where only $42,144 of sales are at issue.

### c. The Harm To Certain Defendants From An Injunction Outweighs Any Threatened Injury To Plaintiff.

The threatened injury to Plaintiffs absent an injunction pales in comparison to the harms to Defendants, particularly given the extraordinarily overbroad asset freeze. Defendants provide evidence of significant and ongoing harm due to the injunction: the eight-figures restraint is understandably crippling their ability to do business. Exs. 2-6. In contrast, even putting aside the Complaint's lack of merit, the threatened injury to Plaintiffs is minimal. Defendants have stopped selling any accused products, and will not do so in the future. Further, Defendants' sales from allegedly infringing products are orders of magnitude less than the restrained amount, and Defendants' profits are even less. Thus, the lopsided balance of harms by itself warrants denying the preliminary injunction.

### d. An Injunction Would Harm The Public Interest.

Plaintiff also cannot show that a preliminary injunction is in the public interest. Continuing the injunction, particularly regarding Defendants' assets, would remove Defendants' businesses from participating in commerce, resulting in lower availability of products, higher

16

prices, reduced competition, and reduced consumer selection. *See Miller's Ale House, Inc. v. Boynton Carolina Ale House*, LLC, No. 09-80918-CIV, 2009 WL 6812111, at *22 (S.D. Fla. Oct. 13, 2009), *report and recommendation adopted*, 2009 WL 6812112. Moreover, considerations of international comity would be harmed by restraining tens of millions of dollars of foreign companies in a case where dramatically lower sales and profit figures are at stake. If the Defendants cannot access their restrained assets, they may be unable to sufficiently contest this case on its merits, which violates equity. Thus, converting the TRO into a preliminary injunction would harm the public interest.

### e. If Any Injunction Issues, The Court Should Increase Plaintiff's Required Bond And Eliminate Or Reduce Any Asset Restraint.

No preliminary injunction should issue here. But if it does, the Court should significantly increase the bond that Plaintiff must post and eliminate or reduce any asset restraint. The Court's TRO required a bond of only $10,000. Defendants have already been harmed vastly in excess of that amount due to the extraordinarily overbroad restraint of over $21 million from unrelated sales. And that is just for the 64 websites at issue in this opposition. The current $10,000 bond is woefully inadequate in a case with more than 1,000 defendants and tens of millions of dollars in assets wrongfully restrained, which is causing ongoing irreparable harm to Defendants' businesses. (Indeed, if the litigation progresses, Defendants reserve the right to bring counterclaims against Plaintiff for, among other things, the harm caused by the wrongful and vastly overbroad restraint, as well as any appropriate motions for sanctions against Plaintiff and its counsel.) Thus, if the Court grants the preliminary injunction, Certain Defendants request that Plaintiff be ordered to post a bond of no less than $2,000,000. Moreover, the asset restraint should be entirely eliminated or dramatically reduced. Here, Defendants' total relevant sales are $42,144, with a profit margin of 8% (*see* Exs. 2-6) for a total profit of $3,372. Thus, while no preliminary injunction should issue, if one does, the Court should either eliminate the TRO's asset restraint or modify it to restrain only $3,372 of Defendants' funds, allocated to the Defendants in the Entities Chart based on their relative amounts of sales. *See Deckers Outdoor*,

17

2013 WL 12314399, at *2 ("[T]he appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief. For example, where (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more.").

## IV. CONCLUSION

Defendants respectfully request that the Court deny Plaintiff's motion for preliminary injunction. To the extent the Court grants the Motion, any such injunction should be strictly limited and should not include any asset restraint.

Dated: October 9, 2023

Giuliano Law Group, P.A.

/s/ Nicole W. Giuliano
Nicole W. Giuliano, Esq.
Florida Bar No. 71067
121 S. Orange Avenue, Suite 1500
Orlando, FL 32801
Tel: (321) 754-5290 / Fax: (321) 400-1055
Primary: nicole@glgpa.com
service@glgpa.com

DGW KRAMER LLP

By: /s/ Katherine Burghardt Kramer
   Katherine Burghardt Kramer,
   Esq. *Pro hac vice*
   DGW KRAMER LLP
   One Rockefeller Plaza, 10th Fl.
   Suite 1060
   New York, NY 10020
   T: (917) 633-6860
   kkramer@dgwllp.com

*Attorney for Certain Defendants* Nos. 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924, 735, 767, 778, 773, 821, 832, 907, 913, 919, 775, 916, 704, 800, 714, 847, 754, 763, 785, 702, 914, 927, 786, 817, 825, 871, 798, 877, 840, 915, 772, 880, 917, 923, 713, 839, 715, 728, 765, 803, 909, 879, 780, 818, 819, 878, 883, 822, 910, 858, 888, 922, 891, 904.