UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| BETTY'S BEST, INC., <br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, PARTNERSHIPS, <br> AND UNINCORPORATED <br> ASSOCIATIONS IDENTIFIED ON <br> SCHEDULE "A," <br> Defendants | Case No. 1:23-cv-22322-KMW |

## CERTAIN DEFENDANTS' MOTION TO DISMISS

Defendants Nos. 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924, 735, 767, 778, 773, 821, 832, 907, 913, 919, 775, 916, 704, 800, 714, 847, 754, 763, 785, 702, 914, 927, 786, 817, 825, 871, 798, 877, 840, 915, 772, 880, 917, 923, 713, 839, 715, 728, 765, 803, 909, 879, 780, 818, 819, 878, 883, 822, 910, 858, 888, 922, 891, 904 ("Defendants"), as identified in Schedule "A" to the Complaint (DE 0011-007), by and through undersigned counsel, respectfully move to dismiss the Amended Complaint (DE 84) of Plaintiff Betty Best, Inc.'s ("Plaintiff").

i

**Table of Contents**

I.   INTRODUCTION ................................................................................................................ 1

   a.   Plaintiff Previously Brought These Claims In Another District And Voluntarily Dismissed Them After Unfavorable Rulings. ........................................................................................ 1

   b.   Plaintiff Alleges Conclusory, Shotgun Allegations Against Numerous Defendants. .......... 3

II.  ARGUMENT ..................................................................................................................... 4

   a.   The Court Lacks Personal Jurisdiction Over Defendants. .................................................. 4

   b.   Plaintiff Never Validly Served Defendants. ........................................................................ 8

   c.   If This Case Is Not Dismissed, It Should Be Transferred To The Central District Of California. ........................................................................................................................... 11

   d.   Plaintiff's Complaint Is An Implausible Shotgun Pleading. .............................................. 13

   e.   The Court Should Dissolve Any Remaining Restraint Or Injunction. .............................. 15

III. CONCLUSION ................................................................................................................ 15

IV.  CERTIFICATION ........................................................................................................... 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff has been forum-shopping this overreaching case since at least October 2022. It has known about the alleged conduct at issue since 2021. It first brought a lawsuit in the Western District of Texas against hundreds of defendants (all under seal). The Texas court *sua sponte* transferred that case to the Central District of California because it lacked connections with Texas, just like it does with Florida. In turn, the California court told Plaintiff, regarding these same claims, "the Court admonishes Plaintiff for its freewheeling use of ex parte procedures." That court had already indulged Plaintiff's "wasting of the Court's … resources" regarding these claims, and ordered Plaintiff "to exercise greater diligence in ensuring that subsequent filings are complete, accurate, and suitable for review." Faced with unfavorable rulings, including one which denied Plaintiff's motion for alternative service due to Due Process and Hague Convention concerns, Plaintiff voluntarily dismissed the case.

Plaintiff's efforts fare no better in this district.

The Court should dismiss Plaintiff's Amended Complaint ("AC") at docket entry 84 for no less than four separate reasons. First, the Court lacks personal jurisdiction over Defendants, since this case has no connections to Florida whatsoever. Second, the case should be dismissed for improper service, since Plaintiff's email service under the circumstances violated the Hague Convention and due process. Third, venue is improper in this district, and if the AC survives at all this case should be transferred to Plaintiff's home district in the Central District of California, like the Texas court already did. Fourth, Plaintiff's AC is both implausible and a "shotgun" pleading filled with conclusory, undifferentiated allegations.

Accordingly, for multiple independent reasons, the Court should dismiss Plaintiff's AC without leave to amend.

**I.      INTRODUCTION**

      **a.      Plaintiff Previously Brought These Claims In Another District And Voluntarily Dismissed Them After Unfavorable Rulings.**

Plaintiff is a Santa Ynez, California based company that alleges ownership of a horse and

1

animal grooming product it calls "Striphair" and "Gentle Groomer." Plaintiff alleges that over 1,000 defendants on Schedule A are foreign companies which "violated one or more of the Plaintiff's licensed intellectual property rights in the United States, by the use of common or identical methods." DE 84, ¶ 97. In fact, the moving Defendants here are e-commerce companies based in Hong Kong and China with no connections to Florida, and these Defendants dispute Plaintiff's claims.

This is not Plaintiff's first brush with this litigation. In October 2022, Plaintiff filed a lawsuit in the Western District of Texas, asserting the same claims as here against 610 defendants, with all but one of the defendants' names under seal. *Betty's Best, Inc. v. Yuyao Aggpo Elec. Tech. Co.*, 1:22-cv-01078-RP (W.D. Tex.) (the "Texas Case"). Plaintiff also filed an *ex parte* motion for a temporary restraining order, preliminary injunction, and asset restraint, and an *ex parte* motion for an order authorizing alternative service of process. *Id*., DE 4 and 5. In December 2022, that court transferred the case to the Central District of California, since Plaintiff is a California corporation with its principal place of business there, and (like Florida) "the Defendants [did not] appear to have connections with" Texas. *Id.*, DE 10 (Order), at 3-4.

After receiving the case, still in December 2022, the Central District of California court denied Plaintiff's still-pending motions since its complaint lacked jurisdictional and venue allegations regarding California, and gave Plaintiff an opportunity to amend. *Betty's Best, Inc. v. Yuyao Aggpo Elec. Tech. Co.*, 2:22-cv-09096 (C.D. Cal.) (the "California Case"), DE 24. Plaintiff filed an amended complaint in January 2023, and in February 2023 it again filed *ex parte* motions for (1) a TRO/PI/asset restraint, and (2) alternative service. *Id*. DE 35, 39. On February 9, 2023, the Court denied the TRO, PI, and asset restraint, since Plaintiff's amended complaint did not give the defendants fair notice of the claims against them. *Id*. It stated:

> To avoid further wasting of the Court's and Plaintiff's resources, the Court grants Plaintiff leave to amend to plead in the defendants Plaintiff believes are subject to this lawsuit. Plaintiff shall file a second amended complaint within 14 days of this Order, so long as any amendment complies with Rule 11(b). The failure to amend within the period provided will waive the right to do so. … Given the procedural deficiencies in Plaintiff's filings thus far, the Court encourages Plaintiff to

2

> exercise greater diligence in ensuring that subsequent filings are complete, accurate, and suitable for review.

California Case, DE 41, at 2-3.  The next day, Plaintiff filed yet another *ex parte* application, this time for reconsideration of the Court's order.  *Id*. DE 41.

The court denied that application as well, both on the merits and because "[t]he application provides virtually no showing of cause." *Id*. DE 44 at 2.  The court stated, "the Court admonishes Plaintiff for its freewheeling use of ex parte procedures. … Repeated abuse of ex parte procedures may result in sanctions." *Id*. at 3.

The court also denied Plaintiff's motion for alternative service for multiple reasons, including concerns that granting it would violate the Hague Convention and due process. *Id*. DE 43.  On February 22, 2023, Plaintiff voluntarily dismissed the case. *Id*. DE 45.

Four months later, on June 22, 2023, Plaintiff filed this case.

    **b.**    **Plaintiff Alleges Conclusory, Shotgun Allegations Against Numerous Defendants.**

Plaintiff filed this lawsuit under seal and intentionally failed to provide notice of its motion for temporary restraining order to Defendants.  Plaintiff also filed a motion for alternative service, also *ex parte* and without notice to any of the defendants.  This motion is virtually ***word-for-word identical*** to the motion that the California court had already denied. *Compare* DE 12 to California Case, DE 4.  Yet nowhere in its motion to this Court did Plaintiff even mention the California case, much less that it had already lost its motion.  With these misleading papers, and without the benefit of hearing from any defendants, the Court granted Plaintiff's motion for temporary restraining and its motion for alternative service.

Plaintiff's operative complaint is its Amended Complaint (DE 84), which asserts patent, trademark, copyright, and related claims.  The AC is heavy with conclusions but devoid of facts.  For instance, Plaintiff alleges ownership of a design patent, two trademarks, and certain copyrights, and claims that for over 1,000 defendants on Schedule A, "All Defendants violated one or more of the Plaintiff's licensed intellectual property rights in the United States, by the use

3

of common or identical methods." DE 84, ¶ 97.  Virtually all allegations in the AC similarly lump the numerous defendants together and allege legal conclusions.

For multiple independent reasons, the Court should dismiss Plaintiff's AC.

## II.     ARGUMENT

### a.     The Court Lacks Personal Jurisdiction Over Defendants.

Plaintiff bears the burden of "establishing a prima facie case of personal jurisdiction over a nonresident defendant."  *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-civ, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013) (citation omitted). Where a defendant submits affidavits to the contrary, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."  *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (citation omitted).

"The Court engages in a two-part analysis to determine if it may exercise jurisdiction over a non-resident defendant."  *BTG Pat. Holdings, LLC v. Bag2Go, GmbH*, 193 F. Supp. 3d 1310, 1315 (S.D. Fla. 2016) (Williams, J.).  First, "the defendant's activities [must] satisfy Florida's long-arm statute."  *Id.*  Second, to establish jurisdiction, the Court must also find that "the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment."  *Id.*

Here, Plaintiff cannot establish personal jurisdiction.  Plaintiff premises jurisdiction on Defendants operating globally-available e-commerce websites, and asserts that Defendants "purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Florida and this district, through at least the internet-based e-commerce stores accessible in Florida…." AC ¶ 7.  Plaintiff also alleges that it "offers for sale and sells its products within the state of Florida, including this district, and throughout the United States." *Id.* ¶ 18.  And further, it alleges that Defendants are "competing with Plaintiff's economic interest in the state of Florida and causing Plaintiff harm and damage within this jurisdiction." *Id.* ¶ 73.

4

Courts regularly hold such allegations insufficient to establish personal jurisdiction. *See, e.g.*, *Vision Int'l Prod. Inc. v. Liteco S.R.L.*, 06-61462-CIV, 2007 WL 9700539, at *4 (S.D. Fla. Aug. 8, 2007) (allegation that defendants "have offered for sale and continued to offer for sale in this District" infringing products were "formulaic conclusory averments insufficient to satisfy Plaintiff's burden"). "[S]elling products on a website is insufficient to establish personal jurisdiction wherever a person might buy the product (in other words, wherever the Internet is available)." *Performance Indus. Mfg., Inc. v. Vortex Performance Pty Ltd.*, No. 818CV00510T02AAS, 2019 WL 78840, at *4–5 (M.D. Fla. Jan. 2, 2019) (quotation marks omitted). To establish jurisdiction, "the defendant's website must sell a 'significant' quantity of goods to people in the forum." *Id.* (quoting *Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-CV-1584-T-23AEP, 2017 WL 4182405, at *2 (M.D. Fla. Sept. 21, 2017), and citing cases which found no personal jurisdiction even with some Florida sales).

Here, Plaintiff does not allege significant Florida sales or any other sufficient basis for personal jurisdiction in Florida, which alone warrants dismissal under both Florida's long-arm statute and the Due Process Clause. And even if Plaintiff *did* allege sales, Defendants have submitted declarations establishing that they have no connections to Florida, along with documentary evidence of each and every sale these Defendants made and a breakdown of those sales by global sales per website, and sales that went to Florida by website. DE 121-1 (chart of entities and sales), DE 121-2 through 121-6 (affidavits of individuals regarding these Defendants), and DE 121-7 (screenshots of sales).[1] Most websites have zero sales to Florida. A handful have one or two, which is far from "significant", and indeed may represent Plaintiff's own "test purchases" rather than actual purchasers.[2] DE 18, Owen Decl. ¶ 76 (noting that Plaintiff made "test orders for products from certain Defendants via their e-commerce stores").

---

[1] Defendants have a pending motion to seal these previously-filed documents (DE 126), and for avoidance of confusion, unnecessary use of resources, and a cluttered docket, Defendants are not re-filing these documents with this motion, but would do so if ordered.

[2] The only website with over 3 orders from Florida was moonlightooze.com (defendant 831), which shows 13 orders—far from "significant" for a product that Plaintiff sells for $29.95.

5

From a preliminary review, the same non-residential address at 1834 Gunn Highway, Odessa, Florida, placed many of these orders at many different websites, indicating that these were test purchases (a legitimate bulk purchaser would, of course, be more likely to purchase from the same site). Sales to test purchasers do not suffice to establish personal jurisdiction. *See Pado, Inc. v. Wieder & Friedman Enter. Inc.*, No. CV2004278CJCPVCX, 2020 WL 13368480, at *3 (C.D. Cal. July 9, 2020) ("First, the sales and letters to Plaintiff's two 'test purchasers' are not sufficient to support personal jurisdiction over Defendants in California because 'the plaintiff cannot be the only link between the defendant and the forum.'") (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

Perhaps recognizing an absence of significant Florida sales, Plaintiff has previously contended that "[t]here is no such 'significant quantity' requirement" to establish personal jurisdiction. DE 130 at 6. Plaintiff is wrong, and is simply ignoring the *Performance Industries* and *Blue Water International* cases cited above, which expressly state that "the defendant's website must sell a 'significant' quantity of goods to people in the forum." *Performance Indus.*, 2019 WL 78840, at *4-5. Plaintiff also ignores that *Blue Water International* cited multiple cases to support that rule, including the Eleventh Circuit's *Louis Vuitton* opinion, which only found "personal jurisdiction over a defendant who undisputedly sold 'substantial quantities' of allegedly counterfeit merchandise in Florida." *Blue Water*, 2017 WL 4182405, at *2 n. 7 (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1347 (11th Cir. 2013)). Thus, personal jurisdiction fails to satisfy either Florida's long-arm statute or due process, which are two independent reasons warranting dismissal. *Blue Water*, 2017 WL 4182405, at *2-4. And even if Plaintiff met both those criteria (it does not), this is a compelling case where jurisdiction over Defendants would not "comport with fair play and substantial justice," since the burden on numerous international defendants would be immense to litigate the case in Florida, especially given "Florida's tenuous connection to the dispute." *Performance Industries*, 2019 WL 78840, at *7 (dismissing case even where, unlike here, the "Plaintiff [was] a Florida resident").

Plaintiff claims that Defendants admit that, for a few (not all) of these Defendants, a

6

small (not "significant") number of sales went to addresses in Florida.  But even that is only a half-truth.  As stated above, many or all Florida purchases at issue appear to have been caused by Plaintiff's own test purchases.  Plaintiff admits to making test purchases from the Defendants and has not disputed that some test purchases occurred in Florida.  *See, e.g.*, DE 130-2 (Jacobs Decl.) ¶¶ 44-45.  And while it is Plaintiff's burden to establish jurisdiction, Defendants' preliminary investigation confirmed that many products they supposedly sold into Florida went to the same address at 1834 Gunn Highway, Odessa, Florida, apparently to fictitious individuals with obviously fake names such as "Tequila Vrebucojy."  Kramer Declaration. ¶ 2.

Defendants have already made the argument that Plaintiff's test purchases cannot establish personal jurisdiction, citing a California federal case, and Plaintiff responded by arguing that "there is no such rule in Florida or the Eleventh Circuit."  DE 130 at 7.  But Plaintiff is wrong here too.  Florida federal courts, including the *Performance Industries* case Defendants cite, hold that test purchases in Florida do not suffice to establish personal jurisdiction.  *Performance Indus.*, 2019 WL 78840, at *5 (finding no personal jurisdiction because "there is no evidence of 'significant' sales in the State. The only actual 'sales' in Florida presented by Plaintiff appear to have been caused by Plaintiff's counsel as part of this litigation.").

Regarding Plaintiff's contention it is suffering "harm and damage within this jurisdiction," Judge Williams has rejected similar allegations as a basis for personal jurisdiction.  *BTG Pat. Holdings, LLC v. Bag2Go, GmbH*, 193 F. Supp. 3d 1310, 1318 (S.D. Fla. 2016) (Williams, J.).  In *BTG*, the plaintiff alleged "injury [from infringement] is felt in this State because Plaintiff and its closely held companies operate in South Florida."  *Id*.  Judge Williams noted that the plaintiff "is a Nevada corporation" with "its principal place of business in Las Vegas."  *Id*.  Thus, the plaintiff "ha[d] not been injured in Florida; its injury, if anywhere, manifests in Nevada."  *Id*.

So too here.  Plaintiff is a California corporation with headquarters within the Central District of California (where it previously attempted to litigate these claims).  Its injury, if

7

anywhere, manifests in California.

In briefing regarding Plaintiff's motion for a preliminary injunction, Plaintiff attempted to salvage its jurisdictional showing by contending that it "has sold thousands of dollars of their products in Florida." DE 130 at 5; DE 130-2 (Jacobs Decl.) ¶ 51. This vague contention does nothing to help Plaintiff, not only because a plaintiff cannot be the link that justifies personal jurisdiction, but also because the "thousands" figure is minimal compared to Plaintiff's overall revenue, which Plaintiff asserts was $1.6 million in 2021 alone. DE 84 (Amended Complaint), ¶ 38. Further, Plaintiff does not specifically allege that it sold the relevant products in Florida, only that it sold "merchandise" in the state

Perhaps recognizing this case's lack of connections with Florida, Plaintiff alleges "[a]lternatively" that jurisdiction exists under Federal Rule of Civil Procedure 4(k)(2). This is wrong too. Rule 4(k)(2) states that "serving a summons … establishes personal jurisdiction" if (A) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and (B) "exercising jurisdiction is consistent with the United States Constitution and laws." As explained in the following section, Plaintiff never properly served Defendants, which alone ends this inquiry. But even if service was proper, Plaintiff has not established that each of the multiple Defendants "is not subject to jurisdiction in any state's courts of general jurisdiction." Rule 4(k)(2)(A). Again, Judge Williams' *BTG* opinion is instructive: There, the Court rejected a similar request for jurisdiction in Florida under Rule 4(k)(2) because, like here, the plaintiff had not established that the defendants were not subject to jurisdiction in its home district. 193 F. Supp. 3d at 1318.

Because there is no personal jurisdiction, the Court should dismiss this case.

b.  **Plaintiff Never Validly Served Defendants.**

Separately, while Plaintiff purported to serve Defendants by alternative service, Plaintiff never validly served Defendants.

Plaintiff's motion for alternative service here concealed the fact that another district court had already denied the *exact same motion* for, among other reasons, concerns about (1) "whether

8

service by email is prohibited by international agreement" and (2) "failing to establish that service by email would comport with due process." California Case, DE 43 at 3.

The California court was right to be concerned. Email deliveries to defendants in China "are improper methods of service" under the Hague Convention. *Night Owl SP, LLC v. Dongguan Auhua Elecs. Co.*, No. 219CV109FTM38UAM, 2019 WL 5084162, at *1–2 (M.D. Fla. Mar. 15, 2019). "[B]ecause the defendants are located in China, a party to the Convention, the Hague Convention applies." *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1389 (S.D.N.Y. July 21, 2022); Fed. R. Civ. P. 4 adv. com. note ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service."). And "service via email on litigants located in China is not permitted by the Hague Convention." *Smart Study*, 620 F. Supp. 3d at 1393.

*Smart Study* is directly on point. There, a plaintiff brought copyright and other claims under seal against multiple defendants in China. Like here, "following a playbook regularly utilized by Plaintiff's counsel," plaintiffs quickly applied for a TRO, an order to show cause re: preliminary injunction, an asset freeze, and an order authorizing email service under FRCP 4(f)(3). *Id.* at 1386. The court initially granted plaintiffs' request.

Later, two defendants appeared and argued that email service was invalid. At oral argument, "the Court asked Plaintiff's counsel to respond to the **many cases** that have … determined that service by email on Defendants located in China is not permitted," and counsel could not. *Id.* at 1387 (emphasis added). Ultimately, the *Smart Study* court found that "[t]he defendants in this case were not properly served pursuant to Federal Rule of Procedure 4(f)(3)." *Id.* at 1391. In a well-reasoned opinion, the court held that alternative service like Plaintiff requested here, on defendants in China, is improper under Supreme Court precedent. *Id.* at 1393-97 (discussing *Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017), among other authorities).

Indeed, multiple courts have held that China's objection to service by "postal channels" includes an implicit objection to service by email for purposes of the Hague Convention. *See e.g., Agha v. Jacobs*, No. C 07-1800 RS, 2008 U.S. Dist. LEXIS 109326, 2008 WL 2051061, at

9

\*2 (N.D. Cal. May 13, 2008) ("Agha's attempt to distinguish email and facsimile from the 'postal channels' referred to in the text of Article 10 is unavailing."); *Smart* Study, 620 F. Supp. 3d at 1394. Further, in January 2022, the Supreme People's Court in China stated:

> In the event that the country where the person to be served is located is a member state of the Hague Service Convention and objects to the service by mail under the Convention, it shall be presumed that the country does not allow electronic service, and the people's court shall not adopt electronic service.

*See Schluter Sys., L.P. v. Sanven Corp.*, No. 822CV155TJMCFH, 2023 WL 130888, at \*4 (N.D.N.Y. Jan. 6, 2023) (following *Smart Study*). Thus, courts have increasingly agreed that— contrary to what Plaintiff has informed the Court here—the Hague Convention prohibits service by email on defendants in China.

Further, Plaintiff cannot show reasonable diligence. The Hague Convention permits alternative service if the Plaintiff shows that it "exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Smart Study*, 620 F. Supp. 3d at 1390 (quotation marks omitted). To show reasonable diligence, Plaintiff must do more than criticize foreign websites. *See id*. ("a mere perusal of a defendant's [online] storefront" is insufficient); *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Assocs.*, 391 F. Supp. 3d 816, 822-24 (N.D. Ill. 2019) ("[T]he plaintiff must make reasonably diligent efforts to learn the defendant's mailing address…. By way of contrast, a Chinese address has been found to be unknown where the plaintiff hired an investigator in China to determine whether physical addresses associated with domain names were valid and found them to be not so.") (citing *Chanel, Inc. v. Xu*, 2010 WL 396357, at \*1, \*3 (W.D. Tenn. Jan. 27, 2010)).

Here, Plaintiff never submitted *any* evidence of diligence in trying to ascertain Defendants' addresses. The declaration of counsel submitted with Plaintiff's motion for alternative service merely stated that "In my experience, counterfeiters … do not disclose their real locations or true identities." DE 12-1, ¶ 14.[3] This falls far short of reasonable diligence.

---

[3] Plaintiff's counsel also contended that other defendants "who sell infringing products through online marketplaces …do not provide a physical address." DE 12-1, ¶ 14. The Defendants at

*Smart Study*, 620 F. Supp. 3d at 1391 (no reasonable diligence where plaintiff alleged that, "upon review of Defendants' Merchant Storefronts ... [Plaintiff's counsel] discovered that ... eleven (11) of the Defaulting Defendants ... displayed a partial, incomplete and/or false address"); *Kyjen Co., LLC v. Individuals…*, No. 23 CIV. 612 (JHR), 2023 WL 1345781, at *2 (S.D.N.Y. Jan. 31, 2023) (rejecting email service on Chinese defendants; plaintiff's declaration "that Defendants 'often use multiple fictitious names and addresses,' including addresses that are 'incomplete, contain randomly typed letters, or fail to include cities or states' … falls short of reasonable diligence").

Further, Defendants have now provided their physical addresses to Plaintiff. *See* DE 121, Exs. 2-6. Now that Plaintiff has obtained this information, it should be required to pursue service through the established international means. In addition, some of these Defendants are based in Hong Kong SAR, not mainland China

For these reasons, in addition to the concerns voiced by the California court in denying alternative service, the failure to properly serve Defendants is a second reason to dismiss this case.

    **c.    If This Case Is Not Dismissed, It Should Be Transferred To The Central District Of California.**

Even if this case is not dismissed for improper venue, the Court should transfer it to the Central District of California under either 28 U.S.C. § 1404(a), just like another federal court already did. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "District courts have broad discretion in determining whether to transfer a case" and consider the following "public and private factors":

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the

---

issue here are alleged to sell directly through their own websites, not marketplaces, and this allegation falls short of reasonable diligence in any event.

>attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Chicken Kitchen USA, LLC v. Tyson Foods, Inc*., No. 17-21503-CIV, 2017 WL 6760811, at *2 (S.D. Fla. Oct. 4, 2017) (Williams, J.) (quoting *Manuel v. Convergys Corp*., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

The Western District of Texas court already transferred Plaintiff's claims to the Central District of California under Section 1404(a) and found that "venue is clearly more convenient in" the Central District of California. Texas Case, DE 10 at 7. Most of its reasoning applies equally here, and is identical if you replace "Texas" with "Florida":

>Neither the Plaintiff nor the Defendants have a sufficient connection to [Florida]. Plaintiff Betty's Best, Inc. is a California corporation and its principal place of business is in Santa Ynez, California. Its only connection to the state of [Florida] is that some of its authorized retailers offer and sell its products within the state. (Id. at 4). …
>
>Nor do any of the Defendants appear to have connections with [Florida]. Each of the … Defendants named in Schedule A "reside and/or operate in foreign jurisdictions." Plaintiff alleges that the Defendants "target their business activities toward consumers throughout the United States" but does not state with any specificity that their conduct has been targeted towards [Florida] more than any other state. …
>
>Here, most of Plaintiff's proof comes from the Declaration of the company's Chief Executive Officer, Sarah M. Owen, who appears to reside in Santa Ynez, California, the corporation's principal place of business. Likewise, all financial proof, such as lost revenue or marketing expenses, exist in the company's principal place of business, not in [Florida].

Texas Case, 1:22-cv-01078-RP, DE 10, at 3-4.

Indeed, the reasons for transferring this matter are even more apparent here than when Plaintiff first filed the case in Texas: The California court has already issued multiple orders regarding the case. This case is only in Florida because Plaintiff voluntarily dismissed the matter in California after that court refused to countenance Plaintiff's gamesmanship. Indeed, in briefing regarding Plaintiff's motion for a preliminary injunction, Plaintiff admitted that it sold

12

only "thousands" of dollars of merchandise in Florida.  First, Plaintiff does not clarify whether such merchandise concerned the products at issue in this litigation.  And even if it did, these vague "thousands" of dollars of total sales pale in comparison to Plaintiff's revenue, which Plaintiff alleges was $1.6 million in 2021 alone (and most of which likely came from California).

Like the Texas court did for Texas, this Court should conclude that this case has insufficient connections to Florida.  It is an unnecessary burden on this Court to adjudicate a dispute with no ties to this jurisdiction.  This case should be dismissed altogether, but it if is not dismissed, the Court should transfer it to the Central District of California.

### d. Plaintiff's Complaint Is An Implausible Shotgun Pleading.

Plaintiff groups together 1,099 different websites and/or ecommerce sellers, calls them "Defendants," and alleges all manners of improprieties.

Under federal pleading rules, a complaint "must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2).  "To survive a motion to dismiss, a complaint must plead sufficient facts to state a claim that is 'plausible on its face.'"  *Herrera v. TD Bank, N.A.*, --- F. Supp. 3d ----, 2023 WL 4614780, at *2 (S.D. Fla. July 18, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "While 'detailed factual allegations' are unnecessary, the allegations must consist of more than 'labels and conclusions.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Relatedly, federal courts will not tolerate "shotgun" pleadings, where plaintiffs spray indiscriminate allegations in hopes that something will hit.  "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  "Shotgun pleadings are condemned by the Eleventh Circuit, which has specifically instructed district courts to dismiss shotgun pleadings as 'fatally defective.' (quotation marks omitted)." *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1201 (S.D. Fla. 2021), amended on reconsideration in part, No. 21-CV-20862, 2022 WL 845468 (S.D. Fla. Mar.

22, 2022) (quoting *B.L.E. v. Georgia,* 335 F. App'x. 962, 963 (11th Cir. 2009), quotation marks omitted).

Here, Plaintiff's AC is both implausible and a shotgun pleading. It is implausible because Plaintiff alleges mere legal conclusions (and overstated ones, at that), against an undifferentiated group of over 1,000 defendants. For instance, Plaintiff alleges ownership of a design patent, two trademarks, and certain copyrights and claims that, for over 1,000 defendants on Schedule A, "All Defendants violated one or more of the Plaintiff's licensed intellectual property rights in the United States, by the use of common or identical methods." DE 84, ¶ 97. Plaintiff attempts to justify these conclusions by making further conclusory assertions, for example by contending that "All Defendants' actions are logically related. All Defendants are all engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions." DE 84, ¶ 83. But looking beyond the mere conclusions, Plaintiff's pleading is *entirely* devoid of specific factual allegations against the Defendants. Thus, the AC insufficiently alleges any of its claims. *See GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1300 (M.D. Fla. 2015) (holding that an allegation that the defendant "has infringed … copyrights by inducing [certain] users and clients to reproduce, distribute, or otherwise disseminate … copyrighted works" is a bare legal conclusion that does not provide enough factual support to state a plausible claim for contributory infringement).

The AC is also a shotgun pleading because Plaintiff provides no specific allegations against any Defendant. Many, if not all, of Plaintiff's allegations lump all 1,000+ defendants together and make conclusory and nebulous—but factually empty—assertions about the entire group. Paragraphs 97 and 83 cited above are stark examples: telling over 1,000 defendants that they have each violated "one or more" of numerous purported intellectual property rights is a classic "shotgun" allegation. And virtually all allegations regarding all defendants throughout the AC share this fatal defect. (*See id*. ¶¶ 57-132.). These "shotgun" allegations should be

14

dismissed. *See Gazzola v. NCL (Bahamas) Ltd.*, No. 19-21535-CIV, 2019 WL 3067506, at *2 (S.D. Fla. July 12, 2019) (dismissing complaint as "an example of the quintessential 'shotgun pleading,' because paragraphs 12-14 group together the Defendants and do not specify which of the Defendants is responsible for which acts or omissions.").

Thus, the Court should dismiss Plaintiff's AC for the independent reasons that it fails to state a plausible claim for relief and is a shotgun pleading.

### e. The Court Should Dissolve Any Remaining Restraint Or Injunction.

As of the filing of this brief, a vastly overbroad temporary restraining order exists that is seriously harming Defendants, including an asset restraint over of $21 million despite these Defendants' sales of relevant products being only $42,144. *See* DE 121 (Defendants' Opposition to Motion for Preliminary Injunction) and evidence cited therein. Plaintiff's motion for preliminary injunction is set to be heard before this Motion is heard, and Defendants anticipate that, at such hearing, the Court will dissolve the restraining order and deny any injunctive relief. However, to the extent any restraint or injunction remains at the time of hearing the present Motion, Defendants respectfully request that the Court dissolve such restraint or injunction in addition to dismissing this case.

### III. CONCLUSION

Defendants respectfully request that the Court dismiss this case without leave to amend.

### IV. CERTIFICATION

Defendants certify under Local Rule 7.1(a)(3) that they conferred with Plaintiff regarding the bases for the Motion and that Plaintiff intends to oppose this Motion.

Dated: October 16, 2023　　　　　　　　　　　Giuliano Law Group, P.A.

　　　　　　　　　　　　　　　　　　　　　　/s/ Nicole W. Giuliano
　　　　　　　　　　　　　　　　　　　　　　Nicole W. Giuliano, Esq.
　　　　　　　　　　　　　　　　　　　　　　Florida Bar No. 71067
　　　　　　　　　　　　　　　　　　　　　　121 S. Orange Avenue, Suite 1500
　　　　　　　　　　　　　　　　　　　　　　Orlando, FL 32801

        Tel: (321) 754-5290 / Fax: (321) 400-1055
        Primary: nicole@glgpa.com
        service@glgpa.com


        DGW KRAMER LLP

By: /s/ Katherine Burghardt Kramer
     Katherine Burghardt Kramer, Esq.
     *Pro hac vice*
     DGW KRAMER LLP
     One Rockefeller Plaza, 10th Fl.
     Suite 1060
     New York, NY 10020
     T: (917) 633-6860
     kkramer@dgwllp.com

     *Attorney for Certain Defendants* Nos. 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924, 735, 767, 778, 773, 821, 832, 907, 913, 919, 775, 916, 704, 800, 714, 847, 754, 763, 785, 702, 914, 927, 786, 817, 825, 871, 798, 877, 840, 915, 772, 880, 917, 923, 713, 839, 715, 728, 765, 803, 909, 879, 780, 818, 819, 878, 883, 822, 910, 858, 888, 922, 891, 904.