UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:23-cv-22322-KMW

BETTY'S BEST, INC.,

        Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

        Defendants.

**PLAINTIFF'S MOTION FOR AN ORDER IMPOSING A CONSTRUCTIVE TRUST AND APPOINTING A RECEIVER OVER ASSETS OF THE 64 DEFENDANTS AND INCORPORATED MEMORANDUM OF LAW**

    Plaintiff Betty's Best, Inc. ("Betty's Best" or "Plaintiff") by and through its undersigned counsel, hereby moves this Honorable Court for an order imposing a constructive trust over the assets frozen for Defendant Nos. 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924, 735, 767, 778, 773, 821, 832, 907, 913, 919, 775, 916, 704, 800, 714, 847, 754, 763, 785, 702, 914, 927, 786, 817, 825, 871, 798, 877, 840, 915, 772, 880, 917, 923, 713, 839, 715, 728, 765, 803, 909, 879, 780, 818, 819, 878, 883, 822, 910, 858, 888, 922, 891, 904 (the "64 Defendants") at PayPal Holdings, Inc., and appointing a receiver over those assets, pursuant to Fed. R. Civ. P. Rules 65, 66 and this court's equitable powers, and in support thereof states as follows:

**I.    INTRODUCTION**

    The 64 Defendants are a small group of related Chinese entities. (See Corporate Disclosure Statements filed at ECF 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 109, 110, 111, 112, 113, 114, 115, and 117). The 64 Defendants operate the websites listed on Schedule A that match up to their defendant numbers. The 64 Defendants' websites are all scam websites.

    Plaintiff began investigating the 64 Defendants in August of 2021 when Facebook ads using plaintiff's intellectual property promoting the sale of counterfeit goods appeared online.

1

The Facebook ads linked potential purchasers to the 64 Defendants' scam websites where "too good to be true" offers of knockoff products that violated plaintiffs' and others' intellectual property rights were sold at bargain basement prices.

All the evidence Betty's Best developed in its pre-suit investigation pointed to the 64 Defendants all being participants in a single illegal counterfeiting enterprise based in China targeting U.S. consumers. Since this case was filed, and since the defendants were identified by their real Chinese entity names, more evidence of their counterfeiting and fraud was collected. Based on this additional evidence, plaintiff moved to amend its complaint to allege defendants are engaged in a racketeering conspiracy to defraud consumers and commit criminal copyright and trademark infringement. (ECF 120, 120-001). Plaintiff seeks the imposition of a constructive trust over the 64 Defendants' ill-gotten gains frozen at PayPal, the same funds frozen by this Court in its TRO.

The 64 Defendants' opposition to plaintiff's motion for preliminary injunction admits to counterfeiting. The 64 Defendants provided the Court with a chart. (ECF 121-1). The chart admits tens of thousands of dollars in sales of counterfeit goods in the U.S. violating Betty's Best's IP rights. The chart also contains balances showing that the 64 Defendants claim over $21M frozen by PayPal.

The 64 Defendants proffered declarations of five controlling persons in opposition to the motion for preliminary injunction that admitted they sold counterfeit goods violating plaintiff's intellectual property rights. The 64 Defendants' controlling persons all admitted that defendants' chart "accurately includes correct [counterfeit goods] sales information for these Defendants and their websites [listed on Schedule A]."[1] (ECF 121-2 through 121-6).

The 64 Defendants admitted through their controlling persons' affidavits that they "utilize PayPal accounts to operate their business" and that the "PayPal accounts are essential to Defendants' business operations." Defendants' five affidavits assert—in conclusory fashion and in identical language—that the defendants "are suffering extreme harm from the freezing of their Pay Pal accounts," and that "[a]ll or virtually of the frozen assets of these Defendants are

---

[1] In their defense, the 64 Defendants' representatives claimed they did not know "that any photographs or other alleged intellectual property rights at issue in this Lawsuit were copyrighted or otherwise protected." (ECF 121-2 at 4, ECF 121-3 at 4, ECF 121-4 at 4, ECF 121-5 at 4, ECF 121-6 at 4). Lack of knowledge is not a defense to infringement.

proceeds from sales of products that are entirely unrelated to the product at issue." All the affidavits claim—without a single shred of supporting evidence whatsoever—that

> [b]ecause of the vastly overbroad asset restraint, these Defendants are at risk of being held liable for defaulting on other obligations. Moreover, these Defendants are suffering an incalculable loss of reputation in the market. The Defendants have invested significant amounts of effort and money to establish themselves in the marketplace, and their inability to continue operating their businesses through their now frozen PayPal accounts is causing an immeasurable loss of corporate reputation and difficulty in managing business operations.

(ECF 121-2 at 4-5, ECF 121-3 at 4-5, ECF 121-4 at 4-5, ECF 121-5 at 4-5, ECF 121-6 at 4-5).

In fact, the harm the 64 Defendants are suffering is harm they should suffer because the frozen funds are ill-gotten gains and the proceeds of the defendants' criminal counterfeiting enterprise. Their PayPal accounts were frozen because defendants use those accounts as instrumentalities of counterfeiting.

After this Court granted the plaintiff's motion for TRO and asset freeze, plaintiff's investigation revealed that the 64 Defendants are not engaged in any legitimate business activities. Rather, the focus of the 64 Defendants' business is the sale of counterfeit goods that violate the rights not only of plaintiff but of many other intellectual property owners. Attached to the Declaration of Sunday Jacobs filed at ECF 130-2 is a list of the 64 Defendants and 33 other pending and prior online counterfeiting cases where the 64 Defendants committed the same counterfeiting offenses as the defendants accused in those cases. The list filed at ECF 130-6 contains at least 33 cases where counterfeiting claims were alleged and where the 64 Defendants also committed the same counterfeiting violations including, as in this case, trademark, copyright and design patent infringement. Of the 33 other cases identified to date, counsel for Betty's Best was counsel for plaintiff in two of the cases on behalf of Frugality, Inc. both of which are cases filed in this district. See *Frugality, Inc. v. The Individuals, Partnerships, et al.,* Case Nos. 21-cv-23025 and 23-21000. The dockets for these cases are attached to the Declaration of Angela Nieves submitted with this motion, and the contents of these dockets are the subject of a Motion for Judicial Notice filed contemporaneously. Also attached to Ms. Jacobs' declaration are screenshots of the 64 Defendants engaged in the sale of counterfeit products violating the rights of other intellectual property owners. (ECF 130-5).

Betty's Best compiled screenshots showing consumer reports on the 64 Defendants' businesses and their websites demonstrating that defendants are running scam websites engaged in online internet scams. (Jacobs Decl. ¶ 26). Betty's Best also complied consumer reports of scams made directly to Betty's Best about the 64 Defendants and their counterfeiting and online scam business. (Jacobs Decl. ¶ 26).

The 64 Defendants operate scam websites that sell counterfeit goods. Imposing a constructive trust over the frozen assets will avoid further irreparable harm to plaintiff and protect the equitable rights of other victims of the defendants' scams. The victims of these scams are the plaintiffs in prior cases, current cases, and future cases. The victims are also the consumers who were ripped off by the defendants. To make these victims whole, a constructive trust should be imposed over the funds frozen and a custodian or receiver appointed to determine the rightful claimants to those funds and pay those funds over to the victims of the 64 Defendants' online scams.

## II. STATEMENT OF FACTS

### a) Background On Betty's Best, Inc.; Betty's Best's Intellectual Property; and Counterfeiting on Social Media Harming Betty's Best

1. Plaintiff incorporates its prior filings detailing the background on plaintiff, its intellectual property, and the harm caused to plaintiff by the 64 Defendants' sale of counterfeit goods. The specific material incorporated here can be found at ECF nos. 17, 18, 130, 130-002.

2. Prior to filing the complaint, plaintiff identified some of the 64 Defendants as foreign individuals or entities operating fraudulent scam websites on the internet who drive traffic and potential purchasers to their websites using ads on Facebook. The defendants' Facebook advertisements copy plaintiff's copyrighted product photos and videos, show plaintiff's patented design, and use plaintiff's trademarks without plaintiff's permission. When a Facebook user clicks on an ad placed by defendants, the user is taken to websites online that offer for sale and sell counterfeit goods.

3. The scam Facebook advertising began in mid-2021. Since that time plaintiff's investigation has observed and recorded this practice engaged in by the 64 Defendants who are the owners/operators of the websites corresponding to their defendant numbers shown on Schedule A.

4.   The defendants use sophisticated advertising practices and tools to generate multiple ad versions copying plaintiff's trademarks, copyrights and design patent to imitate the StripHair brand and deceive the consumer to purchase counterfeit products from ad-linked website pages. The defendants also use software to alter Betty's Best copyrighted photographs and videos in their paid sponsored advertisements and on their Facebook pages.

5.   To date, plaintiff has submitted over 3,512 IP Infringement Reports to Facebook. However, the fraudulent ads have continued. This court denied plaintiff's request to issue a TRO or early discovery order to Facebook, and so plaintiff filed a separate action in the Northern District of California, Case No. 3:23-cv-04300, against a smaller group of the Schedule A defendants seeking, among other things, discovery from Facebook to determine the identity of the Facebook advertisers.

6.   Plaintiff's investigation has led it to conclude that the 64 Defendants are working together to operate an enterprise in violation of federal and state RICO laws. Plaintiff filed a motion for leave to amend its complaint to allege these violations against the 64 Defendants.[2] (ECF 120). Plaintiff has observed and recorded that:

   a. The 64 Defendants operate scam websites observed by Betty's Best and collected in screenshots that show that the websites of individual 64 Defendants are identical to or strikingly similar to the websites associated with other individual 64 Defendants.

   b. The 64 Defendants' Facebook advertisements collected by Betty's Best shows that the advertisements placed by individual 64 Defendants are identical to or strikingly similar to the Facebook advertisements placed by other individual 64 Defendants.

   c. The 64 Defendants' Facebook pages observed by Betty's Best shows that the Facebook pages of individual 64 Defendants are identical to or strikingly similar to the Facebook pages of other individual 64 Defendants.

---

[2] The proposed Second Amended Complaint refers to the 64 Defendants as the "Schedule B Defendants" because they are listed on Schedule B to the proposed SAC. The 64 Defendants and the Schedule B Defendants are the same group of defendants.

    d.    The test purchases of counterfeit products bought by Betty's Best shows that the counterfeit products sold by individual 64 Defendants are identical to or strikingly similar to the counterfeit products sold by other individual 64 Defendants.

    e.    The test purchases of counterfeit products bought by Betty's Best from certain individual 64 Defendants were fulfilled and shipped by other individual 64 Defendants.

    f.    The counterfeit products sold by all the 64 Defendants were manufactured by the same or a small number of similar manufacturers.

    g.    The packaging used for the counterfeit products sold by the 64 Defendants was the same or strikingly similar for all the counterfeit products sold by the 64 Defendants.

7.    If provided the opportunity to engage in early discovery of third parties and the defendants, plaintiff reasonably believes that it can show the following:

    a.    The domain names for the 64 Defendants' scam websites are owned by the same or a small number of overlapping individuals or entities.

    b.    The website hosting accounts for the 64 Defendants' scam websites are owned or operated by the same or a small number of overlapping individuals or entities.

    c.    The 64 Defendants' payment processing accounts and money transfer accounts of individual 64 Defendants are identical to the payment processing accounts and money transfer accounts of other individual 64 Defendants.

    d.    The financial transactions transferring funds from or to the 64 Defendants' PayPal accounts use overlapping bank or money transfer accounts.

8.    Plaintiff's investigation strongly suggests that the 64 Defendants are participating in an enterprise through a pattern of criminal and racketeering activity that engages in criminal acts of trafficking in counterfeit goods and counterfeit labels (18 U.S.C. § 2320), criminal copyright infringement (17 U.S.C. § 506), wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), and interstate money laundering (18 U.S.C. § 1956) through a pattern of racketeering activity.

9. The 64 Defendants were found by plaintiff's investigation to be violating the same rights asserted by plaintiffs in 33 other pending and prior online counterfeiting cases. Whether or not the 64 Defendants were also defendants in those cases is unclear. However, what is clear is that the 64 Defendants committed the same counterfeiting offenses as the defendants accused in those cases. (See ECF 130-2, 130-6, and Docket Sheets attached to the Declaration of Angela Nieves).

### III. ARGUMENT
#### a) The Imposition of a Constructive Trust and the Appointment of a Receiver is Necessary to Prevent Immediate Injury
#### 1. Requirements for Disgorgement

"It is clearly established that disgorgement is an equitable remedy and 'a district court may freeze a defendant's assets to ensure the adequacy of a disgorgement remedy.'" *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 2:15-cv-328-FtM-29MRM, 2016 U.S. Dist. LEXIS 52263, at *15-16 (M.D. Fla. Apr. 19, 2016) citing *CFTC v. Levy*, 541 F.3d 1102, 1114 (11th Cir. 2008). Courts faced with unjust enrichment and Federal RICO claims have established constructive trusts and frozen assets to preserve the equitable remedy of disgorgementt. See *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 2:15-cv-328-FtM-29MRM, 2016 U.S. Dist. LEXIS 52263, at *18-19 (M.D. Fla. Apr. 19, 2016).

#### 2. Requirements for a Constructive Trust

A constructive trust is an equitable remedy designed to prevent the unjust enrichment of culpable parties. *Tempay, Inc. v. Biltres Staffing of Tampa Bay, Ltd. Liab. Co.*, 929 F. Supp. 2d 1255, 1262 (M.D. Fla. 2013) citing *Bender v. CenTrust Mortgage Corp.*, 513 F.3d 1027 (11th Cir. 1995). "The remedy applies where money is obtained by fraud, unless there is an adequate remedy at law." *Bender v. Centrust Mortg. Corp., 51 F.3d 1027, 1030 (11th Cir. 1995)* citing *Mitsubishi Int'l Corp. v. Cardinal Textile Sales*, Inc., 14 F.3d 1507, 1519 (11th Cir. 1994).

Constructive trusts may be imposed only where the trust res is specific and identifiable property or can be clearly traced in assets of defendants. *Lee v. Wiand*, 603 B.R. 161, 176 (M.D. Fla. 2018).

To impose a constructive trust, the plaintiff must satisfy four elements: "(1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment." *Talbot v. Anderson*, No. 8:15-cv-1313-T-TBM, 2015

U.S. Dist. LEXIS 189475, at *17 (M.D. Fla. Aug. 17, 2015) quoting *Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022, 1025 (Fla. Dist. Ct. App. 1996) citing *Abreu v. Amaro*, 534 So. 2d 771 (Fla. Dist. Ct. App. 1988). "Florida courts have held that a confidential or fiduciary relationship and other usual elements of a constructive trust are not always required, so long as continued holding of the property in question by a defendant is deemed unconsconable and inequitable, and the return of the property is necessary to prevent unjust enrichment." *Laspro Consultores LTDA v. Alinia Corp. (In re Massa Falida Do Banco Cruzeiro Do Sul S.A.)*, 567 B.R. 212, 225 (Bankr. S.D. Fla. 2017); See *Lee v. Wiand*, 603 B.R. 161, 176 (M.D. Fla. 2018) (holding that a constructive trust was an appropriate remedy for unjust enrichment in the absence of a confidential relationship); See also *American National Bank of Jacksonville v. Federal Deposit Insurance Corp.*, 710 F.2d 1528, 1541 (11th Cir. 1983) (citing with approval the statement that "[a] constructive trust is one raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.").

### 3. Requirements for Appointment of a Receiver

A district court has authority to place into receivership assets in litigation "to preserve and protect the property pending its final disposition. " *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) qoting *Gordon v. Washington*, 295 U.S. 30 (1935). "A receiver is a neutral court officer appointed by the court, usually to 'take control, custody, or management of property that is involved in or is likely to become involved in litigation for the purpose of undertaking any appropriate action." *Sterling v. Stewart*, 158 F.3d 1199, 1201 n.2 (11th Cir. 1998). "[Appointment of a receivership] is an especially appropriate remedy in cases involving fraud and the possible dissipation of assets, since the primary consideration in determining whether to appoint a receiver is the need to protect, conserve and administer property pending final disposition of a suit." *Jackson v. N'Genuity Enters. Co.*, 2011 U.S. Dist. LEXIS 113511, *25 (N.D. Ill. Oct. 3, 2011).

The Eleventh Circuit has approved the application of six factors to determine whether appointment of a receiver is warranted: (1) fraudulent conduct on the part of the defendant; (2) imminent danger that property will be lost or squandered; (3) the inadequacy of available legal remedies; (4) the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to parties opposing appointment; (5) the plaintiff's probable success in the

action and the possibility of irreparable injury to his interests in the property; and (6) whether the interests if the plaintiff and others sought to be protected will in fact be well served in the receivership. See *Motion Dynamics, Inc. v. Nu-Best Franchising, Inc.*, No. 805CIV2370T17MSS, 2006 WL 1050639 at *6 (M.D. Fla. Apr. 20, 2006) citing *Consolidated Rail Corp. v. Fore River Railway Co.*, 861 F.2d 322, 326–27 (1st Cir.1988) which is cited with approval in *Nat'l Partnership Investment Corp. v. Nat'l Housing Development Corp.*, 153 F.3d 1289, 1291 (11th Cir.1998).

Given the highly discretionary nature of the appointment of a receiver, it is not necessary that any particular condition be shown as a prerequisite to the appointment of a receiver. *Jackson v. N'Genuity Enters. Co.*, No. 09 C 6010, 2011 U.S. Dist. LEXIS 113511, at *87 (N.D. Ill. Oct. 3, 2011). "Rather, the district court must take into account 'all the circumstances of the case,' instead of attempting to rely on a 'precise formula' for making the determination." *Id.* quoting *Connolly v. Gishwiller*, 162 F.2d 428, 435 (7th Cir. 1947) and *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 845, 847 (9th Cir. 2009).

### 4. Requirements for a Showing of Fraudulent Conduct

While proof of fraud is not required to support a district court's discretionary decision to appoint a receiver, court's have found evidence of unfair, illegal, and arguably fraudulent conduct by the defendant sufficient to warrant appointment of a receiver. See *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 317 (8th Cir. 1993); *Citronelle-Mobile Gathering, Inc. v. Watkins*, 934 F.2d 1180, 1184 (11th Cir. 1991) (transfers to related entities and funneling money out of the country); *Chase Manhattan Bank v. Turabo Shopping Ctr., Inc.*, 683 F.2d 25, 26-27 (1st Cir. 1982) ("evidence [of] unfair and arguably fraudulent dealing"); *New York Life Ins. Co. v. Watt West Inv. Corp.*, 755 F.Supp. 287, 292-93 (E.D. Cal. 1991).

### b) The Court Should Impose a Constructive Trust and Appoint a Receiver to Protect Plaintiff's Equitable Disgorgement Remedy, Prevent the 64 Defendants from Unjustly Enriching Themselves, and Prevent the 64 Defendants from being Rewarded for their Fraudulent Conduct

The exhibits to the Declarations of Sarah Owen and Sunday Jacobs, and their testimony, demonstrate that the 64 Defendants are engaged in fraud including online counterfeiting of the plaintiff's intellectual property and the intellectual property of many other victims. These same exhibits and testimony demonstrates that the victims of the 64 Defendants' frauds include consumers duped into buying "too-good-to-be-true" counterfeit goods online.

There are two categories of victims here:

> (1) **intellectual property owners** like Betty's Best and others who were the victims of counterfeiting and online infringement by the 64 Defendants, and
> (2) **consumers** who were duped by the 64 Defendants' fraudulent schemes and false advertising into purchasing goods they thought were genuine and either received counterfeits or nothing at all.

The interests of these groups and their claims to the funds frozen by this Court must be preserved in equity. Releasing the 64 Defendants frozen funds will cause further injustice to these two groups who are victims of the 64 Defendants' illegal activities.

The appointment of a receiver and imposition of a constructive trust in situations such as this has been approved by federal district courts in Florida in similar circumstances. For example, in *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 2:15-cv-328-FtM-29MRM, 2016 U.S. Dist. LEXIS 52263, at *15-16 (M.D. Fla. Apr. 19, 2016), the Middle District granted the plaintiff's motion to appoint a receiver over funds frozen pursuant to the court's temporary restraining order. In that case, plaintiff sued Susan Devine and Florian Homm, a husband and wife, accusing them of federal and Florida RICO violations and unjust enrichment. Plaintiffs sought a constructive trust over assets defendants had "fraudulently taken pursuant to an illegal 'Penny Stock Scheme.'"

The defendants filed a motion to dissolve the TRO. The court determined that "[w]here equitable relief is sought…a district court can appropriately issue an asset freeze order to preserve funds for the equitable remedy," citing *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1994). The court further determined citing *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) that where, as here, a request for "equitable relief is coupled with requests for money damages," an asset freeze is permissible. The Court analyzed the pending RICO and unjust enrichment claims and determined that preliminary injunctive relief in the form of an asset freeze was available and authorized under both the federal and state RICO statutes, as well for unjust enrichment.

## RULE 7.1 MEET AND CONFER STATEMENT

Plaintiff's counsel has conferred with counsel for the 64 Defendants in a good faith effort to resolve the issues raised. Counsel for the 64 Defendants stated that they are opposed to the relief requested herein.

## IV.   CONCLUSION

This Court has already frozen the 64 Defendants' assets at PayPal. The 64 Defendants' PayPal assets are the proceeds of counterfeiting. The 64 Defendants' failed to "present documentary proof that the PayPal assets are not the proceeds of counterfeiting activities," *Antsy Labs, LLC v. Individuals*, No. 21 C 3289, 2022 U.S. Dist. LEXIS 212406, at *12 (N.D. Ill. Nov. 23, 2022) citing *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015), and therefore they should remain frozen. A further basis to maintain the freeze on these assets is the imposition of a constructive trust over those assets based on the claims of RICO violations and unjust enrichment against the 64 Defendants. A constructive trust should be imposed and the funds restrained pending appoitment of a receiver over those funds.

DATED:  October 17, 2023                    Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number:  98220
joel.rothman@sriplaw.com
ANGELA M. NIEVES
Florida Bar Number:  1032760
angela.nieves@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Betty's Best, Inc.*