UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:23-CV-22322-KMW

BETTY'S BEST, INC.,

        Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE 'A',

        Defendants.

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER RESTRAINING TRANSFER OF ASSETS**
<u>**AS TO THE 64 DEFENDANTS**</u>

This matter is before the Court on Plaintiff Betty's Best, Inc.'s Motion For Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets [ECF No. 17] filed under 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, 17 U.S.C. §§ 502, 503, 35 U.S.C. §§ 281, 283, and The All Writs Act, 28 U.S.C. § 1651(a), against Defendants identified on Schedule "A" as 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924, 735, 767, 778, 773, 821, 832, 907, 913, 919, 775, 916, 704, 800, 714, 847, 754, 763, 785, 702, 914, 927, 786, 817, 825, 871, 798, 877, 840, 915, 772, 880, 917, 923, 713, 839, 715, 728, 765, 803, 909, 879, 780, 818, 819, 878, 883, 822, 910, 858, 888, 922, 891, 904 (the "64 Defendants").

The Court held a hearing on October 18, 2023 and heard argument of counsel. The Court has carefully considered the Motion, the Opposition [ECF No. 121], the Reply [ECF No. 130], the record, and the governing law. For the reasons stated below, it is **RECOMMENDED** that that the

Temporary Restraining Order issued by this Court [ECF No. 22] be **EXTENDED** through November 17, 2023, however, the Order should be modified as stated herein.

## BACKGROUND

Betty's Best is a California Corporation with its principal place of business in Santa Ynez, California. Betty's Best is the maker of the StripHair Gentle Groomer, a therapeutic brush for horses and dogs, for which they own the trademark, copyrights, and design patents. Plaintiff has sued the 64 Defendants that are the subject of this Report along with hundreds of others. Plaintiff contends Defendants infringed its design patent rights to its product, its trademarks, and its copyrighted photos.

On September 1, 2023, the Court affirmed and adopted the Report and Recommendation issued by the undersigned at ECF No. 22, thereby entering a temporary restraining order and an order restraining the financial accounts used by Defendants (the "TRO"). [ECF No. 24]. The TRO set a hearing on the Plaintiff's Motion for Preliminary Injunction for September 14, 2023. The hearing was continued twice until October 18, 2023 to allow Defendants to be served and to file a response to the Motion. [ECF Nos. 31, 118].

Prior to the hearing on the Motion, Plaintiff served the 64 Defendants pursuant to the Court's Order Authorizing Alternate Service of Process entered on July 31, 2023 [ECF No. 21] and proofs of service in compliance with the order. [ECF Nos. 54, 56, 57, 59, 61, 64]. Counsel for all 64 Defendants appeared through the same counsel and opposed the Motion. [ECF No. 121]. The 64 Defendants filed Corporate Disclosure Statements [ECF Nos. 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 109, 110, 111, 112, 113, 114, 115, and 117].

The Court makes the following determinations:

## DISCUSSION

2

Fed. R. Civ. P. 65(b)(2) states that "the order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Although the parties contest whether the Motion should be granted, they agreed to the extension of the TRO at the October 18, 2023 hearing. The parties will present testimony and argument on this issue before this Court on <u>November 13, 2023, at 9:30 AM</u>.

To obtain a Temporary Restraining Order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo,* 403 F.3d 1223, 1225–26 (11th Cir. 2005).

The Court notes that the 64 defendants have "stopped all sales of the accused products." [ECF No. 121 at 4]. Nonetheless, the Court believes it is necessary to enter an extension of the TRO until after the Preliminary Injunction hearing.

**I.      Likelihood of Success on the Merits**

    **a.  Trademark Validity**

The Court finds that Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by the 64 Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing counterfeits, reproductions, or colorable imitations of the products using the STRIPHAIR Mark Reg. No. 5072866 and THE GENTLE GROOMER Mark Reg. No. 5328641 (collectively the "Betty's Best Marks") for "grooming tools for pets, namely, combs and brushes; Currycombs" in International Class 21.

The Betty's Best Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office and shown in Composite Exhibit 1 to the Complaint in this action. Plaintiff's trademarks are registered, entitled to a presumption of validity, and incontestable. 15 U.S.C. § 1115(a).

### b. Copyright Validity

Plaintiff also has a strong probability of proving at trial that the 64 Defendants market and advertise their products using Plaintiff's photographs, videos, and website which are protected by copyright and registered with the Copyright Office (collectively the "Works").

Plaintiff's product photographs are duly registered with the Register of Copyrights as visual materials:

| Copyright Title and Description | Reg. No. | Reg. Date |
|---|---|---|
| StripHair Product Pictures 2020 (group of 10 photographs) | VA 2-299-367 | 05/12/2022 |
| StripHair Product Pictures 2019 (group of 7 photographs) | VA 2-300-902 | 05/19/2022 |
| StripHair Product Pictures 2018 (group of 2 photographs) | VA 2-304-928 | 06/03/2022 |
| StripHair Product Pictures 2021 (group of 8 photographs) | VA 2-304-931 | 06/03/2022 |

Plaintiff's product videos are duly registered with the Register of Copyrights as motion pictures as shown in the table below.

| Copyright Title and Description | Reg. No. | Reg. Date |
|---|---|---|
| SH-Video-1 11.01.2019 (entire motion picture) | PAu 4-142-655 | 06/14/2022 |
| SH-Video-2 4-01-2021 (entire motion picture) | PAu 4-142-666 | 06/14/2022 |
| SH-Video-3 7.01.2021 (entire motion picture) | PAu 4-143-928 | 06/30/2022 |
| SH-Video-4 4.01.2018 (entire motion picture) | PAu 4-143-929 | 06/30/2022 |
| SH-Video-5 3.01.2019 (entire motion picture) | PAu 4-145-045 | 07/14/2022 |
| SH-Video-7 6.01.2020 (entire motion picture) | PAu 4-145-360 | 07/19/2022 |
| SH-Video-8 5.01.2021 (entire motion picture) | PAu 4-145-361 | 07/19/2022 |
| SH-Video-6 2.01.2019 (entire motion picture) | PAu 4-145-379 | 07/19/2022 |

Plaintiff's website content comprising photographs and text, titled "striphair.com website," is duly registered with the Register of Copyrights under the Reg. No. VA 2-271-013, effective from October 6, 2021. Plaintiff's copyrights are registered and entitled to a presumption of validity. 17 U.S.C. § 410(c).

    c. **Design Patent Validity**

Plaintiff has a strong probability of proving at trial that the products the 64 Defendants import, sell, and promote for sale infringe the Plaintiff's products' design features which are protected under a design patent and registered with the United Stated Patent and Trademark Office, U.S. Patent No. D841,900 entitled "HORSE OR PET GROOMING TOOL" (the "HOPGT Design Patent"). The HOPGT Design Patent was issued February 26, 2019, has not expired and is valid. The HOPGT Design Patent is presumptively valid. 35 U.S.C. § 282(a).

    d. **Infringement**

The Court reviewed the Declaration of Sarah Owen, the CEO of Betty's Best who submitted screenshots showing the 64 Defendants' websites. [ECF No. 18]. The Court also reviewed the Declaration of Sunday Jacobs, the Chief Operating Officer of Betty's Best, submitted with the Reply that also attached screenshots showing the 64 Defendants' websites. [ECF Nos. 130-3 and 130-4]. The declarations and the screenshots show counterfeit products using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent used on the 64 Defendants' websites in connection with the sale of brushes for horses and dogs. The screenshots show that the 64 Defendants' websites use the Betty's Best Marks or confusingly similar versions of those marks. The images used on the 64 Defendants' websites are identical to the Betty's Best copyrighted Works. The horse and dog brushes offered for sale on the 64 Defendants' websites

are identical to the HOPGT Design Patent. The Court finds that plaintiff has demonstrated a likelihood of success on its infringement claims against the 64 Defendants.

## II. Irreparable Injury

Plaintiff demonstrated that the 64 Defendants are selling their infringing goods to consumers within this district and throughout the United States. [Owen Decl. ¶¶ 56, 68, 73, 77–79; Rothman Decl. ¶ 8]. Plaintiff asserts that monetary damages cannot adequately compensate Betty's Best for ongoing infringement because monetary damages fail to address the loss of control and damage to Betty's Best's reputation and goodwill. [Owen Decl. ¶ 88]. Furthermore, monetary damages cannot compensate plaintiff for plaintiff's brand and the diversion of customers due to loss in brand confidence, the type of damages that are largely unquantifiable. [Owen Decl. ¶ 92]. Plaintiff also affirms that Betty's Best is harmed because the 64 Defendants took away Betty's Best's ability to control the nature and quality of its products. [Owen Decl. ¶ 93]. The loss of quality control over goods bearing or sold under the Betty's Best Marks and, in turn, loss of control over product reputation, is neither calculable nor precisely compensable. [Owen Decl. ¶ 94]. The sale of counterfeit and infringing products bearing or sold under the Betty's Best Marks causes consumer confusion that weakens the Betty's Best Marks' brand recognition and reputation. [Owen Decl. ¶ 95]. The Court finds that plaintiff has demonstrated that irreparable injury will be suffered if the relief sought is not granted.

## III. Threatened Injury Versus Potential Harm and Public Interest

The potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if the TRO is not extended is far outweighed by the potential harm to plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products. Additionally,

the public interest favors extending the TRO to protect Plaintiff's trademark interests and protect the public from being defrauded by the sale of counterfeit goods as Plaintiff's genuine goods.

## IV. Asset Freeze and Bond

This Court further determines that the temporary restraints previously granted in the TRO should remain in place through November 17, 2023, in which time the Court will rule on plaintiff's Motion for Preliminary Injunction.

In addition to arguments challenging jurisdiction, service of process, and lack of merit, Defendants' claim their worldwide sales of any products that may be relevant products at issue in this case was at most $42,144, yet Plaintiff's TRO has restrained over $21 million from Defendants' PayPal accounts. [ECF No. 121]. They argue the amount of money restrained far exceeds the amount they may have profited from the sales and the funds restrained should be reasonably related to the amount of profit. The Court agrees. See, e.g., *CFTC v. E-Metal Merchants, Inc.*, No. 05-21571-CIV, 2006 WL 8432005, at *7 (S.D. Fla. Jan. 9, 2006) (for asset restraints, "any funds not reasonably related to the ultimate relief requested by Plaintiff should be released"). As a result, a more appropriate amount of funds restrained in this case is $2 million, rather than $21 million.

In addition, the Court finds that the bond amount must be increased. Fed. R. Civ. P. 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The amount of the security is within the discretion of the trial court, and a court may elect to require no security to be posted at all. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). The same applies to the amount of an asset freeze.

*See, e.g., S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005) (holding that the plaintiff's burden as to the amount of assets subject to disgorgement, and therefore available for a freeze, was a reasonable approximation of the defendant's ill-gotten gains); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("[T]he district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits.").

Here, good grounds exist for the increase of the bond and a decrease in the assets restrained. The Court recommends that a bond in the amount of $500,000 be posted and a retention of assets in the total amount of $2,000,000 be restrained by PayPal from Defendants' PayPal accounts. Alternatively, the parties may agree that Defendants shall deposit the amount of $2,000,000 into the court's registry for payment of a judgment imposed.

## V. The Temporary Restraining Order

Accordingly, the Court, having considered the Motion and having found good cause, it is **RECOMMENDED** that the parties meet and confer and provide a joint report regarding the status of the deposit of funds into the court's registry by October 27, 2023. The Court will hold a hearing on the Preliminary Injunction on November 13, 2023 at 9:30 AM, at which time the Court will hear testimony and arguments regarding the issues raised in Plaintiff's Motion and Defendant's Response to the Preliminary Injunction.

It is further **RECOMMENDED** the TRO be extended against Defendants Larryhot Trading Co., Limited (Defendants 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924); Mind E-Commerce Co., Limited (Defendant 735); Giske Network Technology Co., Limited (Defendants 767, 778); Suzhou Chenghe Network Technology Co., Ltd. (Defendants 773, 775, 821, 832, 907, 913, 919); Vedo Trading Co., Limited (Defendant 916); Suzhou Ruoxing Network Technology Co., Ltd. (Defendants 704, 800); Shenzhen Jiayi E-Commerce Co., Ltd. (Defendants 714, 847);

8

Vanice Technology Col, Limited (Defendant 754); Starcraft Network Limited (Defendant 763); Sonzea Trading Co., Limited (Defendant 785); Dongguan Hengjia E-Commerce Co., Ltd. (Defendants 702, 914, 927); Nanchang Huiyun Linghai Technology Co., Ltd. (Defendants 786, 817, 825, 871); Banbain Trade Co., Limited (Defendants 798, 877); Hudsow Technology Co., Limited (Defendant 840); Ayor Technology Co., Limited (Defendant 915); Amgo Technology Co., Limited (Defendants 772, 880, 917, 923); Elay E-Commerce Co., Limited (Defendants 713, 839); Danceage Network Limited (Defendant 715); Zero-Miracle Network Limited (Defendants 728, 765, 803, 909, 879); Shenzhen Jijing Network Technology Co., Ltd. (Defendants 780, 818, 819, 878, 883); Nanchang Huimeng Network Technology Co., Ltd. (Defendants 822, 910); Nanchang Sikerui Technology Co., Ltd. (Defendants 858, 888, 922); Nanchang Laifei Technology Co., Ltd. (Defendant 891); and Wuhan Quanda Network Technology Co., Ltd. (Defendant 904) as follows:

1. Each of the 64 Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any defendant having notice of this Order are hereby restrained and enjoined during the pendency of this case:

   a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Betty's Best Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by plaintiff; and

   b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by plaintiff, bearing and/or using the Mark, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any

products bearing and/or using the Betty's Best Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any defendant, including, but not limited to, any assets held by or on behalf of any defendant;

      c.      From copying, displaying, distributing or creating derivative works of Plaintiff's Copyrighted Works; and

      d.      From making, using, selling, importing and/or offering to sell products that practice the HOPGT Design Patent.

2.      Each of the 64 Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Betty's Best Marks, or any confusingly similar trademarks, or the Plaintiff's Copyrighted Works, and the HOPGT Design Patent on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs. This order is limited to the defendants' listings using the Betty's Best Marks, or any confusingly similar trademarks, or the Plaintiff's Copyrighted Works, and the HOPGT Design Patent, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs, and does not apply to the defendants' entire e-commerce stores.

3.      Each of the 64 Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Betty's

Best Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs.

4. Each of the 64 Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further order of the Court.

5. Each of the 64 Defendants shall continue to preserve copies of all computer files relating to the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before the entry of this Order.

6. Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Ayden N.V. ("Ayden"), Checkout Ltd which operates Checkout.com ("Checkout.com"), Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd., Alipay.com Co., Ltd., and Alipay Singapore E-Commerce Private Limited (collectively, "Alipay"), Amazon Payments, Inc. ("Amazon"), Cloudflare.com ("Cloudflare"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), PayPal, Inc. ("PayPal"), eBay, Inc. ("eBay"), Stripe, Inc. and/or Stripe Payments Company ("Stripe"), Walmart.com ("Walmart"), and their related companies and affiliates shall continue the restraints imposed under the TRO until further Order of this Court and, to the extent not already done, (i)

11

restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; (ii) divert those restrained funds to a holding account for the trust of the Court.; (iii) identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the Seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" to the Complaint and Exhibit 1 attached hereto, as well as any other accounts of the same customer(s); (iv) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order;

7. Upon receipt of notice, defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, Ayden, Checkout.com, AliExpress, Ant Financial Services, Alipay, Amazon, Cloudflare, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Stripe, Walmart, and their related companies and affiliates, shall to the extent not already done, provide plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to; (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained; (iii) the historical sales for the defendants' listings that are alleged to infringe plaintiff's trademarks; and (iv) the true identities along with complete contact information including email addresses of all defendants.

8. The funds restrained by this Order shall not be transferred or surrendered by any defendant, financial institution, payment processor, bank, escrow service, money transmitter, or

marketplace website, including but not limited to, Ayden, Checkout.com, AliExpress, Ant Financial Services, Alipay, Amazon, Cloudflare, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Stripe, Walmart, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

9. No defendant whose funds are restrained by this Order may transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Ayden, Checkout.com, AliExpress, Ant Financial Services, Alipay, Amazon, Cloudflare, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Stripe, Walmart, and their related companies and affiliates restrained by this Order to any other financial institution, payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

10. Any defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

11. This Order shall apply only to the Seller IDs listed on Schedule "A" to the Complaint and Exhibit 1 attached hereto, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting the Betty's Best Marks, Copyrighted Works, the HOPGT Design Patent, and/or unfairly competing with Plaintiff.

12. This Order shall remain in effect until November 17, 2023, or until such further dates as set by the Court or stipulated by the parties.

## BOND

The Court recommends that a bond be set in the amount of Five Hundred Thousand Dollars and Zero Cents ($500,000.00) and retention of Two Million Dollar and Zero Cents ($2,000,000.00) of the 64 Defendants' funds.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), Plaintiff has THREE (3) days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge.1 *See generally Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507 (11th Cir. 1990). Failure to timely file objections will bar a de novo determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

SIGNED this 18th day of October, 2023.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

**cc: United States District Judge Kathleen M. Williams;**

**Counsel of Record**