UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:23-cv-22322-KMW

BETTY'S BEST, INC.,

        Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

        Defendants.

## PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION AS TO ASSET FREEZE REDUCTION OR IN THE ALTERNATIVE TO STAY ASSET FREEZE REDUCTION UNTIL CONCLUSION OF THE HEARING ON THE MOTION FOR PRELIMINARY INJUNCTION SCHEDULED FOR NOVEMBER 13, 2023

        This objection argues that the Magistrate Judge erred by releasing all but $2 million of the 64 Defendants' $21 Million in frozen funds without holding an evidentiary hearing where it could consider all the equitable remedies available to plaintiff.

        This objection proposes that instead of recommending the release of over $19 Million in funds based on argument of counsel that occurred at the hearing on October 18, 2023, the Magistrate Judge should have instead delayed the determination to release funds until the evidentiary hearing set for November 13, 2023 when the Court can hear and consider the evidence demonstrating that the amount plaintiff is entitled reasonably to freeze based on the equitable relief sought is far higher than the $2 million retained. Only when an informed decision can be made by the Magistrate Judge as to the proper amount retained for purposes of an accounting and constructive trust can the matter be determined.

### BACKGROUND

        The 64 Defendants are Chinese businesses that operate scam websites promoting the sale of "too good to be true" offers of knockoff products that violate plaintiffs' and others'

intellectual property rights.[1] After the TRO and asset freeze was ordered, and after further investigation, plaintiff filed a motion for leave to amend to file a second amended complaint, and a motion to sever the 64 Defendants. The allegations against the 64 defendants in the pleadings attached to both motions allege that the 64 Defendants are engaged in a counterfeiting enterprise that has victimized dozens of intellectual property owners and countless consumers.

The asset freeze portion of the TRO when served on PayPal resulted in frozen funds exceeding $22 Million. These funds are all ill-gotten gains from counterfeiting. The plaintiff can and will demonstrate at the hearing on the motion for preliminary injunction set for November 13, 2023 that the 64 Defendants are engaged in the business of counterfeiting and have caused the plaintiff loss that is not redressable by monetary relief alone and requires equitable relief in the form of an accounting, disgorgement of profits, and restitution to make plaintiff whole.

Plaintiff will also demonstrate that the 64 Defendants have counterfeited dozens of other intellectual property owners causing the defendants to earn ill-gotten gains that should be the subject of a constructive trust. The constructive trust, a creature of equity, "arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Mitsubishi Int'l Corp. v. Cardinal Textile Sales*, 14 F.3d 1507, 1518 (11th Cir. 1994) quoting 5 Austin W. Scott, The Law of Trusts § 462, at 3413 (3d ed. 1967).

**The Magistrate Judge ordered the release of over $19M of ill-gotten gains based on argument of counsel, not evidence.** The Magistrate Judge's decision on this issue in its entirety was:

> In addition to arguments challenging jurisdiction, service of process, and lack of merit, Defendants' claim their worldwide sales of any products that may be relevant products at issue in this case was at most $42,144, yet Plaintiff's TRO has restrained over $21 million from Defendants' PayPal accounts. [ECF No. 121]. They argue the amount of money restrained far exceeds the amount they may have profited from the sales and the funds restrained should be reasonably related to the amount of profit. The Court agrees. See, e.g., *CFTC v. E-Metal Merchants, Inc*., No. 05-21571-CIV, 2006 WL 8432005, at *7 (S.D. Fla. Jan. 9, 2006) (for asset restraints, "any funds not reasonably related to the ultimate

---

[1] The FTC defines a "scam website" as one that engages in one or more illegal business practice such as the sale of counterfeit goods, false or deceptive advertising, the use of fake reviews, misrepresentation, or other practices declared illegal under Section 5 of the FTC Act. See, e.g., https://www.ftc.gov/consumers/scam-watch, and https://consumer.ftc.gov/scams.

> relief requested by Plaintiff should be released"). As a result, a more
> appropriate amount of funds restrained in this case is $2 million, rather than
> $21 million.

(ECF 147 at 7).

Plaintiff proffered extensive evidence demonstrating that it was entitled to maintain the asset freeze far in excess of the $2 Million retained. The 64 Defendants carried the burden to reduce the asset restraint but offered no evidence whatsoever. The 64 Defendants only argued that the amount restrained was excessive for purposes of disgorgement. However, plaintiff seeks not just disgorgement, but also an accounting and constructive trust, and the Magistrate Judge failed to consider these points or plaintiff's evidence in support.

The Magistrate Judge did not review plaintiff's evidence. The Magistrate judge ruled based on argument by counsel for the 64 Defendants on the disgorgement remedy. That was error. The plaintiff objects and requests a hearing. Plaintiff simply wants the opportunity to demonstrate that the amount frozen is proper and incident to plaintiff's equitable remedies of accounting and constructive trust.

## AN ASSET FREEZE IS APPROPRIATE AND THE BURDEN WAS ON THE DEFENDANTS

Supreme Court precedent authorizes pre-judgment asset restraints. In *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289-91 (1940), the Court held that a district court had sufficient equitable powers to preliminarily freeze a defendant's assets in suits sounding in equity. The Court concluded that where a legal action is inadequate and an asset freeze is narrowly drawn to sequester only those funds necessary to satisfy the potential judgment, "'[i]t is well settled that the granting of a temporary injunction . . . is within the sound discretion of the trial court . . . .'" *Id.* at 290 (quoting *Prendergast v. N.Y. Tel. Co.*, 262 U.S. 43, 50 (1923)); *see also United States v. First Nat'l City Bank*, 379 U.S. 378, 385 (1965) (stating that defendants might dissipate their assets if the district court could not freeze their bank accounts).

"Asset freeze orders like the one entered here are routinely issued pre-judgment in actions for equitable remedies, well before damages have been fixed or a money judgment entered." *SEC v. Miller*, 808 F.3d 623, 633 n.51 (2d Cir. 2015) citing *Gucci Am. v. Bank of China*, 768 F.3d 122, 131 (2d Cir. 2014) (noting that district courts have equitable power to issue a pre-judgment asset freeze where such relief was traditionally available).

The burden was on the 64 Defendants—admitted counterfeiters—to demonstrate that

their frozen funds are not the proceeds of counterfeiting. *See Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) ("To exempt assets from an asset freeze, '[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities.'") (quoting *Luxottica USA LLC,* No. 1:14-cv-09061, 2015 U.S. Dist. LEXIS 78961, 2015 WL 3818622 (citing *N. Face Apparel Corp. v. TC Fashions, Inc.,* No. 05 CIV. 9083(RMB), 2006 U.S. Dist. LEXIS 14226, 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006)); *see also Antsy Labs, LLC v. Individuals*, No. 21 C 3289, 2022 U.S. Dist. LEXIS 212406 (N.D. Ill. Nov. 23, 2022) (same). Furthermore, where it is the defendants' own deliberate scheme that makes it impossible to ascertain the assets that should be properly frozen for later disgorgement, "it is appropriate to freeze those assets where there is a just and reasonable inference they may be linked to the underlying activity." *L-Acoustics v. Se7Ven Sounds Music*, Inc., No. 8:22-cv-2823-MSS-AAS, 2023 U.S. Dist. LEXIS 67070, at *8 (M.D. Fla. Mar. 28, 2023) (quoting *SEC v. Asset Recovery & Mgmt. Tr.*, S.A., 340 F. Supp. 2d 1305, 1308 (M.D. Ala. 2004)).

"[I]n cases involving the operation of a fraudulent business, courts accept gross receipts obtained by the defendant as a reasonable measure of disgorgement." *United States v. Demesmin*, No. 6:17-cv-36-Orl-31KRS, 2019 U.S. Dist. LEXIS 13907, at *44, 123 A.F.T.R.2d (RIA) 2019-553 (M.D. Fla. Jan. 10, 2019) (citing *United States v. Stinson*, 729 F. App'x 891, 899 (11th Cir. 2018)). "Disgorgement of gross revenues is appropriate because wrongdoers are not entitled to deduct costs associated with committing their illegal acts." *United States v. Kroll*, No. 4:20-CV-28 (CDL), 2021 U.S. Dist. LEXIS 151607, at *4 (M.D. Ga. Aug. 12, 2021).

"To exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Antsy Labs, LLC v. Individuals*, No. 21 C 3289, 2022 U.S. Dist. LEXIS 212406, at *12 (N.D. Ill. Nov. 23, 2022) citing *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015). A plaintiff's "burden for showing the amount of assets subject to disgorgement (and, therefore available for freeze) is light: a reasonable approximation of a defendant's ill-gotten gains [is required] . . . Exactitude is not a requirement." *Se7Ven Sounds Music,* No. 8:22-cv-2823-MSS-AAS, 2023 U.S. Dist. LEXIS 67070, at *6. It is well recognized that it is often impossible to calculate disgorgement with precision and exactitude. *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 171 (2d Cir.1980). Any risk of uncertainty about exact amount received falls

on the wrongdoer whose illegal conduct created the uncertainty. *See SEC v. Inorganic Recycling Corp.,* 2002 WL 1968341 (S.D.N.Y.2002) (stating that the risk of uncertainty falls on defendants since fraudsters rarely keep accurate records of the proceeds of their crimes); *S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006).

Other courts faced with precisely the same situation—defendants who seek a reduction in asset restraints but fail to offer documentatary evidence to meet their burden to show that the assets frozen are not the proceeds of counterfeiting—have refused to reduce PayPal account restraints because Defendants failed to submit any evidence regarding their PayPal account transactions to show that these funds are not the proceeds of counterfeiting activities. See *Luxottica USA LLC v. The Partnerships, et al.*, No. 1:14-cv-09061, 2015 U.S. Dist. LEXIS 78961, 2015 WL 3818622 (N.D. Ill. June 18, 2015) (citing *N. Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 CIV. 9083(RMB), 2006 U.S. Dist. LEXIS 14226, 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006)).

Courts regularly decline to modify asset freeze orders in the face of ambiguous or unpersuasive evidence. *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20-CV-3471, 2020 WL 8260381, at *3 (N.D. Ill. July 20, 2020) (finding the defendants' evidence broad and ambiguous and therefore insufficient to support a modification of the asset freeze); *see also Entertainment One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 954 (N.D. Ill. 2019) (disregarding as incredible defendant's statement that the counterfeit product purchased by an investigator just happened to be the only one they ever sold); *Balenciaga Am., Inc. v. Dollinger*, No. 10 CIV. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733, 2010 WL 3952850, at *8 (S.D.N.Y. Oct. 8, 2010) (declining to terminate the asset freeze because defendants had not presented documentary proof that any particular assets were not proceeds of counterfeiting activities so as to warrant exemption of the particular assets); *North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 WL 838993, at *3–4 (S.D.N.Y. Mar. 30, 2006) (keeping order in place when the parties disputed the aggregate sales numbers and profit margins); *H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, 2017 WL 6733685, at *6 (N.D. Ill. Dec. 18, 2017) (disregarding conclusory statement that "none of the [funds] currently on deposit" were derived from counterfeit sales); *Monster Energy*, 136 F. Supp. 3d at 910 (refusing to modify asset freeze where defendants did not submit "any evidence regarding their PayPal account transactions to show that these funds are not the proceeds of counterfeiting activities"); *Luxottica USA LLC v. The Partnerships and*

*Unincorporated Associations Identified On Schedule "A"*, 2015 WL 3818622, at *4–5 (N.D. Ill. June 18, 2015) (declining to lift freezes on five of seven accounts based on defendants' spreadsheets that were unsupported by a declaration).

**THE EVIDENCE PROFFERED BY PLAINTIFF**

The 64 Defendants' opposition to plaintiff's motion for preliminary injunction admitted to counterfeiting in a chart (ECF 121-1) showing tens of thousands of dollars in sales of counterfeit goods in the U.S. violating Betty's Best's IP rights.[2] The 64 Defendants also proffered conclusory declarations of five controlling persons and a few unauthenticated screenshots to back up their unsupported assertion that "[a]ll or virtually of the frozen assets of these Defendants are proceeds from sales of products that are entirely unrelated to the product at issue." (ECF 121-2 at 4-5, ECF 121-3 at 4-5, ECF 121-4 at 4-5, ECF 121-5 at 4-5, ECF 121-6 at 4-5).

Plaintiff responded by submitting the following with its Reply:

1. Screenshots showing all of the 64 Defendants' infringements of plaintiff's trademarks, copyrights, and design patent (ECF 130-3 to 130-4);

2. The declaration of Sunday Jacobs, Chief Operating Officer of Betty's Best, which affirms, among other things, that plaintiff's investigation revealed the 64 Defendants' counterfeiting of numerous other IP owners' goods (ECF 130-2);

3. Screenshots showing the counterfeiting by the 64 Defendants of other IP owners' intellectual property and a chart listing at least 33 cases where the IP owners have enforced their rights against counterfeiters like the 64 Defendants (ECF 130-5 to 130-6);

4. Screenshots showing numerous consumer reports on the 64 Defendants that were submitted to websites that collect information on online scammers (ECF 130-7);

5. Screenshots showing numerous scam reports about the 64 Defendants on websites that collect information on online scammers (ECF 130-8);

6. Communications by consumers made directly to Betty's Best reporting the counterfeiting of its IP by the 64 Defendants (ECF 130-9).

---

[2] Discovery will reveal whether the 64 Defendants are being truthful with their sales numbers or not. Plaintiff believes they are not being truthful. Moreover, plaintiff believes that the 64 Defendants are part of an even larger group of scam website operators not named here that have yet to be identified and that work with the 64 Defendants to sell Chinese counterfeit goods.

Plaintiff's evidence demonstrates that the 64 Defendants' assets are related not only to counterfeiting of plaintiff's IP but also to other fraudulent activity including the counterfeiting of other IP holders' genuine goods.

"The amount of assets to be frozen, prior to the finding of liability, is determined not by whether the funds themselves are traceable to the fraudulent activity underlying the lawsuit, but by showing a reasonable approximation of the amount, with interest, the defendant was unjustly enriched." *SEC v. Lauer*, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006) (citing *SEC v. ETS Payphones*, 408 F.3d at 735-36 (11th Cir. 2005)) (emphasis added). "A district court may enter an order freezing all of a defendants assets, even though the assets are not related to the alleged fraud and it is not certain whether disgorgement will be ordered or the amount of such disgorgement, if ordered." *SEC v. Founding Partners Capital Mgmt.*, No. 2:09-cv-229-FtM-29SPC, 2009 U.S. Dist. LEXIS 137335, at *11 (M.D. Fla. May 7, 2009) (citing *CFTC v. Levy*, 541 F.3d 1102, 1115 (11th Cir. 2008)

Moreover, such an asset freeze should remain in effect until the district court can make "an informed determination of the amount of unlawful proceeds retained by [the defendant], and if it can what that amount may approximate." Id. at *11-12 (declining to modify an asset freeze "until the district court determines whether it can make an informed determination of the amount of unlawful proceeds retained by defendant"). To do so, the defendant should provide evidence sufficient to make an informed decision regarding the amount which should be exempt from the asset freeze. See *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (rejecting the argument that an asset freeze was too broad because the district court did not trace those assets to the alleged illegal activity).

The Report and Recommendation cites to an unreported case, *CFTC v. E-Metal Merchants, Inc.* to support the proposition that "any funds not reasonably related to the ultimate relief requested by plaintiff should be released." No. 05-21561-CIV, 2006 WL 8432005, at *7 (S.D. Fla. Jan 9, 2006). The court in *E-Metal Merchants* actually determined that it could not make an informed determination absent a hearing where Plaintiff could demonstrate the requisite nexus between the amount frozen and the ill-gotten gains, and declined to modify the existing asset restraint prior to the hearing. *Id.* Therefore, that decision supports the outcome requested here, namely the holding of a hearing where the issues can be determined based on the evidence.

In contrast, the Report and Recommendation's basis for reducing the amount rests on "Defendants' claim" that their sales amounted to $42,144. Without bank statements, complete sales transaction logs, or any further evidence, the Court cannot make an informed decision on defendant's ill-gotten gains.

## CONCLUSION

This Court should overrule the decision to reduce the asset restraint in ECF 147 and instead remand the matter to the Magistrate Judge for a determination following the evidentiary hearing on November 13, 2023.

DATED:  October 23, 2023                    Respectfully submitted,


                                            */s/ Joel B. Rothman*
                                            JOEL B. ROTHMAN
                                            Florida Bar Number:  98220
                                            joel.rothman@sriplaw.com
                                            ANGELA M. NIEVES
                                            Florida Bar Number:  1032760
                                            angela.nieves@sriplaw.com

                                            **SRIPLAW, P.A.**

                                            21301 Powerline Road
                                            Suite 100
                                            Boca Raton, FL  33433
                                            561.404.4350 – Telephone
                                            561.404.4353 – Facsimile

                                            *Counsel for Plaintiff Betty's Best, Inc.*