UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| BETTY'S BEST, INC., <br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br> Defendants | Case No. 1:23-cv-22322-KMW |

**OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE LISETTE REID**

Defendants Nos. Nos. 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924, 735, 767, 778, 773, 821, 832, 907, 913, 919, 775, 916, 704, 800, 714, 847, 754, 763, 785, 702, 914, 927, 786, 817, 825, 871, 798, 877, 840, 915, 772, 880, 917, 923, 713, 839, 715, 728, 765, 803, 909, 879, 780, 818, 819, 878, 883, 822, 910, 858, 888, 922, 891, 904 ("Certain Defendants"), as identified in Schedule "A" to the Complaint (DE 0011-007), by and through undersigned counsel, respectfully submit this Objection to the Report and Recommendation ("R&R") issued by Magistrate Judge Lisette Reid on October 18, 2023 [DE 147]. Pursuant to the R&R, any objections are due within three (3) days of entry of the R&R. This objection is therefore timely filed. *See* DE 147.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

This objection concerns the R&R's recommended continued asset restraint of $2 million imposed on Certain Defendants in this intellectual property dispute, even though the *uncontroverted evidence in the record* shows that the Defendants' sales of allegedly infringing products totaled only $42,144.  Magistrate Judge Reid correctly recognized that an asset freeze must be "reasonably related to the amount of profit" from infringing sales—and here, such profit by definition is less than $42,144.  R&R at 7.  Yet Magistrate Judge Reid recommends imposing an asset restraint of $2 million without any basis in the record, stating only that this was "appropriate."  *Id*.

This proposed $2 million restraint is clearly erroneous and contrary to law.  The R&R does not provide an explanation for the basis of a proposed $2 million restraint, and the proposed restraint is contrary to the applicable law as cited by the Magistrate Judge and as addressed further below.

Certain Defendants respectfully submit that the continued asset restraint under the modified TRO, if any, should be no more than $42,144.

I.   **BACKGROUND**

This case concerns alleged intellectual property infringement.  Plaintiff alleges ownership of an animal grooming product it calls "Striphair" and "Gentle Groomer."  Certain Defendants are e-commerce companies based in Hong Kong and China.  Plaintiff alleges that Certain Defendants infringed Plaintiff's design patent rights to its product, its trademarks, and its copyrighted photos for use in advertising.  Certain Defendants dispute the merits of Plaintiff's claims.

Plaintiff filed this lawsuit under seal, and quickly moved—without notice to Defendants— for a temporary restraining order ("TRO") that included a restraint on Defendants' assets.  Without the benefit of hearing from any defendants and without any evidence of the amount of money that

should be temporarily restrained, the Court granted the TRO. (DE 24.) The TRO restrained and froze certain financial accounts of defendants, including Certain Defendants, whose accounts are held by PayPal. In doing so, the TRO restrained more than $21,000,000 of Certain Defendants' funds, a number that continues to increase. *See* DE 121-1 (chart from Certain Defendants showing restrained funds).

Virtually all of those funds are unrelated to this litigation. *See* DE 121-2 through 121-6 (declarations). Certain Defendants' sales of allegedly infringing products were minimal. Certain Defendants produced undisputed documentary evidence showing that their *worldwide* sales of relevant products were at most $42,144 in revenue.[1] DE 121-7; *see also* DE 121-2 through 121-6 (declarations concerning the screenshots). Certain Defendants also confirmed that they had stopped all sales of any relevant products. DE 121-2 through 121-6.

The evidence of actual sales of relevant products is credible and uncontroverted. Certain Defendants submitted three categories of evidence of sales: (1) sworn statements; (2) screenshots; and (3) a summary chart. *See* DE 121 and supporting exhibits. Plaintiff did not submit contrary evidence.

In their sworn declarations, Certain Defendants provided an estimate of 8% profit margins on the relevant sales. *See* DE 121-2 through 121-6. With $42,144 in revenue, the relevant profits were therefore less than $4,000. However, for purposes of the modified TRO, Certain Defendants contend that any ongoing restraint should be no more than $42,144, and reserve the right to see a further reduction in the restraint upon consideration of the motion for preliminary injunction.

---

[1] As noted, Certain Defendants dispute the merits of Plaintiff's claims against them. Certain Defendants only acknowledge that they made sales of products that are relevant to the Plaintiff's claims, and they dispute that Plaintiff can prove the merits of their claims for infringement of copyright, trademark, and/or patent rights for each of the Certain Defendants.

After Certain Defendants appeared through counsel and filed papers, the Court set a briefing schedule for whether to convert the TRO into a preliminary injunction and Magistrate Judge Reid held a hearing on October 18, 2023. At that hearing, the Magistrate Judge considered modification of the TRO before the preliminary injunction itself could be adjudicated. Magistrate Judge Reid then issued the R&R, which extended the TRO until November 17, 2023 and set an evidentiary hearing on the preliminary injunction for November 13, 2023. The R&R recommended modification of the TRO and a significant reduction in the asset restraint. While Certain Defendants definitely agree that the TRO should be modified and agree that the Magistrate Judge identified the fundamentally correct legal standard, the Certain Defendants respectfully contend that the modification proposed by the Magistrate Judge was still significantly too high in light of applicable law and the evidentiary record.

Judge Reid correctly recognized that the current asset restraint of over $21 million was vastly overbroad, stating:

> Defendants claim their worldwide sales of any products that may be relevant products at issue in this case was at most $42,144, yet Plaintiff's TRO has restrained over $21 million from Defendants' PayPal accounts. [ECF No. 121]. They argue the amount of money restrained far exceeds the amount they may have profited from the sales and **the funds restrained should be reasonably related to the amount of profit. The Court agrees.** *See, e.g., CFTC v. E-Metal Merchants, Inc*., No. 05-21571-CIV, 2006 WL 8432005, at *7 (S.D. Fla. Jan. 9, 2006) (for asset restraints, "any funds not reasonably related to the ultimate relief requested by Plaintiff should be released").

R&R at 7 (emphasis added).

However, despite this correct recognition of the law, and despite Defendants' relevant sales only being $42,144, the R&R recommended the imposition of a $2 million restraint, stating, "a more appropriate amount of funds restrained in this case is $2 million, rather than $21 million." *Id*. The R&R does not give any explanation for the figure of $2 million.

4

While Defendants appreciate and agree with Magistrate Judge Reid's recognition that the initial restraint was seriously overbroad, for the reasons that follow, Defendants object to Judge Reid's recommendation that the restraint be set at $2 million.[2] Certain Defendants request that any ongoing asset restraint under the TRO should be no more than $42,144, based upon the facts and the applicable law.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), a party may object to a magistrate judge's report and recommendation. According to section 636(b)(1), upon objections a district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." And under Local Magistrate Rule 4(a)(1), the district judge "shall set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law. The District Judge may also reconsider sua sponte any matter determined by a Magistrate Judge under this rule."

## III.    DISCUSSION

The modification of the TRO asset freeze should be lowered to correspond to Certain Defendants' profits from allegedly infringing sales. The uncontroverted evidence in the record is that Certain Defendants' collective total sales revenue from the relevant products was $42,144, and Certain Defendants reasonably estimate profits margins of about 8%. *See* DE 121-2 through

---

[2] The other findings and conclusions in the R&R appear to be limited to extending the temporary restraining order and do not apply to the preliminary injunction. Certain Defendants reserve all rights to oppose the imposition of any preliminary injunction in this matter. To the extent necessary to preserve their rights, Certain Defendants object to all findings and conclusions regarding the preliminary injunction factors, service, or jurisdictions. Certain Defendants reserve all rights.

121-6. Any asset restraint under a TRO should therefore be reduced to no more than $42,144, based upon the applicable law and the uncontroverted factual record.

In the operative First Amended Complaint, Plaintiff seeks the equitable remedies of accounting and the disgorgement of profits (see DE 84, Prayer for Relief, ¶ i through k), in addition to statutory and legal remedies.[3]

Under established law, an injunctive asset restraint must be limited to an approximation of the available equitable remedy – i.e., disgorgement defendant's profits from infringing activity – and cannot be used to satisfy money damages. An asset freeze may only be "justified as a means of preserving funds for the equitable remedy of disgorgement." *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005). It is the plaintiff's burden to show the amount of assets subject to disgorgement, and though "[e]xactitude is not a requirement," the freeze must be at least "a reasonable approximation of the defendant's ill-gotten gains." *Id*. at 735 (quoting *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004). And the "power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment." *Id*. (quoting *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)). In the case of an intellectual property infringement action such as this one, money damages include statutory damages.

---

[3] In the First Amended Complaint and motion for preliminary injunction, Plaintiff also seeks equitable and injunctive remedies prohibiting Defendants from certain activities related to the relevant products and claimed intellectual property. Certain Defendants have already stopped selling the products at issue and have stated that that they do not intend to restart any such sales.

The operative complaint at this time is the First Amended Complaint (DE 84). While Plaintiff has filed a motion for leave to amend, that motion will be opposed by Certain Defendants in due course and has not yet been adjudicated. As a result, any asset freeze under a TRO or preliminary injunction must be tied to the allegations and relief sought of the operative pleadings.

Here, because Certain Defendants have provided credible evidence of relevant sales revenues, the Court can determine a "reasonable approximation" of what a disgorgement remedy could be (although Certain Defendants do not concede that Plaintiff will be able to prevail on the merits of its claims and do not concede any liability). Such a remedy would be no more than $42,144, and likely much less.

A further review of the prevailing case law demonstrates that an injunctive asset restraint must be limited to an amount equivalent to an equitable remedy of disgorgement of profits. The provisional *equitable* restraint must be tied to the amount of an ultimate potential *equitable* remedy. In *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995), the Eleventh Circuit considered an appeal of a preliminary injunction order. Among other issues, the appellant appealed a preliminary asset restraint. The court concluded that "the district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits." *Id*. at 987. *See also Hard Candy, Ltd. Liab. Co. v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1358-59 (11th Cir. 2019) (noting that in *Levi Strauss*, "[a] panel of this Court held that the asset freeze was a valid exercise of the district court's equitable powers because the underlying claim involved a request for equitable relief – namely, the disgorgement of profits under the Lanham Act.").

Thus, the equitable provisional remedy of an injunction must be tied to an ultimate potential equitable remedy – i.e., the disgorgement of profits. *See also* First Amended Complaint, DE 84, Prayer for Relief (seeking disgorgement of profits, along with alternative relief of statutory damages and other legal remedies). It cannot be tied to money damages, such as statutory damages or other calculations of damages.

Accordingly, in crafting a preliminary remedy of an asset freeze for equitable claims, the Court should look at the Certain Defendants' sales and does not need to refer to data related to

Plaintiff's business. That credible and uncontroverted evidence shows relevant revenue to the Certain Defendants of $42,144. *See* DE 121 and supporting exhibits.

In the matter of *Awareness Ave. Jewelry LLC v. P'ship*, No. 8:23-cv-2-TPB-AAS, 2023 U.S. Dist. LEXIS 88241 (M.D. Fla. May 19, 2023), the court initially granted a temporary restraining order asset freeze of defendants' financial accounts in an intellectual property infringement matter. Upon briefing and argument, the court vacated the asset restraint on the basis that the restrained funds were not limited to an amount that could be used to satisfy an equitable award of profits. "Defendants have shown that the amounts frozen are not so limited, and therefore good grounds exist to modify the injunction to reduce or eliminate the asset restraint." *Id*. Based upon data of minimal relevant sales, the court vacated the preliminary asset restraint entirely. *See id*. at *3 ("Plaintiffs offer no contrary evidence as to the amount of Defendants' profits but argue that Plaintiffs may be able to recover hundreds of thousands of dollars in lost sales and/or statutory damages under the Copyright Act. This response is unavailing because those remedies would be legal, not equitable."). The Court should reach the same conclusion here and, to the extent an asset freeze remains in place pending resolution of the preliminary injunction motion, it should be no more than $42,144.

It is well-established that an asset freeze based on the amount of potential *legal* recoveries would be improper. *See Grupo Mexicano de Dessarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (holding that district courts may not enter preliminary injunctions preventing defendants from disposing of assets pending adjudication of claims for money damages); *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1529-30 (11th Cir. 1994) (holding that district courts have no general equitable power to freeze assets where the plaintiff seeks only a judgment for money damages); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 U.S. Dist. LEXIS 153137, at *5 (S.D.N.Y. Oct. 24, 2012) (rejecting asset freeze amount tied to potential statutory damages under

Lanham Act, and reducing asset freeze from $2 million to $20,000 based on the defendants' showing of minimal profits from allegedly infringing sales); *see also id*. at *10 ("asset freezes have consistently been confined to preserving the equitable remedy of an accounting for *profits*.") (emphasis in original).  Plaintiff cannot argue that statutory damages for "willful" infringement warrant an excessive freeze.  It is well-established that "statutory damages do not constitute a form of final relief for which an asset freeze is an appropriate provisional remedy." *Id.* at *8.  The Supreme Court's *Groupo Mexicano* case "precludes a freeze of assets for the purpose of preserving an award of statutory damages." *Id*. (citing *Grupo Mexicano*, 527 U.S. 308 (1999)).

The Eleventh Circuit addressed the distinction between monetary damages and equitable relief at length in the matter of *Hard Candy*, 921 F.3d 1343.  In that matter, the court addressed the question of whether a plaintiff was entitled to a jury trial, which necessitated a determination of which infringement claims were equitable in nature.  The court addressed the nature of a remedy for equitable claims.  "[W]hen a plaintiff seeks an accounting and disgorgement of profits as a remedy for trademark infringement, the focus is entirely on the alleged infringer's gain; the plaintiff is not required to present any evidence of particular financial harm that it suffered so as to justify legal redress." *Id*.  *See also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962) (holding that a trademark claim for money damages "is a claim wholly legal in its nature").  Plaintiff alleges equitable claims for the disgorgement of profits, in addition to legal claims for statutory damages and other forms of damages.

Here, Certain Defendants voluntarily submitted detailed and credible documentary evidence of sales of allegedly infringing goods--indeed, they produced screenshots detailing *each and every sale* of such goods--and these documents established that such sales totaled $42,144. DE 121-7; *see also* DE 121-2 through 121-6 (declarations concerning the screenshots).  Plaintiff has not submitted any contrary evidence.  Indeed, Plaintiff admits that its *total annual revenue* was

9

approximately $1.6 million. *See* DE 84, ¶ 38. Magistrate Judge Reid acknowledged that the existing restraint of more than $21,000,000 was excessive, stating that "the amount of money restrained far exceeds the amount they may have profited from the sales." R&R at 7. Despite this, Magistrate Judge Reid set the asset freeze at $2 million, without any basis in the record. The R&R does not explain the basis of a $2 million freeze, either in law or fact.

Respectfully, the proposed restraint of $2 million is contrary to law and clearly erroneous. A freeze of $2 million goes well beyond the equitable parameters of a preliminary asset freeze. As acknowledged by the R&R and as discussed above, the law limits injunctive asset freezes to "the amount with interest by which the defendant profited from his wrongdoing." *ETS Payphones*, 408 F.3d at 735. The benchmark for a preliminary asset restraint is therefore the *defendant's* allegedly ill-gotten profits, and Certain Defendants here have shown credible evidence of collective sales revenues of $42,144.

If the "party seeking relief [can] present documentary proof that particular assets [are] not the proceeds of counterfeiting activities," the court should reduce the asset freeze to the amount of allegedly ill-gotten gains. *Klipsch*, 2012 WL 5265727, at *11 (quotations omitted). Here, since Certain Defendants submit documentary proof that only $42,144 of the frozen assets are related to allegedly infringing goods, the record therefore demonstrates that the *remainder* of the currently frozen funds are *not the proceeds* of counterfeiting. *See, e.g., id.* at *29 ("Moreover, by crediting the Declarations of Mr. Chow, which states that DealExtreme earned less than $6,000 in gross profits from the sale of counterfeit Klipsch-branded goods, the Court necessarily concluded that, based on the record before it, the remainder of the previously restrained assets did *not* derive from the sale of such counterfeit goods.") (emphasis in original); *see also Awareness Ave*, 2023 U.S. Dist. LEXIS 88241, at *4 (noting that "Plaintiffs have offered no evidence or argument as to any

reasonable approximation of profits from infringement applicable to all Defendants" and vacating preliminary asset restraint).

It is therefore clearly erroneous and contrary of law to impose an ongoing asset restraint that is over 20 times Certain Defendants' entire sales revenue of the relevant products of $42,144. Any such restraint must be restricted to Defendants' profits at issue, and certainly no more than $42,144. Moreover, other evidence in the record confirms that the proposed $2 million restraint is vastly overbroad. For example, Plaintiff admits that its *entire annual revenue* was only $1.6 million. DE 84, ¶ 38.

## IV.   CONCLUSION

The Magistrate Judge correctly acknowledged that the restrained funds need to be "reasonably related" to the profits of the Certain Defendants. However, the recommended continuing asset restraint of $2 million is improper under the applicable law and the credible, uncontroverted facts. Accordingly, Certain Defendants object to Magistrate Judge Reid's R&R and respectfully submit that, under the applicable law and the uncontroverted factual record, the TRO asset freeze should be reduced to no more than $42,144, pending final adjudication of the motion for preliminary injunction after a hearing. Certain Defendants reserve all other rights.

Dated: October 23, 2023

Giuliano Law Group, P.A.

/s/ Nicole W. Giuliano
Nicole W. Giuliano, Esq.
Florida Bar No. 71067
121 S. Orange Avenue, Suite 1500
Orlando, FL 32801
Tel: (321) 754-5290 / Fax: (321) 400-1055
Primary: nicole@glgpa.com
service@glgpa.com

DGW KRAMER LLP

By: /s/ Katherine Burghardt Kramer
    Katherine Burghardt Kramer, Esq.
    *Pro hac vice*
    DGW KRAMER LLP
    One Rockefeller Plaza, 10th Fl.
    Suite 1060
    New York, NY 10020
    T: (917) 633-6860
    kkramer@dgwllp.com

*Attorney for Certain Defendants* Nos. 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924, 735, 767, 778, 773, 821, 832, 907, 913, 919, 775, 916, 704, 800, 714, 847, 754, 763, 785, 702, 914, 927, 786, 817, 825, 871, 798, 877, 840, 915, 772, 880, 917, 923, 713, 839, 715, 728, 765, 803, 909, 879, 780, 818, 819, 878, 883, 822, 910, 858, 888, 922, 891, 904.