UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:23-CV-22322-KMW

BETTY'S BEST, INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE 'A',

    Defendants.

_____

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS BY THE 64 DEFENDANTS
(ECF 133) AND INCORPORATED MEMORANDUM OF LAW**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  STATEMENT OF RELEVANT FACTS .......................................................................... 2

III. MEMORANDUM OF LAW .............................................................................................. 4

A.  This Court Has Jurisdiction Over the 64 Defendants ................................................. 4

　1.  Procedure ................................................................................................................ 4

　2.  Plaintiff's Complaint Alleges Sufficient Facts to Subject the 64 Defendants to Specific Personal Jurisdiction in Florida ................................................................................ 5

　3.  Exercise of Jurisdiction Over the 64 Defendants Comports with Due Process ................... 7

　　a.  Plaintiff's claims arise out of or relate to the 64 Defendants' contacts with Florida. ....... 7

　　b.  The 64 Defendants purposely availed themselves of Florida's jurisdiction and had sufficient minimum contacts with Florida. ................................................................ 7

　　c.  Jurisdiction over the 64 Defendants comports with fair play and substantial justice. ..... 9

B.  The Defendants Were Either Validly Served Pursuant to This Court's Order Authorizing Alternate Service or Are Already Apprised of the Lawsuit Against Them; Alternatively, the Court Can Authorize Service on the 64 Defendants' Attorneys ....................................... 9

C.  Transferring the Case to Another District Is Unwarranted and Will Only Cause Unnecessary Delays ............................................................................................................................ 13

D.  Plaintiff's Complaint Is Not an Implausible Shotgun Pleading ........................................... 14

E.  The Issue of Any Remaining Restraint or Injunction Will be Resolved in the Relevant Proceedings ........................................................................................................................ 15

IV. CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                                           **Page(s)**

*AT&T Mobility L.L.C. v. AU Optronics Corp.* (*In re Tft-Lcd Antitrust Litig.*),
 No. C 09-5840 SI, 2010 U.S. Dist. LEXIS 44099, 2010 WL 1337743 ................................ 12

*Betty's Best Inc. v. Yuyao Aggpo Elec. Tech. Co., LTD*,
 No. 1:22-CV-1078-RP, 2022 U.S. Dist. LEXIS 225705 (W.D. Tex. Dec. 15, 2022) ............ 13

*Blue Water Int'l, Inc. v. Hattrick's Ir. Sports Pub, L.L.C.*,
 CASE NO. 8:17-cv-1584-T-23AEP, 2017 U.S. Dist. LEXIS 154121 (M.D. Fla. Sept. 21,
 2017) ................................................................................................................................ 8

*Brookshire Bros. v. Chiquita Brands Int'l*,
 CASE NO. 05-CIV-21962-COOKE/BROWN, 2007 WL 1577771 (S.D. Fla. May 31, 2007)
 ........................................................................................................................................ 11

*Cable/Home Commun. Corp. v. Network Prods.*,
 902 F.2d 829 (11th Cir. 1990) ........................................................................................... 5

*Fru Veg Mktg. v. Vegfruitworld Corp.*,
 896 F. Supp. 2d 1175 (S.D. Fla. 2012) ............................................................................. 11

*Hawthorne Indus. Prods. v. M/V TAC Imola*,
 No. RDB-22-1376, 2023 U.S. Dist. LEXIS 2551 (D. Md. Jan. 5, 2023) ........................... 11

*Hyskaj v. N.Y.N.Y. Pizza, L.L.C.*,
 No. Case No: 8:18-cv-00397-MSS-TGW, 2018 U.S. Dist. LEXIS 223380 (M.D. Fla. Nov.
 14, 2018) ................................................................................................................... 13, 14

*Internet Sols. Corp. v. Marshall*,
 39 So. 3d 1201 (Fla. 2010) ................................................................................................ 6

*Lampkin-Asam v. Volusia Cnty. Sch. Bd.*,
 261 F. App'x 274 (11th Cir. 2008) ................................................................................... 13

*LG Elecs., Inc. v. ASKO Appliances, Inc.*,
 No. 08-828 (JAP), 2009 U.S. Dist. LEXIS 53391, 2009 WL 1811098 .............................. 11

*Likas v. Chinacache Int'l Holdings, Ltd.*,
 No. CV 19-6942 FMO (SSx), 2020 U.S. Dist. LEXIS 90923 (C.D. Cal. Jan. 29, 2020) ........ 9

*Louis Vuitton Malletier, S.A. v. Mosseri*,
 736 F.3d 1339 (11th Cir. 2013) ............................................................................... passim

*Madara v. Hall*,
 916 F.2d 1510 (11th Cir. 1990) ......................................................................................... 4

*Menashe v. Jaoude*,
  No. 22-CV-22220-SCOLA/GOODMAN, 2022 U.S. Dist. LEXIS 213767 (S.D. Fla. Nov. 28, 2022) .......... 11

*Peopleshare, L.L.C. v. Vogler*,
  601 F. Supp. 3d 1276 (S.D. Fla. 2022) .......... 4

*Performance Indus. Mfg. v. Vortex Performance Pty Ltd*,
  No. 8:18-cv-00510-T-02AAS, 2019 U.S. Dist. LEXIS 476 (M.D. Fla. Jan. 2, 2019) .......... 8

*Polskie Linie Oceaniczne v. Seasafe Transp. A/S*,
  795 F.2d 968 (11th Cir. 1986) .......... 4

*Precision Software Servs., Inc. v. Fortune Fin. Sys., Inc.*,
  CASE NO. 98-136-CIV-FTM-17D, 1998 U.S. Dist. LEXIS 22068 (M.D. Fla. Oct. 13, 1998) .......... 5

*Prediction Co. v. Rajgarhia*,
  No. 09 Civ. 7459 (SAS), 2010 U.S. Dist. LEXIS 26536, 2010 WL 1050307 .......... 11-12

*Rio Props. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) .......... 9, 10

*Sculptchair, Inc. v. Century Arts, Ltd.*,
  94 F.3d 623 (11th Cir. 1996) .......... 4

*Smart Study Co. v. Acuteye-US*,
  620 F. Supp. 3d 1382 (S.D.N.Y. 2022) .......... 9, 10

*Valle v. Trivago GmbH*
  56 F.4th 1265 (11th Cir. 2022) .......... 6, 7

*Victaulic Co. v. Allied Rubber & Gasket Co., Inc.*
  No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150 (S.D. Cal. May 8, 2020) .......... 9

**Statutes**

28 U.S.C. § 1404 .......... 12, 13

Fla. Stat. § 48.193 .......... 5, 6

**Rules**

Fed. R. Civ. P. 4(f)(1) .......... 11

Fed. R. Civ. P. 4(f)(3) .......... 9, 10, 11

## I. INTRODUCTION

The defendants who filed the motion to dismiss (Nos. 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924, 735, 767, 778, 773, 821, 832, 907, 913, 919, 775, 916, 704, 800, 714, 847, 754, 763, 785, 702, 914, 927, 786, 817, 825, 871, 798, 877, 840, 915, 772, 880, 917, 923, 713, 839, 715, 728, 765, 803, 909, 879, 780, 818, 819, 878, 883, 822, 910, 858, 888, 922, 891, 904 referred to herein as the "64 Defendants"), are a group of Chinese counterfeiting companies working together in an illegal counterfeiting enterprise targeting U.S. consumers.

The 64 Defendants admitted they sold counterfeit copies of Plaintiff's genuine products in their opposition to Plaintiff's motion for preliminary injunction. (DE 121). Some of those knockoffs were sold in Florida. (See Composite Exhibit 1 to the Declaration of Sunday Jacobs filed herewith). This evidence, combined with the evidence that the 64 Defendants sold and shipped to Florida consumers at least $1,738,593.82 in goods over the past year, is sufficient to assert specific personal jurisdiction over them.

| Doe | Merchant ID | PayPal Account Holder | Florida sales |
|---|---|---|---|
| 822 | matureidea.com | Nanchang Huimeng Network Technology Co., Ltd | $102,941.83 |
| 915 | www.implicitm.com | Ayor Trading Co., Limited | $365,631.25 |
| 858 | semi-sugarism.com | Nanchang Sikerui Technology Co., Ltd | $185,024.05 |
| 878 | sunnylada.com | Shenzhen Jijing Network Technology Co., Ltd | $198,733.30 |
| 891 | tophotred.com | Nanchang Leifei Technology Co., Ltd | $51,530.39 |
| 913 | www.goblinpocket.com | Suzhou Orange Harvest Network Technology Co., Ltd | $201,787.40 |
| 922 | www.puppup.net | Nanchang Sikerui Technology Co., Ltd | $164,763.11 |
| 883 | swan-sunny.com | Shenzhen Jijing Network Technology Co., Ltd | $90,151.89 |
| 891 | tophotred.com | Nanchang Laifei Technology Co., Ltd | $256,511.15 |
| 910 | www.confidencem.com | Nanchang Huimeng Network Technology Co., Ltd | $121,519.45 |
|  |  |  | $1,738,593.82 |

(Declaration of Angela Nieves, Exhibit 2).

The 64 Defendants argue they were not validly served, despite this Court's order authorizing alternate service. Their arguments are a veiled attempt to convince the Court to adopt an unpopular out of circuit interpretation of allowed methods of service on foreign defendants that restricts the Court's authority and goes against precedent in this Circuit. The 64 Defendants hope the Court ignores their extensive participation in this litigation, a clear indication that they are already on notice of the lawsuit, and that the Court may authorize service by other means, including service on their counsel.

The 64 Defendants claim a transfer of this case to another federal district court will somehow lead to judicial efficiency and serve the interests of justice, while relying on another

court's reasoning that is inapplicable to the facts of the current action. The Defendants offer no persuasive argument to justify the disruption and delay that would be caused by an unnecessary transfer of the case.

The 64 Defendants attempt to obtain a dismissal of the case on the assertion that Plaintiff's complaint is an implausible shotgun pleading. But the Defendants offer no real explanation for the implausibility of the allegations, which are in fact detailed and informative enough to give the 64 Defendants adequate notice of the claims against them.

The 64 Defendants end their motion with a request for the Court to dissolve any restraint or injunction remaining at the time of the Court's decision on their Motion. The hearing on Plaintiff's motion for preliminary injunction scheduled for November 13, 2023 will provide the Court an opportunity to hear the evidence and modify any such restraints. Plaintiff suggests that any relief from the restraints in place should be decided by the Court independent of the Defendants' motion.

This Court should deny the 64 Defendants' motion to dismiss in its entirety.

## II. STATEMENT OF RELEVANT FACTS

1. The 64 Defendants are a small group of related Chinese entities. (See Corporate Disclosure Statements filed at ECF 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 109, 110, 111, 112, 113, 114, 115, and 117).

2. Plaintiff's FAC alleges the 64 Defendants are directly engaging "in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiff's intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Plaintiff." (DE 84 ¶ 63). "Defendants are continuously infringing and inducing others to infringe one or more of the Betty's Best Marks by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods." (DE 84 ¶ 139). The FAC alleges Defendants, "through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Florida and causing Plaintiff harm and damage within this jurisdiction." (DE 84 ¶ 73).

3. Plaintiff alleges the Defendants operate "internet-based e-commerce stores accessible in Florida." (DE 84 ¶ 7). Plaintiff further alleges "Defendants have purposefully

directed some portion of their illegal activities towards consumers in the state of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State. (DE 84 ¶ 64).

4. The FAC alleges the Defendants "use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside," which they use "to accept, receive, and deposit profits from their illegal activities." (DE 84 ¶¶ 94-95, 127).

5. The FAC alleges the "Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff." (DE 84 ¶¶ 69, 100). Plaintiff further alleges the "Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule 'A,' are being used by Defendants to accept, receive, and deposit profits from Defendants' counterfeiting and infringing, and their unfairly competitive activities connected to their Seller IDs and any other alias e-commerce stores or seller identification names being used and/or controlled by them." (DE 84 ¶¶ 95, 127).

6. Betty's Best placed test orders from certain of the 64 Defendants through their e-commerce stores. (Jacobs Declaration ¶ 6). The sixteen products were purchased by someone who was able to access the Defendants' websites and fully interact with them. (Jacobs Declaration ¶ 7).

7. The orders were processed entirely online. (Jacobs Decl. ¶ 8).

8. The items were all shipped from addresses within the United States to a location in Odessa, Florida. (Jacobs Decl. ¶ 9).

9. The products were all shipped via United States Postal Service. (Jacobs Decl. ¶ 10).

10. The test purchases sold and shipped by the 64 Defendants were found to be identical or strikingly similar to the counterfeit products sold by the other individual 64 Defendants. (Jacobs Declaration ¶ 11).

11. The 64 Defendants own PayPal accounts that are associated with the websites

3

alleged to be engaging in the sale and offer to sell of counterfeit and infringing products, and directly, and unfairly, competing with Plaintiff's economic interests. (Nieves Declaration ¶¶ 3-5).

12. Pursuant to the Court's TRO, PayPal produced account and transaction logs for certain of the 64 Defendants' accounts for periods ranging from four months to thirteen months. (Nieves Declaration ¶¶ 4-5; Exhibit 1).

13. The PayPal transaction logs for the certain accounts reveal that the 64 Defendants' aggregate sales to Florida residents for just the referenced periods total $1,738,593.82. (Nieves Declaration ¶¶ 7-14; Ex. 2).

14. The entities who claim to own, operate, or provide services for the 64 Defendants' websites produced affidavits filed with the 64 Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (DE 121). Those affidavits are filed at DE 121-002, 003, 004, 005, and 006.

15. The affidavits authenticate the chart filed with the Defendants' Opposition at DE 121-1 which lists the sales of goods that infringe Plaintiff's intellectual property by each of the 64 Defendants. The chart discloses sales of counterfeit goods totaling 957 units, and $42,144.06 in sales revenue. The chart also acknowledges 39 sales of the counterfeit goods into Florida. (DE 121-1).

16. The affidavits further assert that the transaction logs filed at DE 121-7 are the reports detailing the sales of the 957 infringing products by each of the 64 Defendants. The reports show consumers paid for the products by one of two methods: by PayPal or by "NsPayment." The affidavits do not explain what is meant by "NsPayment." (See generally DE 121-7).

### III. MEMORANDUM OF LAW
#### A. This Court Has Jurisdiction Over the 64 Defendants

**1. Procedure**

Federal courts undertake a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). The court must first determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. *Id.* Second, if the court determines that the forum state's long-arm statute has been satisfied, it must then decide whether

4

the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Id.*

A defendant challenging the plaintiff's factual allegations must present evidence to counter those allegations, such as an affidavit. *Peopleshare, LLC v. Vogler*, 601 F. Supp. 3d 1276, 1279 (S.D. Fla. 2022). The affidavit must contain specific factual declarations within the affiant's personal knowledge to successfully challenge plaintiff's allegations. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1351 (11th Cir. 2013). Conclusory denials fail to shift the burden back to the plaintiff. *Id*.

"If the defendant makes a sufficient showing of a lack of personal jurisdiction, 'the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof . . . .'" *Peopleshare*, 601 F. Supp. 3d at 1279 citing *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986). "[W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Peopleshare*, 601 F. Supp. 3d at 1279 citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

2. **Plaintiff's Complaint Alleges Sufficient Facts to Subject the 64 Defendants to Specific Personal Jurisdiction in Florida**

Plaintiff's non-conclusory allegations of its Amended Complaint establish a prima facie case for specific personal jurisdiction against the 64 Defendants. Florida's long-arm statute provides:

> Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> * * *
> (2) Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(a)(2). Violations of copyright and trademark rights qualify as tortious acts under Florida's long-arm statute. *See Louis Vuitton*, 736 F.3d at 1353 (trademark infringement claims qualify as tortious acts); *Precision Software Servs., Inc. v. Fortune Fin. Sys., Inc.*, CASE NO. 98-136-CIV-FTM-17D, 1998 U.S. Dist. LEXIS 22068, at *11 (M.D. Fla. Oct. 13, 1998) citing *Cable/Home Commun. Corp. v. Network Prods.*, 902 F.2d 829, 856 (11th Cir. 1990) (copyright infringement is a tort).

5

Plaintiff's FAC alleges the 64 Defendants promoted, sold, and distributed unauthorized copies of Plaintiff's genuine products infringing its trademarks, copyrights, and design patent. (DE 84 ¶¶ 63, 139). Plaintiff alleges the Defendants operate "internet-based e-commerce stores accessible in Florida." (DE 84 ¶ 7). Plaintiff also alleges "Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State." (DE 84 ¶ 64). The FAC further alleges Defendants, "through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Florida and causing Plaintiff harm and damage within this jurisdiction." (DE 84 ¶ 73).

Plaintiff supports its allegations with the evidence in Composite Exhibit 1 to the Declaration of Sarah M. Owen filed at DE 18-1 to 18-7, which shows the screenshots of the 64 Defendants' infringing listings on their websites. The allegations are also supported by Composite Exhibit 1 to the Jacobs Declaration filed with Plaintiff's Reply to the 64 Defendants' Response in Opposition to the Motion for Preliminary Injunction shows screen captures of the 64 Defendants' seller listings selling counterfeit goods. (DE 130-3).

Plaintiff's allegations are further supported by the evidence submitted in Composite Exhibit 1 to the Declaration of Sunday Jacobs filed herewith, consisting of photographs of the sixteen test purchases Plaintiff made from certain of the 64 Defendants. (Jacobs Decl., Ex. 1). The purchases were made by someone located in Florida who was able to access the Defendants' stores and fully interact with them. (Jacobs Decl. ¶ 7). The orders were processed entirely online through the subject websites. (Jacobs Decl. ¶ 8). The photographs show all the products were shipped to a location in Florida from another location within the U.S. (Jacobs Decl. ¶ 9). The products were all shipped via United States Postal Service. (Jacobs Decl. ¶ 10). The products sold and shipped by the 64 Defendants were found to be counterfeit goods that were not authorized by Betty's. (Jacobs Declaration ¶ 11).

These allegations satisfy plaintiff's specific jurisdictional burden under *Valle v. Trivago GmbH*, where the Eleventh Circuit held that allegations strikingly similar to those in the Amended Complaint in this case were sufficient to satisfy the plaintiff's burden to allege specific jurisdiction under § 48.193(1)(a)(2). 56 F.4th 1265, 1274 (11th Cir. 2022). Relying on *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1216 (Fla. 2010), and *Louis Vuitton*, 736 F.3d at

1353, the Eleventh Circuit determined that allegations that the defendant sold trademark-infringing goods and services to Florida residents through the defendant's website, and that when the infringing products were sold and shipped to Florida they caused injury to the plaintiff in Florida, satisfied specific personal jurisdiction under § 48.193(1)(a)(2) because the defendant's tortious acts engaged Florida residents and were committed on a website that was accessible to Florida residents. *Trivago*, 56 F.4th at 1274. The same should apply here without the need for further evidence. However, the aforementioned allegations together with further evidence developed over the course of the litigation overwhelmingly shows that the 64 Defendants are subject to specific personal jurisdiction in Florida.

### 3. Exercise of Jurisdiction Over the 64 Defendants Comports with Due Process

To determine whether due process is satisfied

> [i]n specific jurisdiction cases like this one, we examine whether (1) the plaintiff's claims "arise out of or relate to" one of the defendant's contacts with the forum state; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of "fair play and substantial justice." *See Louis Vuitton*, 736 F.3d at 1355. The plaintiffs bear the burden of establishing the first two requirements. *See id.* If they carry that burden, the [defendants] must then make a "'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."

*Trivago*, 56 F.4th at 1275.

### a. Plaintiff's claims arise out of or relate to the 64 Defendants' contacts with Florida.

Plaintiff's claims for trademark and copyright infringement and unfair competition relate to and arise from the 64 Defendants' sales of counterfeit goods on their internet-based websites to Florida residents. The 64 Defendants shipped the counterfeit goods to Florida residents who accessed the defendants' websites that promoted the sale of the counterfeit goods to Florida. This satisfies the "arise out of or relate to" prong. *Trivago*, 56 F.4th at 1275.

### b. The 64 Defendants purposely availed themselves of Florida's jurisdiction and had sufficient minimum contacts with Florida.

Purposeful availment is satisfied by a single tortious act regardless of other contacts where "the tort was intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state." *Trivago*, 56 F.4th at 1275-76.

Here, the FAC alleges ongoing, knowing, intentional infringement of Plaintiff's intellectual property rights by the 64 Defendants' advertising, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiff's intellectual property rights. (DE 84 ¶¶ 63, 73, 139).

Minimum contacts is satisfied where, as here, the defendant's contacts with the forum "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. The court considers all contacts between the 64 Defendants and Florida whether or not those contacts gave rise to the plaintiff's claim. *Id.*

Here, similar to *Trivago*, the FAC combined with the facts obtained during the litigation demonstrate that (1) the 64 Defendants' websites are fully interactive and fully accessible in Florida; (2) Florida residents used the Defendants' websites to make purchases in excess of $1.7 million U.S. over the past year alone,[1] providing the 64 Defendants with sizeable direct financial benefit from purchases made by Floridians. (Nieves Declaration ¶ 8; Ex. 2). The 64 Defendants' repeated concern with whether their sales of the counterfeit goods was made to an unsuspecting consumer or to Plaintiff is a red herring. The Defendants have admitted to selling at least 957 counterfeit products, totaling $42,144.06. (DE 121-1). The Defendants also admitted to 39 sales of the counterfeit goods into Florida. (Id.). But as established above, their overall sales into Florida far exceed that amount.

Moreover, the sales reports the 64 Defendants filed with their opposition to Plaintiff's motion for preliminary injunction reveal a secondary method of payment that is unexplained: "NsPayment." (See generally DE 121-7). What kind of payment method is this? Does it involve persons or entities located within the state? Without discovery of these "NsPayments," Plaintiff cannot know for sure whether those specific sales further support jurisdiction, but given how often "NsPayment" appears in these extremely narrow transaction records for a very specific product, it is likely the 64 Defendants have even more sales to Florida, and more sales of infringing goods.

---

[1] The majority of the PayPal transaction records only covered an eight-month period, and are limited to the data for ten accounts. The actual sales of all the Defendants for a period of time going back further would likely dwarf the current $1.7 million figure.

8

The 64 Defendants' reliance on *Performance Indus. Mfg. v. Vortex Performance Pty Ltd*, No. 8:18-cv-00510-T-02AAS, 2019 U.S. Dist. LEXIS 476 (M.D. Fla. Jan. 2, 2019) is unavailing as *Performance* is factually distinguishable from this case. In *Performance*, the Australian defendant company, unlike the 64 Defendants, sold the allegedly infringing products by requiring purchasers accept all orders be FOB Melbourne, Australia, pay in Australian currency, and be responsible for the shipment of any products to a destination country after taking possession of the products in Australia. *Performance Indus.*, 2019 U.S. Dist. LEXIS 476, at *3. The Defendants' reliance on *Blue Water Int'l, Inc. v. Hattrick's Ir. Sports Pub, LLC*, No. 8:17-cv-1584-T-23AEP, 2017 U.S. Dist. LEXIS 154121 (M.D. Fla. Sep. 21, 2017) fares no better, given that we now know the 64 Defendants have sold more than $1.7 million in products to Florida consumers over the past year. And *Blue Water* is also distinguishable: the defendant, a bar in Missouri accused of infringing a Tampa bar's trademarks, maintained no presence in Florida, undisputedly sold nothing in Florida, sold nothing on the internet, had no employees in Florida, and directed no advertising at Florida. *Blue Water*, 2017 U.S. Dist. LEXIS 154121, at *3, 5. Even taking Blue Water only for the proposition that "significant" sales are required to establish jurisdiction –they are not—the 64 Defendants' verified sales into Florida can only be described as "significant" and thus sufficient to establish minimum contacts with the state.

c. **Jurisdiction over the 64 Defendants comports with fair play and substantial justice.**

The exercise of personal jurisdiction over the 64 Defendants meets the criteria normally considered: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute. *Louis Vuitton*, 736 F.3d at 1358.

The burden of jurisdiction over the 64 Defendants is minimal in view of their sizeable financial benefit from sales to Florida residents. The interest of Florida in adjudication is significant. Plaintiff's interest in obtaining relief is significant, as is the judicial system's interest in resolving this dispute.

B. **The Defendants Were Either Validly Served Pursuant to This Court's Order Authorizing Alternate Service or Are Already Apprised of the Lawsuit Against Them; Alternatively, the Court Can Authorize Service on the 64 Defendants' Attorneys**

The 64 Defendants seem to believe that a decision in the prior case filed in California has bearing on this Court's ruling concerning the issue of alternate service. The 64 Defendants

9

accuse Plaintiff of concealing a denial by the district court for the Central District of California of Plaintiff's motion for alternate service without prejudice. There was no such concealment. And the court denied the motion because it believed that certain information about the specific countries where defendants reside *besides China* was missing. In the process, the court noted—directly contrary to the 64 Defendants' argument--that service by email on defendants in China *has been approved by many courts,* including in the Central District of California:

> Plaintiff proffers that China's reservation to the Convention does not preclude service by electronic means. (EPA 14.) Many courts in this district concur. E.g., [*Victaulic Co. v. Allied Rubber & Gasket Co., Inc*., No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150, at *7 (S.D. Cal. May 8, 2020) (citing Hague Convention art. 10).] at *7–8 (collecting cases); *Likas v. ChinaCache Int'l Holdings, Ltd*., No. CV 19-6942 FMO (SSx), 2020 U.S. Dist. LEXIS 90923, at *6–7 (C.D. Cal. Jan. 29, 2020) (same).

(DE 130, Ex. 1).

While it is true that a small minority of district courts *outside* this district have opined that China's reservation to the Hague Convention does preclude email service, no court in this district agrees with that conclusion, and no other district courts in the Eleventh Circuit do either. The 64 Defendants provide no binding authority supporting their arguments, and cannot do so.

As fully explained in Plaintiff's Motion for Alternate Service of Process (DE 12), since the Ninth Circuit in *Rio Properties v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) determined that alternative service by email pursuant to Rule 4(f)(3) is not a last resort and is not less favored than Hague Convention service, and prior attempts are not necessary or required where the alternative means of service are reasonably calculated to provide notice to the defendant, district courts including in the Eleventh Circuit have consistently followed its holding. (*Id.* at 6-11).

The 64 Defendants focus on *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382 (S.D.N.Y. 2022), which is an outlier. *Smart Study* was decided based on that district court's belief that China's "objection to service by postal channels includes an implicit objection to service by email," and that based upon that *implicit* objection China "would preclude service by email under the Hague Convention." *Smart Study*, 620 F. Supp. 3d at 1395. In other words, China has never expressly objected to email service, but if given the chance to object, the district court in *Smart Study* believed that China would object.

10

*Smart Study* is not in the Eleventh Circuit. The Second Circuit Court of Appeals has never affirmed the decision. *Smart Study* is non-binding, and as explained below, it is not persuasive.

The *Smart Study* district court, after initially authorizing email service on defendants in China, later refused to recognize those defendants as properly served for purposes of entering default judgment. *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1399 (S.D.N.Y. 2022). The court looks to some decisions in the Northern District of California, the District of Massachusetts, and the Northern District of Illinois for support that China's objections under Article 10 of the Hague Convention to service by postal channels is an implicit objection to service by email. But the court also acknowledges that other district courts, including in its own Circuit, have determined that service via email on Chinese defendants is permitted by the Convention, citing eight separate cases. *Smart Study Co.*, 620 F. Supp. 3d at 1395, and n.9.

The *Smart Study* court also based its decision on an amicus brief filed by a Columbia Law School professor and the co-chair of a law firm's China Practice, and the minutes of a Supreme People's Court of China National Symposim that discussed a presumption that China does not allow electronic service of documents. *Smart Study Co.*, 620 F. Supp. 3d at 1395. But as the court concedes, the amici themselves explain that "these meeting minutes are not formal law in China," and are instead meant to guide lower court actions in Chinese courts. *Smart Study Co.*, 620 F. Supp. 3d at 1395 n.8.

Over a year has passed since the decision in *Smart Study*, yet no explicit Hague objection to email service from China has materialized. This Court's concerns need not be theoretical.

The 64 Defendants also state Plaintiff is required to show reasonable diligence in attempting to discover a physical address for each defendant and failed to do so. (DE 133 at 12). As fully explained in Plaintiff's Motion for Alternate Service, since the Ninth Circuit in *Rio Properties v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) determined that alternative service by email pursuant to Rule 4(f)(3) is not a last resort and is not less favored than Hague Convention service, and prior attempts are not necessary or required where the alternative means of service are reasonably calculated to provide notice to the defendant, district courts including in the Eleventh Circuit have consistently followed its holding. (DE 12 at 6-11).

Finally, the 64 Defendants argue that because they have now provided physical addresses to Plaintiff, Plaintiff should be required to pursue service through other means. This request is

11

meant to only delay the proceedings. The Defendants that were served by email and also by posting of the corresponding court filings on Plaintiff's webpage were duly served pursuant to the Court's Order authorizing alternate service.[2] The remaining defendants have clearly been apprised of the lawsuit against them, evidenced by their appearance through counsel and their extensive litigation in their own defense.

Alternatively, the Court could authorize service on the 64 Defendants' attorneys Nicole W. Giuliano and Katherine Kramer, who currently represent the 64 Defendants in this case. Courts have often found that service on a foreign defendant's U.S. counsel is not only reasonably calculated to apprise the defendant of the lawsuit, it is oftentimes the most effective and efficient means of giving notice of a lawsuit. *See Menashe v. Jaoude*, No. 22-CV-22220-SCOLA/GOODMAN, 2022 U.S. Dist. LEXIS 213767, at *8-9 (S.D. Fla. Nov. 28, 2022) (finding that serving the defendants, who resided abroad, through their U.S. counsel was "reasonably likely to put them on notice of the lawsuit" and permitted by Rule 4(f)(3)); *Fru Veg Mktg. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1183 (S.D. Fla. 2012) (authorizing service of foreign defendants via email and U.S. mail to their local counsel); *Hawthorne Indus. Prods. v. M/V TAC Imola*, No. RDB-22-1376, 2023 U.S. Dist. LEXIS 2551, at *5 (D. Md. Jan. 5, 2023).

The court in *Brookshire*, for example, found that the most effective service under the circumstances was through the defendant's local counsel, who represented the defendants in a different litigation, noting that "authorization of service by local counsel actually afforded the [defendants] more time to defend than they otherwise would have had, had service been allowed to drag under the Rule 4(f)(1) method." *Brookshire Bros., LTD.*, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007).

Courts across the country have also held that, in order to prevent delays in litigation, service of process on foreign defendants through their counsel is appropriate. *See, e.g., LG Elecs, Inc. v. Asko Appliances, Inc.*, No. CIV.A.08-828, 2009 U.S. Dist. LEXIS 53391, 2009 WL 1811098, at *4 (D. Del. June 23, 2009) (service upon an attorney permissible in light of the regularity of contact between the defendant and attorney); *Prediction Co. LLC v. Rajgarhia*, No. CIV.A.09-7459, 2010 U.S. Dist. LEXIS 26536, 2010 WL 1050307, at *1 (S.D.N.Y. Mar.22, 2010) (sending a copy of the summons and complaint to defendant's attorney and requesting that

---

[2] DE 54, 56, 57, 59, 61, 64.

he forward the documents to defendant satisfies due process concerns); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. CIV.A.07-1827, 2010 U.S. Dist. LEXIS 44099, 2010 WL 1337743, at *3 (N.D. Cal. Apr. 2, 2010) (where the defendant had consulted U.S. counsel regarding the lawsuit and participated in the case through U.S. counsel it was reasonable to find that the defendant had sufficient notice of the suit).

If the Court is still concerned that some of the 64 Defendants, despite their extensive participation here, have not received proper service, it can authorize email service on the 64 Defendants' counsel, who have extensively litigated on behalf of their clients and are therefore in regular contact with them. Plaintiff submits that this service via email is adequate, effective, efficient, and reasonably calculated to give the Defendants notice of the lawsuit.

### C. Transferring the Case to Another District Is Unwarranted and Will Only Cause Unnecessary Delays

The 64 Defendants claim this action should be transferred to the Central District of California under 28 U.S. Code § 1404, and recite the factors courts in their discretion will consider in determining whether to transfer a case. (DE 133 at 13). But the 64 Defendants do not even attempt to explain how the nine factors would weigh for transfer of the case. Instead, they ask the Court to accept the reasoning of the Western District of Texas court's decision to transfer the previously filed case to the Central District of California. (DE 133 at 12). The Defendants conveniently omit a primary reason given for the transfer: to avoid a delay in processing Plaintiff's case due to the court's congestion. After discussing Plaintiff's lack of connection to Texas, the court states:

> The public-interest factors weigh even more heavily in favor of transfer. The public-interest factors include: (1) the administrative difficulties flowing from court congestion . . .
> The first factor—administrative difficulty—asks "not whether transfer will reduce a court's congestion, but whether a trial may be speedier in another court because of its less crowded docket." . . . The median time from filing to disposition is 8.4 months in the Western District of Texas. In the Central District of California, disposition has a median of 4.8 months. Because motions take 43% longer in the Western District of Texas, this difference weighs in favor of transfer. In addition, the Austin Division has a particularly heavy civil docket. For example, the undersigned currently has a docket of over 500 active civil cases. The Western District as a whole has one of the busiest criminal dockets in the country. Avoiding court congestion is particularly important in this case, where Plaintiff has sued 610 different Defendants. Assessing the validity of Plaintiff's claims requires examining the conduct of several hundred defendants, while managing a case with 610

13

defendants carries significant logistical hurdles. Accordingly, it would promote administrative convenience to transfer the case.

*Betty's Best, Inc. v. Yuyao Aggpo Elec. Tech. Co., LTD*, No. 1:22-CV-1078-RP, 2022 U.S. Dist. LEXIS 225705, at *6 (W.D. Tex. Dec. 15, 2022). The court further reasons that two additional public interest factors weigh in favor of transfer because the allegations in the complaint do not subject the defendants to the court's jurisdiction. *Betty's Best*, 2022 U.S. Dist. LEXIS 225705, at *9.

This is not the same situation. The WDTX court did not have the additional supporting factual allegations and evidence developed in this case concerning the extent of the 64 Defendants' business conduct in the state and the multiple test purchases of the counterfeit goods shipped into the state. Nor did the court have the additional factual support regarding the significant amount of business Plaintiff conducts in Florida and how its sales to the state have been decimated by the 64 Defendants' counterfeiting of their products. (DE 130 at 5). The 64 Defendants can try to paint the instant action as a carbon copy of the case filed in the Western District of Texas, but their attempts fail. This is not the same case.

The Defendants' references to Plaintiff's purported "gamesmanship" ring hollow here. Rather than at the outset move to have the case transferred under 28 U.S. Code § 1404, the 64 Defendants have chosen to participate in the litigation, making no fewer than 26 filings since appearing, including corporate disclosure statements, oppositions to the Plaintiff's motions for preliminary injunction, for expedited discovery, for leave to amend the SAC, for leave to sever, for constructive trust, and the motion to dismiss.[3] Their proposal to transfer the case has nothing to do with the convenience of parties or witnesses (their clients are all outside of the U.S.) or a concern for placing an "unnecessary burden on this Court." (DE 133 at 15). It is a tactic meant to obstruct the justice Plaintiff is entitled to seek and it should not be entertained by the Court.

### D. Plaintiff's Complaint Is Not an Implausible Shotgun Pleading

A shotgun pleading is "[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . ." *Hyskaj v. N.Y. N.Y. Pizza, Ltd. Liab. Co.*, No. 8:18-cv-00397-MSS-TGW, 2018 U.S. Dist. LEXIS 223380, at *18 (M.D. Fla. Nov. 14, 2018) (citing Lampkin-Asam v. Volusia County Sch. Bd., 261 Fed. App'x. 274, 277 (11th Cir. 2008)). The 64 Defendants claim Plaintiff's allegations, including that all the defendants have

---

[3] DE 91-107, 109-115, 117, 121, 126, 133, 138, 141, 151, 160, 161, 167, 168, 169)

14

infringed one or more of its presumptively valid intellectual property rights, is a fatal defect because it simply cannot be true, and the allegations are "factually empty." (DE 133 at 16).

The allegations in the SAC describe how the Defendants advertise, offer for sale, and sell goods bearing counterfeits and infringements of Plaintiff's intellectual property rights to consumers through their e-commerce stores, seller IDs, and websites, which are listed on Schedule "A" to the Complaint. (DE 84 ¶¶ 7, 63, 99). Attached to the SAC are exhibits showing not only Plaintiff's registration certificates for its trademarks, copyrights, and design patent, but also copies of the corresponding registered material the defendants are accused of infringing. (DE 84, Exs. 1-6). This is sufficient to give the 64 Defendants adequate notice of the claims against them. *See Hyskaj v. N.Y. N.Y. Pizza, Ltd. Liab. Co.*, No. 8:18-cv-00397-MSS-TGW, 2018 U.S. Dist. LEXIS 223380, at *19 (M.D. Fla. Nov. 14, 2018) (finding allegations of the different claims against the defendants informative enough to allow the defendants to address each count individually, and for court to determine that they stated a claim upon which relief could be granted).

The allegations in the complaint are supported by fact and state a plausible claim for relief. The facts are not controverted by the defendants. The Defendants' arguments about shotgun pleading are without merit.

### E. **The Issue of Any Remaining Restraint or Injunction Will be Resolved in the Relevant Proceedings**

The hearing on Plaintiff's motion for preliminary injunction is set for November 13, 2023. That is the appropriate forum for a request for dissolution of restraints and injunctions. The Court should not consider the request by the 64 Defendants for any dissolutions or modifications until it has heard and considered all the evidence by the parties. Plaintiff suggests that any relief from the restraints in place should be decided independent of the Court's decision on this motion.

### IV. CONCLUSION

For the foregoing reasons, the 64 Defendants' motion to dismiss should be denied in its entirety.

DATED: November 6, 2023                          Respectfully submitted,

                                                  */s/ Joel B. Rothman*
                                                  JOEL B. ROTHMAN
                                                  Florida Bar Number: 98220

joel.rothman@sriplaw.com
ANGELA M. NIEVES
Florida Bar Number:  1032760
angela.nieves@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Betty's Best, Inc.*