UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |
|---|---|
| BETTY'S BEST, INC.,<br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, PARTNERSHIPS,<br>AND UNINCORPORATED<br>ASSOCIATIONS IDENTIFIED ON<br>SCHEDULE "A,"<br>Defendants | Case No. 1:23-cv-22322-KMW |

# CERTAIN DEFENDANTS' SUMMARY OF ISSUES FOR PRELIMINARY INJUNCTION HEARING

Defendants Nos. 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924, 735, 767, 778, 773, 821, 832, 907, 913, 919, 775, 916, 704, 800, 714, 847, 754, 763, 785, 702, 914, 927, 786, 817, 825, 871, 798, 877, 840, 915, 772, 880, 917, 923, 713, 839, 715, 728, 765, 803, 909, 879, 780, 818, 819, 878, 883, 822, 910, 858, 888, 922, 891, 904 ("Certain Defendants"), as identified in Schedule "A" to the Complaint (DE 0011-007), by and through undersigned counsel, hereby submit this summary of issues for the evidentiary hearing on Plaintiff's Motion for Preliminary Injunction, set for November 13, 2023.

1

**SUMMARY OF ISSUES**

The burden is on Plaintiff Betty's Best, Inc. ("Plaintiff") to demonstrate entitlement to a preliminary injunction. Plaintiff must satisfy the elements for an injunction. In addition, if Plaintiff proves entitlement to an injunction, the Court must determine the proper scope of any restraint.

As previously stated, Certain Defendants have already ceased selling the relevant products and have no intention to restart. Therefore, an injunction against further sales is unnecessary. To the extent an asset restraint is granted, the scope of that order should be no more than an amount tied to an estimate of profits based upon the evidence of sales volume.

## I.     Preliminary Injunction Factors

"A preliminary injunction is an extraordinary remedy never awarded as of right." *FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1077 (11th Cir. 2021). A plaintiff seeking a preliminary injunction "must prove" that (1) "it has a substantial likelihood of success on the merits," (2) "it will suffer irreparable injury unless the injunction issues," (3) "the injury that threatens it outweighs whatever damage the proposed injunction may cause the opposing party," and (4) "the injunction would not be adverse to the public interest." *Norwegian Cruise Line Holdings Ltd v. State Surgeon Gen.*, 50 F.4th 1126, 1135 (11th Cir. 2022) (internal quotation marks omitted).

While the district court has discretion whether to grant or deny a preliminary injunction, "it must exercise that discretion in light of … the 'four prerequisites for the extraordinary relief of preliminary injunction." *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th

Cir. 2001). Indeed, this "extraordinary and drastic remedy" should "not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to *each* of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)) (emphasis added).

While Plaintiff must meet four requirements to obtain the "extraordinary and drastic remedy" of a preliminary injunction, Plaintiff cannot meet any of them. The Court must determine the following issues.

Plaintiff is not likely to succeed on the merits for at least three reasons. First, the Court lacks personal jurisdiction over Defendants, since this case has no connections to Florida whatsoever. At this stage, the Court need not make a final determination on this issue, because Defendants have a pending motion to dismiss that has not yet been adjudicated. The motion to dismiss will be ripe for adjudication as of November 13, 2023, and could be adjudicated simultaneously, or the Court could make a preliminary "likelihood of success" determination of the jurisdictional issues. Second, the case should be dismissed for improper service, since Plaintiff's email service under the circumstances violated the Hague Convention and due process. This issue is also presented in the pending motion to dismiss. Third, Plaintiff's claims will fail on their substance: Plaintiff's advertising materials show that its design patent invalidly covers a functional design. Copyright misuse and other defenses bar the copyright claims. And only a few Defendants purportedly used any trademark, with phrases like "gentle groomer"—descriptive fair use for products that groom animals gently.

Plaintiff is at no risk of imminent irreparable injury. Plaintiff's entire argument is that

3

such a finding "is virtually always made" if likelihood of confusion supports a trademark infringement claim. There is no likelihood of confusion here, and even if there was, only five out of the 64 defendant websites at issue are accused trademark infringement. And Defendants have stopped selling the products at issue and have no intention of resuming sales. Moreover, Plaintiff has known of the offending uses since early 2022 and even filed suit on these claims in 2022. This over-one-year delay shows that Plaintiff is not at risk of "imminent irreparable harm," as required for a preliminary injunction.

Plaintiff cannot meet the "balance of harms" requirement for an injunction. Defendants have stopped all sales of the accused products, so an injunction will not prevent any future harm. Moreover, Plaintiff is attempting to preserve an overbroad asset restraint, even now that it has been reduced to $2 million. Defendants have submitted evidence regarding revenue from sales. The continued restraint of $2 million is overbroad and harmful to Defendants' ongoing business operations.

Plaintiff cannot meet the "public interest" requirement. A preliminary injunction would not promote valid intellectual property, but would remove Defendants' legitimate businesses from commerce and harm international comity. Indeed, the improper asset restraint could destroy Defendants' business and prevent this case from being decided on the merits.

At the hearing, the Court will need to determine whether Plaintiff has satisfied the requirements for the "extraordinary remedy" of a preliminary injunction." Defendants contend that Plaintiff has not done so.

## II. Scope of Asset Restraint

To the extent any asset restraint is entered, it should be limited to no more than an estimate of profits based on actual sales, which represents the maximum gross revenue received by Defendants from sales of the relevant products. A restraint of total sales revenue would still be overinclusive under the applicable law, but any such restraint should be no more than total sales revenue. In their sworn declarations, Certain Defendants provided an estimate of 8% profit margins on the relevant sales. *See* DE 121-2 through 121-6.

Judge Reid correctly recognized that the previous asset restraint of over $21 million was vastly overbroad, stating:

> Defendants . . . argue the amount of money restrained far exceeds the amount they may have profited from the sales and **the funds restrained should be reasonably related to the amount of profit. The Court agrees.** *See, e.g., CFTC v. E-Metal Merchants, Inc.*, No. 05-21571-CIV, 2006 WL 8432005, at *7 (S.D. Fla. Jan. 9, 2006) (for asset restraints, "any funds not reasonably related to the ultimate relief requested by Plaintiff should be released").

R&R at 7 (emphasis added) (adopted by the District Court).

The modification of the TRO asset freeze should be lowered to correspond to Certain Defendants' profits from allegedly infringing sales.

In the operative First Amended Complaint, Plaintiff seeks the equitable remedies of accounting and the disgorgement of profits (see DE 84, Prayer for Relief, ¶ i through k), in addition to statutory and legal remedies.[1]

---

[1] In the First Amended Complaint and motion for preliminary injunction, Plaintiff also seeks equitable and injunctive remedies prohibiting Defendants from certain activities related to the

5

Under established law, an injunctive asset restraint must be limited to an approximation of the available equitable remedy – i.e., disgorgement defendant's profits from infringing activity – and cannot be used to satisfy money damages. An asset freeze may only be "justified as a means of preserving funds for the equitable remedy of disgorgement." *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005). It is the plaintiff's burden to show the amount of assets subject to disgorgement, and though "[e]xactitude is not a requirement," the freeze must be at least "a reasonable approximation of the defendant's ill-gotten gains." *Id*. at 735 (quoting *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004). And the "power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment." *Id*. (quoting *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)). In the case of an intellectual property infringement action such as this one, money damages includes statutory damages.

Here, because Certain Defendants have provided credible evidence of relevant sales revenues, the Court can determine a "reasonable approximation" of what a disgorgement remedy could be (although Certain Defendants do not concede that Plaintiff will be able to prevail on the merits of its claims and do not concede any liability).

---

relevant products and claimed intellectual property. Certain Defendants have already stopped selling the products at issue and have stated that that they do not intend to restart any such sales.

The operative complaint at this time is the First Amended Complaint (DE 84). While Plaintiff has filed a motion for leave to amend, that motion will be opposed by Certain Defendants in due course and has not yet been adjudicated. As a result, any asset freeze under a TRO or preliminary injunction must be tied to the allegations and relief sought of the operative pleadings.

A further review of the prevailing case law demonstrates that an injunctive asset restraint must be limited to an amount equivalent to an equitable remedy of disgorgement of profits. The provisional *equitable* restraint must be tied to the amount of an ultimate potential *equitable* remedy. In *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995), the Eleventh Circuit considered an appeal of a preliminary injunction order. Among other issues, the appellant appealed a preliminary asset restraint. The court concluded that "the district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits." *Id*. at 987. *See also Hard Candy, Ltd. Liab. Co. v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1358-59 (11th Cir. 2019) (noting that in *Levi Strauss*, "[a] panel of this Court held that the asset freeze was a valid exercise of the district court's equitable powers because the underlying claim involved a request for equitable relief – namely, the disgorgement of profits under the Lanham Act.").

Thus, the equitable provisional remedy of an injunction must be tied to an ultimate potential equitable remedy – i.e., the disgorgement of profits. *See also* First Amended Complaint, DE 84, Prayer for Relief (seeking disgorgement of profits, along with alternative relief of statutory damages and other legal remedies). It cannot be tied to money damages, such as statutory damages or other calculations of damages. Accordingly, evidence related to those theories of damages is irrelevant at this stage.

Thus, in crafting a preliminary remedy of an asset freeze for equitable claims, the Court should look at the Certain Defendants' sales and does not need to refer to data related to

Plaintiff's business. A preliminary asset restraint, if any, must be tied to the evidence of actual sales.

In the matter of *Awareness Ave. Jewelry LLC v. P'ship*, No. 8:23-cv-2-TPB-AAS, 2023 U.S. Dist. LEXIS 88241 (M.D. Fla. May 19, 2023), the court initially granted a temporary restraining order asset freeze of defendants' financial accounts in an intellectual property infringement matter. Upon briefing and argument, the court vacated the asset restraint on the basis that the restrained funds were not limited to an amount that could be used to satisfy an equitable award of profits. "Defendants have shown that the amounts frozen are not so limited, and therefore good grounds exist to modify the injunction to reduce or eliminate the asset restraint." *Id*. Based upon data of minimal relevant sales, the court vacated the preliminary asset restraint entirely. *See id*. at *3 ("Plaintiffs offer no contrary evidence as to the amount of Defendants' profits but argue that Plaintiffs may be able to recover hundreds of thousands of dollars in lost sales and/or statutory damages under the Copyright Act. This response is unavailing because those remedies would be legal, not equitable."). The Court should reach the same conclusion here and, to the extent an asset freeze remains in place pending resolution of the preliminary injunction motion, it should be tied to the evidence of actual sales.

It is well-established that an asset freeze based on the amount of potential *legal* recoveries would be improper. *See Grupo Mexicano de Dessarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (holding that district courts may not enter preliminary injunctions preventing defendants from disposing of assets pending adjudication of claims for money damages); *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1529-30 (11th Cir. 1994) (holding that

district courts have no general equitable power to freeze assets where the plaintiff seeks only a judgment for money damages); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 U.S. Dist. LEXIS 153137, at *5 (S.D.N.Y. Oct. 24, 2012) (rejecting asset freeze amount tied to potential statutory damages under Lanham Act, and reducing asset freeze from $2 million to $20,000 based on the defendants' showing of minimal profits from allegedly infringing sales); *see also id*. at *10 ("asset freezes have consistently been confined to preserving the equitable remedy of an accounting for *profits*.") (emphasis in original).

Plaintiff cannot argue that statutory damages for "willful" infringement warrant an excessive freeze. It is well-established that "statutory damages do not constitute a form of final relief for which an asset freeze is an appropriate provisional remedy." *Id.* at *8. The Supreme Court's *Groupo Mexicano* case "precludes a freeze of assets for the purpose of preserving an award of statutory damages." *Id*. (citing *Grupo Mexicano*, 527 U.S. 308 (1999)).

The Eleventh Circuit addressed the distinction between monetary damages and equitable relief at length in the matter of *Hard Candy*, 921 F.3d 1343. In that matter, the court addressed the question of whether a plaintiff was entitled to a jury trial, which necessitated a determination of which infringement claims were equitable in nature. The court addressed the nature of a remedy for equitable claims. "[W]hen a plaintiff seeks an accounting and disgorgement of profits as a remedy for trademark infringement, the focus is entirely on the alleged infringer's gain; the plaintiff is not required to present any evidence of particular financial harm that it suffered so as to justify legal redress." *Id. See also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962) (holding that a trademark claim for money damages "is a claim

wholly legal in its nature"). Plaintiff alleges equitable claims for the disgorgement of profits, in addition to legal claims for statutory damages and other forms of damages.

If the "party seeking relief [can] present documentary proof that particular assets [are] not the proceeds of counterfeiting activities," the court should reduce the asset freeze to the amount of allegedly ill-gotten gains. *Klipsch*, 2012 WL 5265727, at *11 (quotations omitted). Here, based upon evidence of the relevant sales, the record therefore demonstrates that the *remainder* of the currently frozen funds are *not the proceeds* of counterfeiting. *See, e.g., id.* at *29 ("Moreover, by crediting the Declarations of Mr. Chow, which states that DealExtreme earned less than $6,000 in gross profits from the sale of counterfeit Klipsch-branded goods, the Court necessarily concluded that, based on the record before it, the remainder of the previously restrained assets did *not* derive from the sale of such counterfeit goods.") (emphasis in original); *see also Awareness Ave*, 2023 U.S. Dist. LEXIS 88241, at *4 (noting that "Plaintiffs have offered no evidence or argument as to any reasonable approximation of profits from infringement applicable to all Defendants" and vacating preliminary asset restraint).

Dated: November 10, 2023

Respectfully submitted,

Giuliano Law Group, P.A.

/s/ Nicole W. Giuliano
Nicole W. Giuliano, Esq.

10

        Florida Bar No. 71067
        121 S. Orange Avenue, Suite 1500
        Orlando, FL 32801
        Tel: (321) 754-5290 / Fax: (321) 400-1055
        Primary: nicole@glgpa.com
        service@glgpa.com

        DGW KRAMER LLP

By: /s/ Katherine Burghardt Kramer
    Katherine Burghardt Kramer, Esq.
    *Pro hac vice*
    DGW KRAMER LLP
    One Rockefeller Plaza, 10th Fl.
    Suite 1060
    New York, NY 10020
    T: (917) 633-6860
    kkramer@dgwllp.com

    *Attorney for Certain Defendants* Nos. 720, 743, 769, 781, 831, 870, 906, 911, 912, 918, 924, 735, 767, 778, 773, 821, 832, 907, 913, 919, 775, 916, 704, 800, 714, 847, 754, 763, 785, 702, 914, 927, 786, 817, 825, 871, 798, 877, 840, 915, 772, 880, 917, 923, 713, 839, 715, 728, 765, 803, 909, 879, 780, 818, 819, 878, 883, 822, 910, 858, 888, 922, 891, 904.